The Honorable David W. Christel

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| DONALD E. MORISKY,<br><br>      Plaintiff,<br><br>  v.<br><br>MMAS RESEARCH, LLC, a Washington limited liability company, STEVEN TRUBOW, an individual, POLINA FEILBACH, an individual, RODNEY WATKINS, an individual, DUSTIN MACHI, an individual, MMAS Research Italy S.R,L. an Italian company, and MMAS Research France, SAS a French company,<br><br>      Defendant. | NO. 2:21-CV-01301-DWC<br><br>DECLARATION OF STEVEN TRUBOW IN SUPPORT OF DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION |

Steven Trubow, under penalty of perjury under the laws of the state of Washington, states and declares as follows:

1.    I am over the age of 18. I make the following declaration from my personal knowledge about matters of which I am competent to testify. I am one of the named Defendants in the above captioned lawsuit and the sole remaining member of Plaintiff MMAS Research, LLC ("MMAS Research"). I make this declaration based on personal knowledge.

2.    I understand that Don Morisky has moved the Court for a Preliminary Injunction based upon his allegation that he holds copyrights and trademarks that he alleges I and MMAS

DECLARATION OF STEVEN TRUBOW IN SUPPORT OF
DEFENDANTS' RESPONSE TO MOTION FOR
PRELIMINARY INJUNCTION- 1
(2:21-CV-01301-DWC)

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

7559995.1

1  are infringing by the use of copyrights and trademarks licensed to MMAS. Further, I assert that
2  Don Morisky did specifically authorize the use as I discuss below relative to Exhibits V and W
3  below. The use of any IP to which Dr. Morisky asserts ownership is entirely consistent with our
4  CR2A agreement. Because of that agreement, Dr. Morisky properly dismissed with prejudice all
5
6  the prior claims of infringement filed in the Nevada federal district court.
7       3.      I understand that one of the elements that the instant Court will consider while
8  evaluating the propriety of granting the motion will be the likelihood of success on the merits.
9  While it is MMAS' and my dismissal of the Washington state and Nevada district court matters
10 with prejudice that has resolved all federal questions alleged in the Second Amended Complaint
11 and because that the Complaint does not articulate any cause with sufficient specificity to meet
12 the Iqbal/Twombley standard of pleading, the plaintiffs cannot sustain the current action. There is,
13
14 however, a third reason that success on the merits is unlikely and that is one of a lack of candor
15 by which Don Morisky sought and was granted the copyrights. His copyrights are invalid for two
16 independent but sufficient reasons because his allegations of authorship are in two distinct ways
17 untruthful.
18       4.      In the late nineteen seventies, two preeminent researchers published several peer-
19 reviewed articles which I have including in true and correct copies as Exhibits A1, A2 and B to
20 this declaration. The researchers, Lawrence W. Green, Dr. P.H., David M. Levine, M.D. Sc.D.,
21
22 composed and promulgated a six-question scale used to give a standardized self-administered
23 inventory to evaluate compliance with prescribed medicinal regimens. At the time, one of the
24 concerns many researchers in the public health field lacked was a means to evaluate efficacy of
25

DECLARATION OF STEVEN TRUBOW IN SUPPORT OF
DEFENDANTS' RESPONSE TO MOTION FOR
PRELIMINARY INJUNCTION- 2
(2:21-CV-01301-DWC)

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

7559995.1

medicine because results in noncompliant subjects of any study were given equal validity to those subject compliant with the studied regimen. Naturally, the results of studying any subject, not in the control group, who then did not fully or partially comply with the regimen, would skew the results where the efficacy of the regimen is purpose of the study. Removing results by those noncompliant subjects assures better evaluation of results of any such study. Therefore, the Green-Levine six-question inventory addressed compliance and results could be screened considering compliance to remove or to moderate any study's statistical results based upon actual compliance. I attach true and correct copies of two works by Drs. Green and Levine demonstrating that the whole of the MMAS-4 was entirely disclosed before any involvement by Dr. Morisky as Exhibits A1 and A2.

