UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| DONALD E. MORISKY,<br><br>                 Plaintiff,<br><br>       v.<br><br>MMAS RESEARCH LLC, et al.,<br><br>                 Defendant. | CASE NO. 2:21-CV-1301-RSM-DWC<br><br>REPORT AND RECOMMENDATION<br><br>Noting Date: April 22, 2022 |

The District Court referred this action to United States Magistrate Judge David W. Christel. Currently pending before the Court is Defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure (Rule) 12(b)(6). Dkt. 39.

PROCEDURAL BACKGROUND

On September 24, 2021 Plaintiff initiated this action by filing his Complaint. Dkt. 1. On September 27, 2021—the following business day—Plaintiff filed an "Amended Complaint," changing only the case number located in the caption. Dkt. 3; *see also* Dkt. 34.

On October 29, 2021 Defendants moved to dismiss the Amended Complaint for failure to state a claim. Dkt. 19, 20. Instead of responding to the motion to dismiss, on November 19, 2021

REPORT AND RECOMMENDATION - 1

Plaintiff filed his "Second Amended Complaint." Dkt. 22. Defendant then moved to strike the Second Amended Complaint, arguing it violated Rule 15(a) and Local Civil Rule 15. Dkt. 29.

On January 10, 2022 the Court rejected Defendants' arguments, finding the Second Amended Complaint was functionally a permissive amendment pursuant to Rule 15(a)(1), and that the Amended Complaint had been superseded by a successively filed "Second Amended Complaint." Dkt. 37 at 3-4.

Meanwhile, Plaintiff moved to voluntarily dismiss Defendants Watkins and Machi, which the Court construed as a voluntary notice of dismissal and directed the Clerk to dismiss Defendants Watkins and Machi from this case. Dkt. 32, 38.

On January 13, 2022 Defendants MMAS Research LLC and Steven Trubow (hereinafter "Defendants" unless individually identified) filed the pending motion. Dkt. 39. Plaintiff filed a response (Dkt. 40) and Defendants filed a reply (Dkt. 41).

FACTUAL BACKGROUND

Plaintiff, Donald Morisky (Plaintiff) is a professor emeritus at the University of California, Los Angeles Fielding School of Public Health. Dkt. 22 at 1-2. He is the creator of the "Morisky Medication Adherence Scale" (MMAS)—an assessment tool used by clinicians to measure medication non-adherence in a variety of patient populations. *Id*. at 2. The MMAS lead to several clinical products, including the MMAS-4, MMAS-8, the Morisky Medication Adherence Protocol (Morisky Protocol[1]), and ultimately, with the assistance of Defendants, the Morisky Widget. *Id*. at 4. Plaintiff obtained copyright registrations for the MMAS-4 and the MMAS-8. *Id*. at 9. Plaintiff also alleges Trademark rights in connection with these creations. *Id*. at 10.

---

[1] The "Morisky Protocol" is the scoring and training protocol used in connection with the MMAS.

In 2011, Plaintiff founded MMAS Research, LLC as a California limited liability company, and began licensing his products, providing training to ensure proper application of the MMAS, and confirming the accuracy of scoring and the propriety of diagnostic results and intervention protocols. *Id*. at 11. According to Plaintiff, from approximately 2011 to 2014 he licensed over 3000 clinics, practitioners, and organizations to use his products. *Id*.

In April 2014, Plaintiff entered into a licensing agreement (the 2014 licensing agreement) with Defendant Steve Trubow's former Washington company, Olympic Labs, LLC. *Id*. at 12. One of the goals of this licensing agreement was for Defendant Trubow to create an electronic version of the MMAS-4 and MMAS-8—now referred to as "the Morisky Widget"—a computer program that "automatically" generates a diagnostic and intervention protocol, based on the Morisky Protocol, from patient answers to the MMAS-4 or MMAS-8. Dkt. 21-5 at 16.

The 2014 licensing agreement provided that the parties would share, fifty-fifty, the revenue derived from issuing third-party licenses to use the Morisky Widget, but Plaintiff would "at all times remain the owner of the MMAS-8 and any associated intellectual property, patents, copyrights or derivatives derived from the use of the MMAS-8 … ". Dkt. 22 at 12.

In December 2016, Defendant Steve Trubow re-organized Olympic Labs LLC, as Defendant "MMAS Research LCC," a Washington limited liability company, which became the de facto successor-in-interest to the licensing agreement between Plaintiff and Defendants. Dkt. 22 at 12. According to Plaintiff, Defendant Trubow listed himself and Plaintiff as "managers" of Defendant MMAS Research LLC. Dkt. 21-5 at 19, 21. Dkt 22-7. Nevertheless, Plaintiff alleges that Defendant Trubow formed international subsidiaries of Defendant MMAS Research LLC, called MMAS Research Italy, S.R.L. and MMAS Research France, SAS, without consulting him. Dkt. 22 at 13.

