1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DONALD E. MORISKY,

          Plaintiff,

   v.

MMAS RESEARCH LLC, et al.,

          Defendant.

CASE NO. 2:21-CV-1301-RSM-DWC

REPORT AND RECOMMENDATION

Noting Date: September 5, 2022

     The District Court has referred this 42 U.S.C. § 1983 civil rights action to United States Magistrate Judge David W. Christel pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), and local Magistrate Judge Rules MJR1, MJR3 and MJR4. Before the Court is Defendants' Motion for a Temporary Restraining Order and Preliminary Injunction. Dkt. 69.

<u>BACKGROUND</u>

     Plaintiff, Donald E. Morisky (Plaintiff) is a professor emeritus at the University of California, Los Angeles Fielding School of Public Health. Dkt. 22 at 1-2. He created an assessment tool for clinicians to measure medication non-adherence in a variety of patient populations, called the "Morisky Medication Adherence Scale" (MMAS). *Id*. at 2. In the early

2000s Plaintiff obtained Copyright Registrations for variations of this assessment tool, called the MMAS-4 and the MMAS-8. *Id*. at 9. He also has a registered trademark in "MMAS". Dkt. 42-2.

In 2011, Plaintiff founded MMAS Research, LLC as a California limited liability company and began selling licenses to use his copyrighted products and providing training to licensees. *Id*. at 11. According to Plaintiff, from approximately 2011 to 2014 he licensed over 3000 clinics, practitioners, and organizations to use his copyrighted works. *Id*.

In April 2014, Plaintiff entered into a licensing agreement (the 2014 licensing agreement) with Steven Trubow (Trubow), who owned a Washington limited liability company called Olympic Labs, LLC. *Id*. at 12. One of the goals of this licensing agreement was for Trubow to create an electronic version of the MMAS-4 and MMAS-8—now commonly referred to as "the Morisky Widget"—to "automatically" generate diagnostic and intervention protocols from patient answers to the MMAS-4 or MMAS-8. Dkt. 21-5 at 16. The 2014 licensing agreement provided that the parties would share, fifty-fifty, the revenue derived from issuing third-party licenses to the Morisky Widget, but Plaintiff would "at all times remain the owner of the MMAS-8 and any associated intellectual property, patents, copyrights or derivatives derived from the use of the MMAS-8 … ". Dkt. 22 at 12.

In December 2016, Trubow re-organized Olympic Labs, LLC as "MMAS Research LLC," a Washington limited liability company, listing himself and Plaintiff as "managers". Dkt. 21-5 at 19, 21; Dkt. 22-7. However, Plaintiff alleges that Trubow also formed international subsidiaries of MMAS Research, LLC without consulting him. Dkt. 22 at 13.

Following a series of disagreements between the parties, in January 2019 Plaintiff formed his own company called Morisky Medication Adherence Research, LLC (MMAR), a Nevada limited liability company, and, according to Trubow, "began to represent to clients of the jointly

owned MMAS Research, LLC that it no longer had rights to issue licenses to the Morisky

Widget or any Morisky intellectual property." Dkt. 39 at 4. However, according to Plaintiff, on

June 21, 2019 he notified Trubow that he was voluntarily "withdrawing" from MMAS Research

LLC. Dkt. 21-5 at 21. Hereinafter Trubow and MMAS Research, LLC will be referred to

collectively as "Defendants".

On July 27, 2019 Defendants filed a Complaint against Plaintiff in King County Superior

Court alleging breach of fiduciary duty and tortious interference. Dkt. 21-1. Plaintiff

counterclaimed, asserting copyright and trademark infringement, among others claims. Dkt. 21-

5.

On March 10, 2020, Plaintiff provided written notice to Defendants of their alleged

breach of the 2014 licensing agreement, stating "the License [sic] Agreement will terminate on

Friday, April 10, 2020" if Defendants fail to cure their breaches by: (1) Providing a full financial

accounting of MMAS Research from 2017 to the present; (2) Paying Plaintiff all sums due and

not paid under the License [sic] Agreement; and (3) Removing any claims of ownership to the

MMAS-8 and all Morisky IP. Dkt. 22 at 14.

Defendants allegedly failed to comply with these terms. *Id*. at 14-15. Thus, on May 28,

2020 Plaintiff filed a Complaint against Defendants in the United States District Court of Nevada

alleging copyright and trademark infringement, deceptive trade practices, and state law claims.