  5. Half a decade later, in 1986, Don Morisky joined Drs. Green and Levine with the purpose of streamlining their previous six-question inventory still further. In a published peer-reviewed study, of which I have attached a true and correct copy as Exhibit B1 hereto, wherein Don Morisky debuted a four-question inventory that was little more than the Green-Levine six-question inventory omitting the final two questions which relate to doctor's advice rather than to actual compliance. Importantly, it bears the date of publication of the work and the MMAS-4 in 1986 and that the work was done while employed as a researcher at UCLA. Similarly, in April 2002, the MMAS-8 was published in the article, a true and correct copy attached as Exhibit B2 hereto, and again Dr. Morisky was an employee of UCLA and working under a grant from the National Heart, Lung, and Blood Institute.

  6. Exhibits C1 and C2 are Dr. Morisky's applications for copyright registration for

DECLARATION OF STEVEN TRUBOW IN SUPPORT OF DEFENDANTS' RESPONSE TO MOTION FOR PRELIMINARY INJUNCTION- 3
(2:21-CV-01301-DWC)

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

7559995.1

each of MMAS-4 and MMAS-8 respectively. Neither of them admit to any prior publication of the works though both date significantly postdate their initial publication, the MMAS-4 asserted to be on October 3, 2007 and the MMAS-8 asserted to be first published on October 19, 2006. Neither mentions the works as being works for hire (Dr. Morisky was a paid employee of UCLA hired to do exactly the work that matured in each of the papers B1 and B2). Also importantly, neither mentions the precursor works upon which each of the two scales is based, in both cases the Green Levin scale and prior works.

7. In the true and correct copy of the email that is Exhibit D1, Dr. Morisky admitted to me and Olympic Labs, that he had done little more than to review the statistics earlier studies had yielded on the Green-Levine scale and to realize that the first four questions were more clearly tied to compliance than were the last two. Because the length of any self-evaluation inventory is a factor in determining how many of the studied subjects will complete the evaluation, the elimination of the last two made it more likely that subjects would daily complete the inventory while sacrificing only two questions that had proven to be minimally relevant.

8. In the true and correct copy that is Exhibit D2, on November 20, 2006, Dr. Morisky admits to Dr. Ehrengren that the MMAS-8 is the nine question version earlier published in an article in a Swedish HIV study delivered at the 2001 American Public Health Association Meetings. Thus, Dr. Morisky admitted that the MMAS-8 was originally published in 2001 which is how Dr. Ehrengren found out about the MMAS-8.

9. The fact that each of the works was derivative rather than an original work is one of two important issues as to the validity of the copyrights in question. Even on his faculty

DECLARATION OF STEVEN TRUBOW IN SUPPORT OF
DEFENDANTS' RESPONSE TO MOTION FOR
PRELIMINARY INJUNCTION- 4
(2:21-CV-01301-DWC)

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

7559995.1

website at UCLA (Exhibit E), Dr. Morisky admits that the current scales are derived from the Green Levine scale as shown in Exhibits D1 and D2. But he never indicated their derivative nature when applying to the Copyright Office. To apply for a copyright, one is required to truthfully identify whether the work is an original work or a derivative work based upon an earlier. The reason is to assure that no applicant will claim as his own work that he has not authored. Copyrights can be invalidated by courts for violation of a duty of candor to the Copyright Office. This is one of several Achilles' heels I have recently recognized as an impediment to enforcing the Morisky copyrights.

10. There is a second issue that relates directly to the validity of the asserted copyrights under the "Work for Hire" doctrine. Dr. Morisky is not the author of the two inventories, the MMAS-4 and the MMAS-8, though he claims he "invented" each. My attorney has informed me that where an individual is hired to invent to exploit or otherwise to study a natural phenomenon, the hiring entity is considered to be the author even if a hired individual actually composed the work for which a copyright is sought.