By January 2019 relations between the parties had broken down to the point that Plaintiff formed his own company, called Morisky Medication Adherence Research LLC (MMAR), in Nevada, and, according to Defendants, "began to represent to clients of the jointly owned MMAS Research LLC that it no longer had rights to issue licenses to the Morisky Widget or any Morisky intellectual property." Dkt. 39 at 4. However, according to Plaintiff, on June 21, 2019 he notified Defendants he was voluntarily "withdrawing" from MMAS Research LLC. Dkt. 21-5 at 21.

On July 27, 2019 Defendants filed a Complaint against Plaintiff in King County Superior Court alleging breach of fiduciary duty and tortious interference. Dkt. 21-1. Plaintiff counterclaimed, asserting copyright and trademark infringement, among others claims. Dkt. 21-5.[2]

On March 10, 2020 Plaintiff formally provided notice to Defendants of their alleged breach of the 2014 licensing agreement, stating "the License [sic] Agreement will terminate on Friday, April 10, 2020" if Defendants fail to cure their breaches by: (1) Providing a full financial accounting of MMAS Research from 2017 to the present; (2) Paying Plaintiff all sums due and not paid under the License [sic] Agreement; and (3) Removing any claims of ownership to the MMAS-8 and all Morisky IP. Dkt. 22 at 14.

Defendants allegedly failed to comply with these terms. *Id*. at 14-15. Thus, on May 28, 2020, Plaintiff filed a Complaint against Defendants in the United States District Court of

---

[2] Defendants asserted four claims against Plaintiff, including: (1) Breach of Fiduciary Duty; (2) Tortious Interference; (3) Injunctive Relief; and (4) Declaratory Relief. Dkt. 21-1 at 9-13. Plaintiff filed eight counterclaims, however the court dismissed all federal copyright and trademark counterclaims without prejudice, for want of jurisdiction, leaving only two viable state-law counterclaims, including breach of the 2014 licensing agreement. Dkt. 21-5 at 24-32.

Nevada alleging Copyright Infringement, Trademark Infringement, Common Law Trademark Infringement, Deceptive Trade Practices, and state law claims. Dkt. 21-13.

With two cases pending—one brought by Defendants against Plaintiff in Washington state court, the other brought by Plaintiff against Defendants in Nevada federal court—the parties reached a verbal settlement agreement on July 2, 2020 that sought to resolve all outstanding claims and counterclaims "with prejudice." *Id*. at 15; Dkt. 22-6 at 1, 8. This agreement was reduced to writing and signed by the parties on December 6, 2020 ("the SA"). Dkt. 22-6.

The SA set out certain rights and obligations of each party. However, neither party was satisfied with the other's performance, and the ink was barely dry before they began discussing dispute resolution, as required by paragraph 17[3] of the SA. Dkt. 22 at 17. Relations became so strained that during the process of attempting to schedule dispute resolution, yet another dispute arose regarding what type of dispute resolution was required by paragraph 17: binding arbitration or mediation. *Id*.

Defendants returned to King County Superior Court on May 11, 2021 seeking to enforce or rescind the SA. Dkt. 39 at 7; Dkt. 21-22. In response, Plaintiff moved to compel mediation and dismiss Defendants' complaint without prejudice, which the King County Superior Court granted on July 9, 2021. Dkt. 21-27. On August 20, 2021 the King County Superior Court issued

---

[3] Paragraph 17 of the SA reads, "Unless extended by a written agreement of the Parties, the Parties agree to enter into a long-form, final settlement agreement, formalizing all the terms set forth herein (the "Final Agreement") on or before 5:00 p.m. (Pacific Time) sixty (60) days after the date this Agreement is executed ("Final Agreement Deadline"). If the Parties are unable to agree upon any provision or content of the Final Agreement, then no later than the Final Agreement Deadline, the Parties shall identify and appoint **an agreed upon neutral mediator** with the Seattle office of JDR as an "Appointed Decider" to hear and finally resolve all such disputed issues. If the Parties cannot agree on upon a single Appointed Decider by the Final Agreement Deadline, each Party may identify a single mediator of the Seattle office of JDR, and the mediators so identified, or—in the event a Party fails to identify a mediator by the Final Agreement Deadline—the sole mediator identified by the Final Agreement Deadline, shall be the Appointed Decider. Within thirty (30) days of appointment, the Appointed Decider shall produce and sign the Final Agreement on behalf of the Parties, which Final Agreement shall be binding upon the Parties regardless of whether they ultimately execute it. The Parties shall equally bear the costs and fees of the Appointed Decider." Dkt. 22-6 at 9-10 (emphasis added).

an Order affirming and upholding its July 9, 2021 order, and finding that section 17 of the SA contains a "mediation clause as a precondition of entering a legal cause of action alleging breach." Dkt. 21-32. Nevertheless, the parties remained at an impasse regarding the type of alternative dispute resolution to employ, and have never engaged in post-SA mediation. Dkt. 22 at 18. Plaintiff then initiated this action by filing his Complaint on September 24, 2021. Dkt. 1.