Dkt. 21-13.

With two cases pending—one brought by Defendants against Plaintiff in Washington

state court, the other brought by Plaintiff against Defendants in Nevada federal court—the parties

reached a verbal settlement agreement on July 2, 2020 that sought to resolve all outstanding

1   claims and counterclaims "with prejudice." *Id*. at 15; Dkt. 22-6 at 1, 8. This agreement was

2   reduced to writing and signed by the parties on December 6, 2020 (the SA). Dkt. 22-6.

3       The SA sets out certain rights and obligations of each party. Unsatisfied with each other's

4   performance, shortly after agreeing to the SA the parties began discussing dispute resolution as

5   required by paragraph 17 of the SA. Dkt. 22 at 17. Relations became so strained that during the

6   process of attempting to schedule dispute resolution, yet another dispute arose regarding what

7   type of dispute resolution was required by paragraph 17: binding arbitration or mediation. *Id*.

8       Defendants returned to King County Superior Court on May 11, 2021 seeking to enforce

9   or rescind the SA. Dkt. 39 at 7; Dkt. 21-22. In response, Plaintiff's moved to compel mediation

10  and dismiss Defendants' case without prejudice, which the King County Superior Court granted

11  on July 9, 2021. Dkt. 21-27. On August 20, 2021 the King County Superior Court issued an

12  order affirming and upholding its July 9, 2021 order, and finding that section 17 of the SA

13  contains a "mediation clause as a precondition of entering a legal cause of action alleging

14  breach." Dkt. 21-32. Nevertheless, the parties remained at an impasse regarding the type of

15  alternative dispute resolution to employ, and have never engaged in post-SA mediation. Dkt. 22

16  at 18. Plaintiff initiated this action on September 24, 2021. Dkt. 1.

17      On April 8, 2022 this Court entered a Report and Recommendation to deny Defendants'

18  motion to dismiss. Dkt. 47. A few days later, on April 15, 2022 this Court entered a Report and

19  Recommendation to deny Plaintiff's motion for a preliminary injunction. Dkt. 48. None of the

20  parties filed objections. On April 25, 2022 the Honorable Ricardo S. Martinez, Chief Judge of

21  this District, entered orders adopting each Report and Recommendation. Dkts. 49, 50.

22

23

24

1    Following a change of counsel representing Defendants (Dkt. 62), Defendants filed an

2    Answer on June 12, 2022 (Dk. 64) and the parties filed an Amended Joint Status Report on June

3    24, 2022 (Dkt. 66).

4    On August 1, 2022 Defendants filed a motion for a temporary restraining order and

5    preliminary injunction against Plaintiff. Dkt. 69. The same day Plaintiff entered a notice of intent

6    to oppose the motion (Dkt. 70) and on August 2, 2022 Plaintiff filed a motion to extend the time

7    to respond to the motion (Dkt. 72). The Court granted Plaintiff until August 10, 2022 to file a

8    response to the motion for temporary restraining order, while noting that pursuant to Local Civil

9    Rule 7(d)(3) a motion for preliminary injunction should be noted on the fourth Friday from the

10   filing date. Dkt. 73 at 1.

11   On August 10, 2022 Plaintiff filed a response in opposition to Defendants' motion. Dkt.

12   75.[1] On August 12, 2022 Defendants filed a reply. Dkt. 78.

13   <u>DISCUSSION</u>

14   Defendant seeks a temporary restraining order (TRO) and preliminary injunction

15   enjoining Plaintiff "from sending tortious communications" about Defendants to anyone,

16   including Morisky Widget users who were allegedly sent a letter[2] by Plaintiff stating that

17   ─────────────────────

18   [1] Defendant asserts Plaintiff's supporting declarations were untimely and should not be considered.
     Plaintiff's deadline for filing a response was August 10, 2022. While Defendant is correct that Plaintiff's supporting

19   declarations were not docketed until August 11, 2022, they were, in fact, filed minutes after the August 10, 2022
     midnight deadline. Since Plaintiff was given a very short period of time to file a response the Court finds Defendants

20   were not prejudiced by these few minutes of lateness and will therefore consider the documents as timely filed.