11. Dr. Morisky was a researcher employed by the University of California ("UCLA"), specifically as the "senior investigator" on a sub-contract between UCLA and the Alton Ochsner Clinic Foundation. UCLA asserted the works as their own in a letter to Dr. Morisky a true and correct copy of which is attached as Exhibit F hereto. The grant specifically paid Dr. Morisky for work between 2005 and 2010. Dr. Morisky was to "assist and provide technical consultation in the development, instrumentation, and assessment of the self-reported medication-taking behavior measure", i.e., the Morisky Medical Adherence Scale or "MMAS". In

DECLARATION OF STEVEN TRUBOW IN SUPPORT OF DEFENDANTS' RESPONSE TO MOTION FOR PRELIMINARY INJUNCTION- 5
(2:21-CV-01301-DWC)

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

7559995.1

any assertion of the copyrights, they are also likely to be attacked based on this second failure to disclose authorship as residing in UCLA rather than Dr. Morisky personally. Rather than to allow UCLA to invalidate the copyrights due to lack of candor, Dr. Morisky agreed to a "walk away" settlement which included a paid-up perpetual license to UCLA for each of the two scales which were the subject of the asserted copyrights. Exhibit G1 is a true and correct copy of the settlement. If any third-party against whom one might assert the copyrights could, themselves, assert the invalidity of the copyrights because of this second lack of candor.

12. In any invalidity defense, the defendant would point to the fact that the grants paid for the two studies that validated and promulgated the scales: one in 2008 reported on the successful validation of the medication-taking behavior measure (the eight-question Morisky Medical Adherence Scale or "MMAS-8"); the other reported various results using the measure. Accordingly, it is evident that the each of the MMAS-4 and the MMAS-8 was developed during the period of the sub-contract with UCLA. U.S. Copyright records show that the four question Morisky Medical Adherence Scale or "MMAS-4," which was registered in June 2016, claims a "date of creation" in 2007, also during the period of this subcontract by which Dr. Morisky was hired by UCLA. Because of his unfounded claims of authorship, each of the copyrights were issued in his name as the author of the subject works rather than that of UCLA, therefore they are subject to invalidation by any defendant. An example of a potential licensee using the cloud on validity to negotiate a better license was by licensee's counsel at Fishman Stewart and is attached as Exhibit G2.

13. This Court must evaluate likelihood of success on the merits, these two failures to

DECLARATION OF STEVEN TRUBOW IN SUPPORT OF
DEFENDANTS' RESPONSE TO MOTION FOR
PRELIMINARY INJUNCTION- 6
(2:21-CV-01301-DWC)

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

7559995.1

truthfully disclose true and correct authorship to the Copyright Office must be evaluated as a part of the Court's analysis as to the propriety of issuing a preliminary injunction. Since the only basis for exercising federal jurisdiction in this case is the infringement of copyrights, the Court must consider that one cannot infringe an invalid copyright.

14. Prior to my work with Dr. Morisky, he had formed a limited liability company in California for handling licenses to the two asserted copyrights. Exhibit H is a true and correct copy of the filing in California. Don Morisky was not very adept at setting up such licenses and the company was never very successful at collecting revenue from licenses to the two copyrights, though the scales were in use in the public health research field and had been extensively validated by repeated use in peer-reviewed studies around the world.

15. To place events in better context, the court should understand that I retired from my position as a software architect with Apple Computer Inc in 2004, I moved to Port Angeles WA and began Olympic Labs, a Washington LLC, as its sole member to operate a software lab facility located in Port Angeles Washington, by contracting with the United States Department of Defense, Defense Advanced Research Projects Agency ("DARPA").

16. From 2004 until 2008, I commuted to Washington DC monthly to work at DARPA. I withdrew from my DOD contract in 2008 and began work for the State of South Carolina through my entity, Olympic Labs in Port Angeles, Washington, to develop, program, and implement the Dropout Early Warning System ("DEWS") software for case management of high-risk youth and adult offenders in fourteen communities in Alaska, California, South Carolina, and Mississippi.

DECLARATION OF STEVEN TRUBOW IN SUPPORT OF DEFENDANTS' RESPONSE TO MOTION FOR PRELIMINARY INJUNCTION- 7
(2:21-CV-01301-DWC)

Williams, Kastner & Gibbs PLLC
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

7559995.1

17. As an indication of Olympic Lab's proficiency in the field, in 2009, I was invited to and did testify before the U.S. House of Representatives Subcommittee on Crime, Terrorism, and Homeland Security State of Emergency Addressing Gang Violence and High School Dropout Problem.