## MOTION TO STRIKE

At the outset the Court addresses Plaintiff's Motion to Strike pleadings from the parties' prior litigation that Defendants submitted as exhibits to their motion to dismiss, arguing those documents contain disputed facts that should not be considered under Rule 12(b)(6). Dkt. 40 at 6.

A court may consider material properly submitted as part of the complaint on a motion to dismiss without converting the motion to a motion for summary judgment. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). Where the documents are not physically attached to the complaint they may be considered if their "authenticity ... is not contested" and "the plaintiff's complaint necessarily relies" on them. *Parrino v. FHP, Inc.*, 146 F.3d 699, 705-06 (9th Cir. 1998)). Further, pursuant to Fed. R. Evid. 201, a court may take judicial notice of "matters of public record" without converting a motion to dismiss into a motion for summary judgment. *Mack v. South Bay Beer Distrib., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986). A court may not, however, take judicial notice of a fact that is subject to reasonable dispute. Fed. R. Evid. 201(b). "[W]hen a court takes judicial notice of another court's opinion, it may do so" in the context of a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "'not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity.'" *Lee*, 250 F.3d at 690 (*quoting Southern Cross Oversees Agencies, Inc. v. Wah Kwong Shipping Group Ltd.*, 181 F.3d 410, 426-27 (3rd Cir. 1999)).

The Court declines to strike from the record evidence submitted in support of the Motion to Dismiss. However, in ruling on this Motion to Dismiss the Court will only consider materials beyond the pleadings that are matters of public record and undisputed by the parties.

## STANDARD

Under Fed. R. Civ. P. 12(b)(6), the Court may dismiss a complaint for "failure to state a claim upon which relief can be granted." In ruling on a motion to dismiss, the Court must construe the complaint in the light most favorable to the non-moving party. *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005). The Court must accept all well-pleaded allegations of material fact as true and draw all reasonable inferences in favor of the plaintiff. *Wyler Summit P'ship v. Turner Broad. Sys.*, 135 F.3d 658, 661 (9th Cir. 1998).

Dismissal is appropriate where a complaint fails to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Aschcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). As a result, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

## DISCUSSION

According to Defendants, Plaintiff fails to state a claim for which this Court can grant relief because he seeks to enforce the SA—a state-law based contract claim—and his "new" federal claims of Copyright and Trademark Infringement are not stand-alone federal claims because they, too, are covered by the SA. Dkt. 39 at 14. Defendants argue that this Court

therefore lacks subject matter jurisdiction over Plaintiff's claims, which they insist should be brought in state court.

While Plaintiff concurs that his Second Amended Complaint seeks to enforce the SA, which does not confer federal jurisdiction, he insists that his Copyright Infringement and Trademark Infringement claims are not covered by the SA because they allege "new" acts of infringing that *do* confer federal subject matter jurisdiction. Dkt. 40 at 15.

Federal courts are courts of limited jurisdiction, having subject matter jurisdiction only over matters authorized by the Constitution or by statute. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994). As such, federal courts have an independent duty to examine the basis for exercising jurisdiction over every case, and pursuant to Fed. R. Civ. P. 12(h)(3) must dismiss a case if it appears "by the suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter ...". *Id*. Accordingly, a court may dismiss an action *sua sponte* if it lacks subject matter jurisdiction. *See e.g.*, *Scholastic Entertainment, Inc. v. Fox Entertainment Group, Inc.*, 336 F.3d 982, 985 (9th Cir .2001). However, if a plaintiff's well-pleaded complaint alleges Copyright Infringement then the complaint confers federal subject matter jurisdiction even if a defendant raises a contractual defense. *Stross v. Redfin Corp.*, Case No. 17-50046, 2018 WL 1721749, at *3 (5th Cir. 2018) (whether plaintiff "may sue (under federal law) for copyright infringement is a separate question from whether [defendant] can prove (under state law) that it has a meritorious license defense"). In these so-called "hybrid" copyright-contract disputes there is an inherent difficulty caused by "the interdependence of contract and copyright claims, which can camouflage the genuine issues to be resolved." *Scholastic Entertainment*, 336 F.3d at 986 (9th Cir. 2003). As the *Scholastic* court explained:

> In *T.B. Harms*, neither the plaintiff nor the defendant had threatened to use the copyrighted material, but merely sought a judicial determination of ownership.