21   [2] The letter in question is dated April 21, 2022 and signed by F. Christopher Austin, Esq.. It states, in
     relevant part:

22   As set forth in the federal lawsuit, neither Mr. Trubow nor MMAS Research has any
     authority to use or license any copyright of Dr. Morisky **or any derivative** of any copyright of Dr.

23   Morisky. Dr. Morisky is the registered holder of copyrights in the **MMAS-4 Scale (Registration
     No. TX 8285390)** and the **MMAS-8 Scale (Registration No. TX 8632533)**. As such, neither
     Trubow nor MMAS Research has any lawful right to use or license the MMAS-4 Scale or the

24   MMAS-8 Scale.

1  Defendants do not have any right to use or license the Morisky Widget. Dkt. 69 at 1, 3, 7. This

2  letter is also posted on Plaintiff's website[3]. In addition, Defendants would like the Court to order

3  Plaintiff to "correct any other damaging statements made to Morisky Widget licensees[4] after this

4

5

6          Further, the MMAS Research copyright in the Morisky Widget code is an unlawfully
   obtained derivative of Dr. Morisky's MMAS-4 and MMAS-8 registered copyrights (as noted by the
7  U.S. Copyright Office's reference to Dr[.] Morisky's registered copyrights on the Morisky Widget
   registration). As such, neither Trubow nor MMAS Research has any right to use or license the
   Morisky Widget copyright, **which includes use or licensure of the Morisky Widget program.**
8  **ANY PERSON THAT USES OR LICENSES THE <u>MORISKY WIDGET, MMAS-4 SCALE</u>
   <u>OR MMAS-8 SCALE</u> WITHOUT THE EXPRESS WRITTEN AUTHORIZATION OF DR.**
9  **MORISKY WILL BE IN VIOLATION OF U.S. FEDERAL COPYRIGHT LAW FOR**
   **COPYRIGHT INFRINGEMENT.**

10         Finally, Trubow and MMAS Research are infringing Dr. Morisky's trademarks. Dr.
   Morisky is the only person authorized under U.S. federal trademark law to use the following marks
11 in connection with the provision of medication adherence scales, protocols, consultation, training
   and related goods and services: MORISKY, MORISKY MEDICATION ADHERENCE SCALE,
12 MMAS, MMAS-4, MMAS-8, MMAS WIDGET (the "Marks").

13         **ANY PERSON THAT USES ANY OF THESE MARKS WITHOUT THE EXPRESS**
   **WRITTEN AUTHORIZATION OF DR. MORISKY WILL BE IN VIOLATION OF U.S.**
   **FEDERAL TRADEMARK LAW.**

14 Dkt. 69 at 53-54 (emphasis in original).

15     [3] *Morisky Widget Phase Out*, Morisky Medication Adherence Research, LLC. (April 21, 2022),
   https://www.moriskyscale.com/notice-to-clients#/ .

16     [4] For example, on July 31, 2022, Plaintiff sent an email to Morisky Widget licensee Universita di Brescia,
   copying Defendants, stating:

17
   Dear All,
18 Buongiorno. Thank you for your email and the PDF files and documents. Please let me clarify the
   notice you received from Chris Austin, my legal counsel, regarding a lawsuit currently pending
19 before the State of Washington Federal Court against MMAS Research/Steve Trubow for
   infringement of my copyrighted intellectual property (IP), the Morisky Medication Adherence
20 Scales 4 and 8 (MMAS 4 & 8).

21 On April 10, 2020, I severed all business ties and revoked Mr. Trubow's license to market my scales
   and use them in any way, shape, or form without my approval.
22
   On December 4, 2020, Mr. Trubow signed an agreement named CR2A requiring him to surrender
   all MMAS 4 and 8 IP derivatives including the widget, and all MMAS widget licenses (including
23 Universita di Brescia's), the Morisky.org website, language translations, etc. to me. Mr. Trubow—
   who became a business partner in 2014 and did not have any role in the development of the MMAS
   4 and 8 scales which have been widely used and cited in scientific journals from 2007 to this day--
24 later refused to comply with the CR2A he signed.

REPORT AND RECOMMENDATION - 6

Court's issuance of its Report and Recommendation on April 15, 2022", such as that use of

Plaintiff's "MMAS scales" is prohibited without direct permission from Plaintiff. *Id*. at 2. The

statements Defendants wish the Court to enjoin will be referred to hereinafter as "the

communications Defendants seek to enjoin."