18. In 2010, I began working on a new mental health information software that helped prevent veteran suicide with the Washington State Department of Veterans Affairs. In 2013 Olympic Labs joined a team led by two clinicians, Dr. David Kupfer and Dr. Robert Gibbons, two members of the Institute of Medicine, the National Academy of Sciences to develop the Mental Health Information System (MHIS) software for a Centers for Medicaid and Medicare Service pilot at federally qualified health centers (FQHC) in Atlanta GA.

19. I met Dr. Morisky for the first time when the team invited Dr. Morisky to share his MMAS-8 with Drs. Gibbons and Kupfer's computer adaptive assessments for mental health (CAT-MH) already in the MHIS. A limited use MMAS-8 license was provided by Dr. Morisky to Olympic Labs that was specific for the MHIS software. A true and correct copy of that license is attached as Exhibit I hereto. The three-year CMS grant that funded the MHIS software program ended in 2015. The FQHC stopped using the MHIS software. Drs Kupfer and Dr. Gibbons withdrew from the project. The MHIS software has never been used since. There was not a single dollar in revenue generated by the MHIS software.

20. In the fall of 2016, Donald Morisky dissolved MMAS Research LLC of California. In December 2016, Don Morisky and I formed MMAS Research as a Washington limited liability company. MMAS Research was originally located at an address in Renton,

DECLARATION OF STEVEN TRUBOW IN SUPPORT OF DEFENDANTS' RESPONSE TO MOTION FOR PRELIMINARY INJUNCTION- 8
(2:21-CV-01301-DWC)

Williams, Kastner & Gibbs PLLC
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

7559995.1

Washington and later Bellevue, Washington. Don Morisky and I were each fifty-fifty members of this LLC until Don Morisky would later resign as a member effective June 21, 2019 as the true and correct copy of the Tax Election Exhibit N indicates.

21.	At the suggestion of Dr. Jeffrey Kelman, the Chief Medical Officer at CMS, Don Morisky, Dustin Machi and I developed and deployed the electronic Morisky Widget in March 2017, a much more specific and sensitive version of Don's original MMAS Scales. The Morisky Widget MMAS-8 & MMAS-4 were night and day different than the MMAS-8 used prior to the Morisky Widget which was a measurement of medication adherence at a point in time, whereas the Morisky Widget was a diagnostic assessment of medication taking behavior that measured adherence and identified why the patient was not taking their medication. As the Morisky Widget neared its final form, Dr. Morisky assisted in the final formulation of the software. We used Dustin Machi an accomplished computer scientist to code what would become the Morisky Widget. Exhibit I is a true and correct copy of the agreement I struck with Dr. Morisky on behalf of Olympic Labs to exploit the copyrights. Dr. Morisky assisted Dustin in the programming of the widget as indicated by the email I have attached hereto as Exhibit J.

22.	In December 2016, we formed MMAS Research, LLC in Washington, to take over this licensing and training to use the Morisky Widget. MMAS Research was originally located at an address in Renton, Washington and later Bellevue, Washington. I had formed MMAS Research as a Washington limited liability company in December 2016. Don Morisky and I operated MMAS Research to investigate, license, train and certify all MMAS-4 and MMAS-8 users. A true and correct copy of an exemplary agreement is reflected in the attached Exhibit M

DECLARATION OF STEVEN TRUBOW IN SUPPORT OF DEFENDANTS' RESPONSE TO MOTION FOR PRELIMINARY INJUNCTION- 9
(2:21-CV-01301-DWC)

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

7559995.1

hereto.