339 F.2d at 825. The court noted that "[t]he relevant statutes create no explicit right of action to enforce or rescind assignments of copyrights, nor does any copyright statute specify a cause of action to fix the locus of ownership." *Id*. at 827. Judge Friendly stated that:

> an action "arises under" the Copyright Act if and only if the complaint is for a remedy expressly granted by the Act, *e.g.*, a suit for infringement or for the statutory royalties for record reproductions, or asserts a claim requiring construction of the Act ... or, at the very least and perhaps more doubtfully, presents a case where a distinctive policy of the Act requires that federal principles control the disposition of the claim.

*Id*. at 828 (citations omitted). In *T.B. Harms*, the Second Circuit found that the test was not satisfied and the district court was correct to dismiss the claims. *Id*. at 827. In summary, the *T.B. Harms* test requires the district court to exercise jurisdiction if: **(1) the complaint asks for a remedy expressly granted by the Copyright Act; (2) the complaint requires an interpretation of the Copyright Act; or (3) federal principles should control the claims**. *Bassett*, 204 F.3d at 349. *Scholastic,* 336 F.3d at 986 (citing *T.B. Harms Co. v. Eliscu*, 339 F. 2d 823 (2d Cir. 1964)(emphasis added).

Here, Plaintiff asks for the following remedies expressly granted by the Copyright Act: injunctive relief pursuant to 17 U.S.C. §§ 502 and 503; statutory damages from each Defendant pursuant to 17 USC § 504, *et seq*. (should Plaintiff so elect); attorneys' fees and costs pursuant to 17 US.C. § 505. Dkt. 22 at 22. Plaintiff's Copyright Infringement claim also requires interpretation of the Copyright Act because Plaintiff alleges he is the sole holder of all copyrights that Defendants are allegedly infringing, including any derivative of his intellectual property such as the Morisky Widget, thereby violating Plaintiff's exclusive rights of "at least production, preparation of derivative works, and distribution", and that such acts have been "willful or willfully blind, intentional, and in disregard of, and with indifferent to" Plaintiff, and finally, that he is entitled to recover attorney's fees and costs. *Id*. at 21-22. In other words, on its face Plaintiff's Copyright Infringement claim seeks remedies expressly granted by the Copyright Act.

As the *Scholastic* court explained, "federal courts walk a fine line between usurping the power of the state courts and providing redress for copyright infringement." *Id*. at 986. In cases involving a copyright, that line is drawn where the Copyright Act is silent. *See Foad Consulting Group, Inc. v. Musil Govan Azzalino*, 270 F.3d 821, 827 (9th Cir. 2001)). Here, the Copyright Act clearly addresses the issue alleged under Plaintiff's Copyright Infringement claim, which asks for a remedy expressly granted by the Copyright Act.

In conclusion, while certain rights and liabilities alleged in the Second Amended Complaint sound in contract, others arise under the Copyright Act and thereby confer subject matter jurisdiction on this Court over this case.

Finally, Defendants move for attorney fees and costs pursuant to paragraph 18 of the SA:

> The Parties agree that if any legal action or other proceeding brought by the Parties to enforce this Agreement, or the Final Agreement or to recover damages or equitable relief for a breach of this Agreement or the Final Agreement, the prevailing party shall recover its costs and reasonable attorneys' fees incurred in any such action or proceeding, including the proceeding to resolve any dispute over the terms of the Final Agreement by the Appointed Decider.

Dkt. 41 at 8; Dkt. 22-6 at 10. Defendants also argue they are entitled to fees and costs pursuant to 17 U.S.C. § 505[4], authorizing the award of fees and costs in response to the filing of the First and Second Amended Complaint seeking dismissal. Dkt. 39 at 22. And last, under Rule 41(d)[5], Defendants believes fees and costs for their motions to dismiss

---

[4] 17 U.S.C. § 505 is entitled "Remedies for infringement: Costs and attorney's fees" and states, "In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs."

[5] Rule 41(d) states, "COSTS OF A PREVIOUSLY DISMISSED ACTION. If a plaintiff who previously dismissed an action in any court files an action based on or including the same claim against the same defendant, the court:
(1) may order the plaintiff to pay all or part of the costs of that previous action; and
(2) may stay the proceedings until the plaintiff has complied."

and related pleadings are appropriate because the prior state and federal actions involved the same parties, issues, and claims. *Id*.

Plaintiff offers the following opposition to an award of fees: "Defendants' motion to dismiss is without merit; their request for an award of fees and costs is likewise unfounded." Dkt. 40 at 15.

In light of the Court's recommendation that Defendants' Motion to Dismiss be denied, the Court also recommends denying Defendants' motion for fees and costs.

## CONCLUSION

Plaintiff's Motion to Strike is denied as moot. The Court recommends denying Defendants' Motion to Dismiss. Dkt. 39.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of de novo review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed to set the matter for consideration on April 22, 2022, as noted in the caption.

Dated this 8th day of April, 2022.

David W. Christel
United States Magistrate Judge