The standard for issuing a TRO is the same as the standard for issuing a preliminary

injunction. *See New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co*., 434 U.S. 1345, 1347 n.2

(1977). A TRO is "an extraordinary remedy that may only be awarded upon a clear showing that

---

The Morisky widget, a derivative of my IP, is nothing more than software that codes the scoring algorithms which I—not Trubow nor his programmer-- developed for my copyrighted MMAS scales. I allowed the widget to host the scales during our partnership, but that authorization ceased when I ended the partnership and revoked his license. Mr. Trubow is now misinforming widget clients that he is the sole owner of the IP derivative Morisky widget (US Copyright real name is MMAS Widget Codes), and presumably, my copyrighted MMAS scales the widget is hosting. I did not bequeath my MMAS scales to Mr. Trubow just because I allowed him to host them in the widget. That authorization ceased when our partnership ended.

Regarding Universita di Brescia licensing, Mr. Trubow left me out of the communication thread during the negotiation process, excluded me from signing the agreement, and kept the revenue to himself even though we were still partners at the time Universita di Brescia made the payment. This happened numerous times during our partnership.

I am notifying all widget licensees and MMAS users re the legal issues with the Morisky widget to spare them from legal entanglement. If you wish to continue using my MMAS scales, please contact me directly. I will honor the terms of your license agreement so you can start where you left off. I am also notifying potential users of Trubow's Global Medication Reconciliation Form (GMRF) which he misrepresented in the CR2A agreement as his own IP, only to be exposed later that he is using MMAS scales, without my authorization, as the central component of his polypharmacy medication reconciliation form.

Thank you for your understanding and cooperation.

Sincerely,
Research Professor Donald Morisky ScD, ScM, MSPH,
OWNER/DEVELOPER/SOLE LICENSOR OF MMAS 4 & 8 scales
President, MMAR, LLC MMAS - 4 & -8 Owner/Developer/Licensor
Distinguished Visiting Chair Professor, Kaohsiung Medical University,
Taiwan Distinguished Visiting Professor, National China University, Taichung, Taiwan
UCLA Fielding School of Public Health
Department of Community Health Sciences

Dkt. 69 at 6-7, 73.

1   the [requesting party] is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S.

2   7, 24 (2008). When a party seeks an *ex parte* TRO, such as here, it must make a threshold

3   showing that an injunction is needed in the short period before a proper preliminary injunction

4   hearing can be arranged by providing "specific facts in an affidavit or a verified complaint [to]

5   clearly show that immediate and irreparable injury, loss, or damage will result ... before [the

6   other side] can be heard in opposition." Fed. R. Civ. P. 65(b)(1).

7       Here, Defendants did not submit any affidavit or verified complaint in support of their

8   motion, therefore the Court permitted Plaintiff additional time to respond. Dkt. 73.

9       Plaintiff opposes the motion, insisting Defendants are unlikely to succeed on the merits of

10  their counterclaims, that Defendants have no evidence of irreparable harm, the balance of

11  hardships tips in Plaintiff's favor, and an injunction is not in the public's interest. Dkt. 75 at 14,

12  23-25.

13      The court may issue a preliminary injunction where a party establishes (1) a likelihood of

14  success on the merits, (2) that it is likely to suffer irreparable harm in the absence of preliminary

15  relief, (3) that the balance of hardships tips in its favor, and (4) that the public interest favors an

16  injunction. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008). A party

17  can also satisfy the first and third elements of the test by raising serious questions going to the

18  merits of its case and showing the balance of hardships tips sharply in its favor. *Alliance for the*

19  *Wild Rockies v. Cottrell Eyeglasses*, 632 F.3d 1127, 1134-1135 (9th Cir. 2011); *Riverside*

20  *Publishing Co. v. Mercer Publishing LLC*, Case No. C11–1249RAJ, WL 3420421, at *3 (W.D.

21  Wash. Aug. 4. 2011). The Court need not analyze all the above factors if the absence of support

22  for one factor is dispositive. *Ctr. for Food Safety v. Vilsack*, 636 F.3d 1166, 1174 (9th Cir. 2011).