23. In 2017, Dr. Morisky had become involved in a dispute as to ownership of the MMAS-4 and MMAS-8 copyrights and UCLA had foreclosed his use of UCLA resources to exploit the copyrights as the true and correct copy (except for added highlighting) of an email from counsel for UCLA attached as Exhibit O hereto indicates. UCLA had foreclosed his use of UCLA resources to exploit the copyrights as the true and correct copy (except for added highlighting) of an email from counsel for UCLA attached as Exhibit O hereto indicates. Dr. Morisky was pressed to find a business entity to exploit his copyrights. MMAS Research met that need. Don Morisky and I were each fifty-fifty members of this LLC and correct copy of the Tax Election Exhibit N indicates.

24. As I indicated, MMAS Research is a business that investigates the infringement and improper use of the MMAS-8 and the MMAS-4 and licenses, trains and certifies health care professionals on the correct use of the Morisky Widget, an electronic derivative of the MMAS-8 and MMAS-4, that is an essential component of the Morisky Widget Medication Adherence Protocol. MMAS Research is in the business of settling the misuse of the MMAS-8 and the MMAS-4 on patients with chronic and infectious diseases, licensing, training, and selling Morisky Widget MMAS licenses globally and to health care organizations (hospitals, clinics, pharmaceutical firms) to optimize the medication adherence of patients with chronic and infectious diseases. An example of the licenses I negotiated on behalf of MMAS Research, in this case with Mitsubishi Tanabe Pharma Corporation, is attached as Exhibit P hereto.

25. MMAS Research has always maintained a registered agent, principal place of

DECLARATION OF STEVEN TRUBOW IN SUPPORT OF DEFENDANTS' RESPONSE TO MOTION FOR PRELIMINARY INJUNCTION- 10
(2:21-CV-01301-DWC)

Williams, Kastner & Gibbs PLLC
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

7559995.1

business, and mailing address in Washington. I personally lived in Washington from June 2004 until January 2019, when I then moved my personal residency to California. When formed in 2016, MMAS Research opened a banking account in Bellevue, Washington, which it still uses today. MMAS Research has also had a Washington phone number for business use since 2012. Neither Don Morisky nor his wife, Susan Morisky, ever objected to selecting Washington as the principal place of business for MMAS Research, in part, due to the more favorable tax treatment for Washington entities over California.

26. Over the past three years, most of MMAS Research's business has taken place by negotiating with licensees over email and traveling to the location of licensees to conduct face to face training and certification seminars and hands on practicums. MMAS Research's training seminars are mostly conducted by my assistant and me, both domestically in the United States, and internationally, mostly in China and the European Union. Travel arrangements and communications prior to face to face are almost exclusively completed by phone, email or the internet. MMAS Research makes and receives business payments via wire transfer, ACH and other direct account to account electronic transfers.

27. Until his resignation from MMAS in June of 2019, Dr. Morisky was intimately involved in negotiating licenses through MMAS as indicated by the email to Dr. Takada, as Kitago Orthopaedic Clinic, in Sapporo Japan, of which Exhibit Q1 hereto is a true and correct copy. Dr. Morisky acknowledged the authorization to sign and that MMAS was his authorized agent regarding negotiating and granting of licenses. Exhibits Q2 and Q3. Washington is the only state where MMAS Research has ever registered to do business and maintains a registered agent.

DECLARATION OF STEVEN TRUBOW IN SUPPORT OF DEFENDANTS' RESPONSE TO MOTION FOR PRELIMINARY INJUNCTION- 11
(2:21-CV-01301-DWC)

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

7559995.1

At the same time, because the Widget was fully functional and the use of MMAS as the exclusive vehicle for licensing supplanted its role, Olympic Labs had no further function. I dissolved it in February of 2019. Exhibit R hereto reports that dissolution

28. Beginning in the fall 2017, Don Morisky appeared to be losing his memory and making serious business mistakes. I would have to request information from Don Morisky three or four times without getting any responses. MMAS Research LLC lawyers (retained to initiate enforcement suits to mature into licenses) would have to request information or action from Don many, many times. Don's memory loss was causing problems internally at MMAS Research and it spread to training sessions. In Beijing China, at a training session for the Chinese Academy of Medical Science, Don Morisky invited one his former students to attend the training, where he inappropriately touched his ex-student's body parts during the training in front of a large audience. Two weeks later in Seoul South Korea, at a training for Novartis South Korea, at the end of the training, I left the training session to use the bathroom. As the participants were leaving the building Don Morisky began shouting at me in front of clients and shoved me. Although he later apologized for this shoving incident, serious incidents occurred in training sessions the following year and Don Morisky's memory became worse.