23      The Court finds Defendants have not shown they are likely to suffer irreparable harm.

24  "Irreparable harm is traditionally defined as harm for which there is no adequate legal remedy, such

as an award of damages." *Arizona Dream Act Coalition v. Brewer*, 151 F.3d 1053, 1068 (9th Cir. 2014) (*citing Rent–A–Ctr., Inc.v. Canyon Television & Appliance Rental, Inc*., 944 F.2d 597, 603 (9th Cir. 1991)). "Those seeking injunctive relief" must do more than just state or argue that they will suffer irreparable harm, they "must proffer evidence sufficient to establish a likelihood of irreparable harm." *Herb Reed Enter., LLC v. Fla. Ent. Mgmt., Inc*., 736 F.3d 1239, 1251 (9th Cir. 2013), *cert. denied*, 135 S.Ct. 57 (2014).

Defendants contend that Plaintiff is "flagrantly disregarding the Court's Report and Recommendation and is actively disrupting the 'status quo' this Court sought to preserve by denying [Plaintiff's] motion for a preliminary injunction." Dkt. 69 at 8. The Court disagrees. In its Report and Recommendation this Court recognized that the SA authorizes Defendants to pursue retroactive licensing agreements for the Morisky Widget, and that granting Plaintiff's motion for an order enjoining Defendants from "using and selling the Morisky IP" including the "Morisky Widget"—the copyright registration for which is in Defendant MMAS Research's name—would halt that process. *See* Dkt. 48 at 9; Dkt. 22-6 at 2, 4. However, Defendants have not shown that the communications they seek to enjoin are disrupting the status quo.

Instead, according to Plaintiff, following the Court's April 15, 2022 Report and Recommendation Defendants "commenced a wide-ranging campaign to contact numerous colleagues and licensees of [Plaintiff's] Copyrighted Scales to misrepresent and misuse the Court's denial of Plaintiff's preliminary injunction as a dispositive finding in favor of MMAS and against [Plaintiff] in this matter." Dkt. 75 at 10. So in response, "Plaintiff directed [his counsel] to prepare a general response to [his] Colleagues." Dkt. 75 at 11; *See also* n. 2, *supra*.

While the Court finds some of the language in the communications Defendants seek to enjoin may be confusing to recipients (all of whom are users of Plaintiff's intellectual property), most appear to be accurate statements of Plaintiff's contentions in this lawsuit, which is a matter of public record. Dkt. 69 at 4, 22. For instance, the statement that Plaintiff has filed a federal lawsuit alleging

Defendants are infringing registered copyrights in the MMAS-4 and MMAS-8 is true. This allegation encompasses Defendants' copyright registration in the Morisky Widget, which Plaintiff claims Defendants improperly registered to MMAS Research and which Defendants have agreed to reassign to Plaintiff under paragraph seven[5] of the SA. *See* Dkt. 69 at 61. Plaintiffs also claim that Defendants' Global Medication Reconciliation Form (GMRF) infringes Plaintiff's IP in contravention of Defendants' representations in the SA that it does not. *Id.*. Finally, Plaintiff's statement that he must sign off on all use of his IP, including the Morisky Widget, is also consistent with paragraph five[6] of the SA, which requires Plaintiff to co-sign on retroactive licensing agreements that Defendants execute. *See* Dkt. 22-6 at 22-23.

---

[5] Paragraph seven of the SA states: "MMAS Research, LLC and Steven Trubow will provide access to and **transfer the Morisky Widget software and database to Donald Morisky** or his assignees. The Trubow Party **shall train the Morisky Party in the use of the Morisky Widget** (including, without limitation, any code book or other instructional material, if any, identifying database variables and how they are scored) **so that they may operate and maintain it as currently constituted and service licensees as presently done by the Trubow Party**. Each Party will agree to cooperate in good faith and keep the existing morisky.org website available and running for a transition period to commence upon the execution of this Agreement and to conclude within 60 days of the date the Final Settlement Agreement becomes binding on the Parties in accordance with Paragraph 17 of this Agreement (the "Transition Period"). Therefore, it is agreed between the Parties that the Transition Period shall be for 120 days following execution of this Agreement unless otherwise modified by the written agreement of the Parties. Upon the completion of: (i) the transfer of the Morisky Widget software, database and all related information and content to Donald Morisky or his assignees sufficient to take over the management and operation of the same, and (ii) the termination of the Transition Period, MMAR shall indemnify MMAS Research, LLC and Steven Trubow from any claims by licensees arising from issues related to the access to or utilization of the Morisky Widget. **The Morisky Party and MMAR agrees to provide full access to the Morisky Widget and support as needed to all licensees as long as their licenses to the Morisky Widget are in effect**, including adhering to all European Union Privacy regulations (including but not limited to GDPR and HIPPA)." Dkt. 22-6 at 5-6 (emphasis added).