29. I began to suspect that Don was having some mental lapses, possible senility or dementia at age 74, most apparent through losing his personal passport and other travel documents, seriously misquoting license fees to potential licensees, failing to provide investigation information and requests from our lawyers and difficulties presenting concepts at client trainings. I have read Dr. Morisky's Declaration supporting the present motion and find that

DECLARATION OF STEVEN TRUBOW IN SUPPORT OF DEFENDANTS' RESPONSE TO MOTION FOR PRELIMINARY INJUNCTION- 12
(2:21-CV-01301-DWC)

Williams, Kastner & Gibbs PLLC
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

7559995.1

it varies greatly from the facts as known to me and as I have related them here with supporting documentation. I attribute these variances to a medical condition and do not, necessarily, believe that they reflect any intent to mislead the Court.

30. Dr. Morisky alleges that there was, during his participation in MMAS that there had been some financial issues whereby he received less than his due as a co-owner of MMAS. He is simply incorrect. The accounting was strict and Dr. Morisky participated equally with me in every licensing transaction. The only instances where, due to my role as instructor on use of the Widget, our checks varied, was when I would be paid for hours spent in instruction or in reimbursement of legitimate expenses based upon travel to instruct.

31. On June 25, 2019, Don Morisky filed with the Washington Secretary of State the "Amended Annual Report" reporting that he no longer was a member or governor of MMAS Research. Thereafter, I discovered that six months earlier, (on or about January 22, 2019), the Morisky family (Donald Morisky, Susan Morisky, and their two sons, Phillip Morisky and Marty Morisky), had already formed a limited liability company in Nevada called the Morisky Medication Adherence Research, LLC ("MMAR"). I have attached this voluntary disassociation document as T1 and our email exchange making clear that he was abandoning his share of MMAS as T2. I also discovered that MMAR had a website, which was created and hosted by an entity headquartered in Bellevue, Washington. This MMAR website is being used by either of Don or Susan Morisky or her sons to actively divert licensees away from my company. The MMAR website lists MMAS Research's customers as its own current clients and uses MMAS Research's business materials. In short, Dr. Morisky and his wife, Susan, were trying to put our

DECLARATION OF STEVEN TRUBOW IN SUPPORT OF DEFENDANTS' RESPONSE TO MOTION FOR PRELIMINARY INJUNCTION- 13
(2:21-CV-01301-DWC)

Williams, Kastner & Gibbs PLLC
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

7559995.1

partnership out of business in favor of his family exploiting the licenses I, through MMAS, had negotiated on both of Dr. Morisky's and my own behalf through MMAS.

32. The situation degenerated to one by which I felt I had to sue to enforce our agreement relative to the formation and continuation of MMAS. I filed suit to enforce the terms and to prevent this competition to MMAS in July 2019. The Complaint and Answer are attached hereto as Exhibits U1 and U2 respectively.

33. Important allegations define the nature of the relationship at that time. At paragraph 10, for example, Dr. Morisky denies that he licensed the MMAS-4 and MMAS-8 copyrights to MMAS to form the Morisky Widget—the fact of the license being readily proven by way of the emails set out as Exhibits I and J above. At paragraph 13, Dr. Morisky admits "MMAS Research has certified users and under authority of Dr. Morisky" and further that MMAS "has certified users of Dr. Morisky's intellectual property" and that "MMAS Research issues licenses in North America, Europe, Africa and Asia." In his answer, he also admits "that Dr. Morisky received a payroll check, reflecting withholdings, for the gross amount of $80,000 and that that payment was reported via W-2 issued by MMAS Research, LLC to Donald Morisky for calendar year 2018." He also admits at paragraph 17 that "Morisky Medication Adherence Research, LLC ("MMAR") was formed on January 22, 2019, is a Nevada, LLC, and that Donald Morisky, Susan Morisky, Phillip Morisky and Marty Morisky are members of that entity. Admit that plaintiff Trubow was not notified by Donald Morisky of the formation of MMAR at the time of formation." The company, if formed was to cooperate with MMAS rather than to compete with it as is expressed in the email referred to in paragraph 17 of the Answer (U2): "you need to set up