[6] Paragraph five of the SA states: "Within thirty (30) days of the execution of this Agreement, MMAS Research, LLC and/or Steven Trubow or their counsel prosecuting any Claim Settlement shall disclose or make available to Donald Morisky or his counsel, all information regarding any Claim Settlement set forth in Exhibit 3, including, without limitation, the nature of the infringement, the type of settlement sought (e.g. retroactive license, new license, etc.), the number of tests or assessments at issue, the estimated settlement payment, etc. MMAS Research, LLC and/or Steven Trubow or counsel prosecuting the Claim Settlements shall in good faith entertain and address through counsel prosecuting the Claim Settlements any questions or concerns Donald Morisky may have regarding any Claim Settlements set forth in Exhibit 3 and shall dismiss or abandon any Claim Settlement shown to be without legal merit (e.g. a non-infringing use of an adherence scale in the public domain); provided, however, that the final decision as to whether the claim has legal merit shall be determined by the attorney or attorneys prosecuting the Claim Settlement at issue. **Donald Morisky** (and/or his heirs, assigns, or successors in interest) **further agrees to execute, sign, and cooperate in the finalization of any and all Claim Settlement agreements** as directed by MMAS Research, LLC, Steven Trubow or the attorneys prosecuting the Claim Settlements; provided, however, that such Claims Settlement agreements will not impose future obligations on Donald Morisky or his assignees without Donald Morisky's consent, **which consent shall not be unreasonably withheld**. MMAS

1    Defendants argue that without an injunction they "will continue to lose business relationships

2    and opportunities for settlement," and have already lost "revenue from 200 perpetual licensees"

3    which, "coupled with demands [for refunds] like the one received from OPIS[7] … could push

4    Defendants into bankruptcy, thereby causing irreparable harm." Dkt. 69 at 9; Dkt. 78 at 4.

5    Defendants attach a supporting exhibit to their reply, purporting to "accurately reflect" Defendants

6    "lost revenue for 2021 to 2022" and listing 34 entities and corresponding dollar figures totaling

7    $975,500. Dkt. 78-1 at 2, 4. Notably, "It is well established in this circuit that '[t]he general rule is

8    that appellants cannot raise a new issue for the first time in their reply briefs.'" *Eberle v. City of*

9    *Anaheim*, 901 F.2d 814, 818 (9th Cir. 1990) (citations omitted). Nevertheless, since Plaintiff did not

10   file a sur-reply to strike pursuant to LCR 7(g), this Court has considered the exhibit and finds that it

11   does not advance Defendants' irreparable harm argument. It is unclear from this exhibit whether

12   these 34 entities represent a portion of the "200 perpetual licensees" Defendants anticipate losing, or

13   whether this list reflects other losses. The Declaration of Rodney Watkins, who prepared the exhibit,

14   states that it "reflects the estimate of lost revenue for MMAS Research LLC from 2021 to 2022."

15   Dkt. 78-1 at 2. Neither the Declaration nor the exhibit itself states whether this means from January

16   1, 2021 to December 31, 2021, or if the amount includes lost revenue for 2022. And if the amount

17   includes lost revenue for 2022, how much lost revenue is from 2021 and how much from 2022?

18   Moreover, the Court cannot determine whether any of the amount is a prospective estimate of the

19   irreparable harm that will occur if the preliminary injunction is not ordered. Finally, although this

20   Research, LLC and/or Steven Trubow shall indemnify Donald Morisky against any order, judgment, or award
21   entered in, or any claim arising from, any Claim Settlement and against any costs or attorney's fees exceeding the
     sum recovered in any Claim Settlement." Dkt. 22-6 at 4-5 (emphasis added).