DECLARATION OF STEVEN TRUBOW IN SUPPORT OF
DEFENDANTS' RESPONSE TO MOTION FOR
PRELIMINARY INJUNCTION- 14
(2:21-CV-01301-DWC)

Williams, Kastner & Gibbs PLLC
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

7559995.1

a Nevada LLC and sell your *MMAS license and administer the copyright requirements for that license from Nevada*." [Emphasis added to demonstrate any Nevada corporation would cooperative with MMAS rather than to be competitive in nature.]

34. The competitive nature of the work is set out at Paragraph 28 of the Complaint (U1) and the email that the Answer (U2) incorporates in answer to that paragraph. In paragraph 29, I alleged and Dr. Morisky admitted that he had wrongfully attempted to terminate the perpetual paid up license to MMAS and was now in competition with MMAS.

35. As Dr. Morisky admits, the suit was settled by the CR2A attached to his declaration. It subsumes all issues or claims relative to the copyrights making the current action strictly a contractual matter. As I understand it, the CR2A in question is uniquely a Washington state device for settlement and the enforcement is appropriately a matter for Washington state law. Importantly, there is no possibility of irreparable harm as all actions by MMAS or me were specifically authorized by license from Dr. Morisky.

36. The license and enforcement authority is set out as a true and correct copy at Exhibit V hereto. That the arrangement was working to the benefit of each of us is demonstrated by the subsequent licenses issued by both of Dr. Morisky and me jointly such as that to Sanofi Aventis Recerche & Developppement as set out at Exhibit W. There is no reason we cannot continue under the current arrangement until the King County Superior Court can resolve any remaining questions as may exist relative to enforcement of the CR2A agreement.

37. Finally, I must address a huge mistake Dr. Morisky makes in his Second Amended Complaint, Document 42. He rests his "federal question" jurisdiction on the use of the MMAS-4

DECLARATION OF STEVEN TRUBOW IN SUPPORT OF DEFENDANTS' RESPONSE TO MOTION FOR PRELIMINARY INJUNCTION- 15
(2:21-CV-01301-DWC)

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

7559995.1

and MMAS-8 in our current promulgation of the Global Medication Reconciliation Form ("GMRF"), a survey developed by me on behalf of MMAS with the assistance of Dr. Morisky and his current litigation counsel.

38. In attempting to assure all parties that the GMRF would be compliant with the CR2A agreement we were negotiating at the time, I sent a copy of the questions to be used to Mr. Austin, the Plaintiff's counsel in this case. Exhibit X1, is a true and correct copy of that email. I realized that Mr. Austin had omitted one of the MMAS-4 questions in his analysis and sent the email X2, a true and correct copy thereof I have attached.

39. On September 18, 2020, Mr. Austin reported that the questions as contained in the final email were acceptable and would not constitute an infringement of the MMAS-4 and MMAS-8 copyrights. In my role running MMAS, I am aware that MMAS has never posted any set of questions accept those specifically approved in the email where Mr. Austin did approve the questions which is Exhibit X3. I have relied on Chris Austin's opinion of noninfringement throughout the use of the GMRF.

DECLARATION OF STEVEN TRUBOW IN SUPPORT OF DEFENDANTS' RESPONSE TO MOTION FOR PRELIMINARY INJUNCTION- 16
(2:21-CV-01301-DWC)

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

7559995.1

40. I declare under penalty of perjury that the foregoing is true and correct.

DATED this 28th day of March, 2022.

*Steven Trubow*

<u>Steven Trubow</u>

DECLARATION OF STEVEN TRUBOW IN SUPPORT OF DEFENDANTS' RESPONSE TO MOTION FOR PRELIMINARY INJUNCTION- 17
(2:21-CV-01301-DWC)

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

7559995.1