22   [7] On July 29, 2022, Defendants received a letter from the CEO of a Morisky Widget licensee named OPIS
     stating that they learned via Plaintiff's website, under a post entitled "Predatory Pricing from Steve Trubow," that
23   MMAS Research "does not have any rights to use the Widget" and that "these circumstances were directly
     confirmed by Donald Morinsky." The letter demands a refund for training and certification services that Defendants
24   performed. Dkt. 69 at 5-6, 67-68.

exhibit reflects significant sums of money, it does not offer enough information regarding

Defendants' financials for this Court to conclude that the loss of this revenue will bankrupt

Defendants. *See*, *e.g.*, *Los Angeles Memorial Coliseum Comm. v. N.F.L.*, 634 F.2d 1197, 1202-03

(9th Cir. 1980) (threat that entity will be put out of business can be an irreparable harm but threat of

lost revenue cannot).

Similarly, Defendants have not shown the settlement of the 375 remaining retroactive

sublicenses pursuant to paragraph four[8] of the SA have been "rendered impossible" to execute, or

that such impossibility will cause Defendants irreparable harm. Dkt. 69 at 10. While Defendants

assert that Plaintiff refuses "to cooperate in settling the remaining 375 claims" and by "chasing off

Defendants' lawyers [Plaintiff has] made the bulk of the claims in the [SA] virtually worthless,

especially as time continues ticking on the statute of limitations for these claims", Defendants offer

no evidence of these assertions. *Id*. Notably, Plaintiff insists he has never refused to cooperate in any

retroactive licensing deal that Defendants have presented him (notwithstanding his legal position that

the time for executing such agreements has long-since expired). Dkt. 75 at 11-12, 15, 17, 23.

Also unclear at this time is whether the communications Defendants seek to enjoin are the

cause for allegedly "killing licensing and training deals [and] causing existing clients … to

demand money back." In addition, Defendants have not offered any proof regarding the value of the

---

[8] Paragraph four of the SA states, "Donald Morisky authorizes MMAS Research, LLC through its attorney(s) to prosecute the Claim Settlements listed in Exhibit 3 from which a Claim Settlement may be sought related to the MMAS-4, MMAS-8, the Morisky Widget and any related intellectual property, and further agrees to cooperate in any existing investigations, claims and ensuing litigation of any such claims, whether now pending or to be litigated in the future, including the formal assignment of such claims, if necessary to MMAS Research, LLC. With the exception of any filed, active, lawsuit then proceeding, all prosecution of Claim Settlements by MMAS Research, LLC through its attorney(s) must conclude within two (2) years of the expiration of the Transition Period as described in Paragraph 7 of this Agreement. Any legal actions, including claims for infringement, may be filed in the name of Donald Morisky if required by law, as the owner(s) of the Morisky IP." Dkt. 22-6 at 4-5.

375 remaining retroactive sublicenses and the record indicates these damages would be quantifiable and compensable.

Finally, the Court finds speculative and conclusory Defendants' claim that they will suffer irreparable damage to their reputation and standing in the industry as a result of the communications Defendants seek to enjoin. Dkt. 69 at 9-10. "Evidence of loss of control over business reputation and damage to goodwill [can] constitute irreparable harm," but the record must include concrete evidence of such harm. *Herb Reed Enterprises, LLC v. Florida Entertainment Management, Inc*.,736 F.3d 1239, 1250 (9th Cir. 2013), *cert. denied* 135 S.Ct. 57 (2014). A party seeking injunctive relief may not rely on "unsupported and conclusory statements regarding harm [the party] might suffer" in the future. *Id*. Irreparable harm will not be presumed where a party presents no proof beyond speculation that its reputation or goodwill in the market will be damaged, because the Court has no way of evaluating this intangible harm. *See Cloanto Corporation v. Hyperion Entertainment CVBA*, Case No. C18-381RSM, 2019 WL 1489185, at *2 (W.D. Wash. April 03, 2019)(citing *Mirina Corp. v. Marina Biotech*, 770 F. Supp. 2d 1153, 1162 (W.D. Wash. 2011)). Defendants have not supported their reputational injury claims with any declarations of persons with actual knowledge of such matters, or any other concrete evidence.

In sum, Defendants have failed to prove they will suffer irreparable harm in the absence of a preliminary injunction, which ends this Court's analysis of the motion.

<u>CONCLUSION</u>

For the reasons stated above, the undersigned recommends that Defendants' Motion for a Temporary Restraining Order and Preliminary Injunction be denied. Dkt. 69.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of *de novo*

review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140, 142 (1985); *Miranda v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the Clerk is directed to set the matter for consideration on September 5, 2022 as noted in the caption.

Dated this 22nd day of August, 2022.


David W. Christel
United States Magistrate Judge