UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DONALD E. MORISKY,

          Plaintiff,

v.

MMAS RESEARCH LLC, et al.,

          Defendant.

CASE NO. 2:21-CV-1301-RSM-DWC

ORDER RE DEFENDANT'S MOTION TO AMEND ANSWER, AFFIRIMATIVE DEFENSES, AND COUNTERCLAIMS

The District Court has referred this 42 U.S.C. § 1983 civil rights action to United States Magistrate Judge David W. Christel pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), and local Magistrate Judge Rules MJR1, MJR3 and MJR4. Before the Court is Defendant's Motion to Amend Amended Answer, Amended Affirmative Defenses, and Amended Counterclaims. Dkt. 68.

## BACKGROUND

Since the parties are familiar with the facts of this of this case the Court will not restate them here.

1     The operative Second Amended Complaint was filed by Plaintiff on November 19, 2021. Dkt. 22, 37.

    On May 23, 2022, Defendants filed their Answer to Plaintiff's Second Amended Complaint, along with Counterclaims for (1) a Declaratory Judgment that Plaintiff's copyrights are invalid; (2) a Declaratory Judgment that Defendants are the proper owner of the Morisky Widget copyright; (3) a Declaratory Judgment that Defendants are entitled to two years of uninterrupted and unopposed performance of the settlement agreement between the parties; (4) Breach of Contract for interfering with Defendants' ability to execute his rights and responsibilities under the settlement agreement; (5) Tortious Interference with the Business Expectancies Plaintiff consented to as memorialized in Exhibit 3 of the settlement agreement; (6) Tortious and Malicious Abuse of Process by initiating litigation for the illegitimate purpose of placing doubt on the ability of Defendants to extend valid licenses to the Morisky Widget; and, (7) Copyright Infringement by republishing translations of the Copyrighted Morisky Widget translations using the legend, "© 2006 Donald E. Morisky." Dkt. 52. Plaintiff did not reply.

    After a series of motions to dismiss this case (Dkt. 20, 29, 47, 49), and following a change in defense counsel (Dkt. 62), on June 12, 2022 Defendants filed an Amended Answer to Plaintiff's Second Amended Complaint, Amended Affirmative Defenses, and Amended Counterclaims (Dkt. 64). In addition to adding facts to bolster the above counterclaims, the Amended Answer added two additional Counterclaims: (1) Unfair Business Practices Under RCW 19.86.020 alleging Plaintiff copied the Morisky Widget software, named it the "MMAS Research Widget Code" and created relationships with businesses that were to be serviced and licensed through the Morisky Widget pursuant to the terms of the settlement agreement and told the businesses Defendants were not authorized to sell licenses to the Morisky Widget; and, (2)

ORDER RE DEFENDANT'S MOTION TO
AMEND ANSWER, AFFIRMATIVE DEFENSES,
AND COUNTERCLAIMS - 2

Breach of the Implied Covenant of Good Faith and Fair Dealing by affirmatively interfering with Defendants' ability to seek a settlement of the outstanding claims listed in Exhibit 3 to the settlement agreement, and by copying, without authorization, the software contained in the Morisky Widget and creating a copycat widget to compete with it. Dkt. 64 at 32-34. Again, Plaintiff did not reply.

On July 28, 2022, Defendant filed the instant Motion to file a Second Amended Answer to Defendant's Second Amended Complaint, Amended Affirmative Defenses, and Amended Counterclaims. Dkt. 68. Defendants seek to add Plaintiff's attorney, F. Christopher Austin (Attorney Austin) "as an additional Counterclaim Defendant", and to add new facts allegedly arising out of events that happened after the date of their "Amended Counterclaim" related to the Counterclaims of Tortious Interference with Business Expectancy, Tortious and Malicious Abuse of Process, and Unfair Business Practices. Dkt. 68 at 5; Dkt. 68-1 at 33-37.

On August 15, 2022 Plaintiff responded in opposition to Defendants' motion to amend (Dkt. 79) and on August 19, 2022 Plaintiff filed a reply. Dkt. 82.

## STANDARD

Pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure:

> … a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.

"Rule 15(a) is very liberal and leave to amend 'shall be freely given when justice so requires.'" *AmerisourceBergen Corp. v. Dialysis West, Inc.*, 445 F.3d 1132, 1136 (9th Cir. 2006). "In determining whether leave to amend is appropriate, the district court considers 'the presence of any of four factors: bad faith, undue delay, prejudice to the opposing party, and/or futility.'" *Owens v. Kaiser Foundation Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001) (quoting *Griggs v. Pace Am. Group, Inc.*, 170 F.3d 877, 880 (9th Cir. 1999)).

DISCUSSION

Pursuant to Rule 15, Defendants seek to add Plaintiff's attorney, F. Christopher Austin (Attorney Austin) "as an additional Counterclaim Defendant", and to include new facts arising out of events that allegedly occurred after their operative pleading was filed. Dkt. 68 at 5; Dkt. 68-1 at 33-37.

Plaintiff objects to the proposed amendment in its entirety, arguing the motion is made in bad faith and is futile. Dkt. 79 at 2. According to Plaintiff, after this Court denied Plaintiff's motion for a preliminary injunction in April 2022, Defendants "commenced a wide-ranging campaign to contact numerous colleagues and licensees of [Plaintiff's] Copyrighted Scales to misrepresent and misuse the Court's denial of Plaintiff's preliminary injunction as a dispositive finding in favor of MMAS." Dkt. 79 at 4. In response, Plaintiff claims he instructed his counsel to prepare a letter regarding "the status of the instant case and Plaintiff's claims as set forth in the public pleadings and filings herein." Dkt 79 at 5.

Plaintiff insists Defendants' proposed amendments would be futile because this Court does not have personal jurisdiction over Attorney Austin, and even if it did, Attorney Austin is shielded from personal liability for statements he makes in furtherance of his client's interest, and "Defendants' claims arising out of the April [2022] Letter are also barred by absolute litigation privilege, response privilege, and the *Noerr-Pennington* doctrine." Dkt. 79 at 6.

I.   This Court does not have personal jurisdiction over Attorney Austin.

Turning first to the question of whether this Court may exercise personal jurisdiction over Attorney Austin, Defendants did not address personal jurisdiction in their motion (Dkt. 68), but in their reply Defendants assert that this Court has general jurisdiction over Attorney Austin (Dkt. 82 at 4) because he has been admitted *pro hac vice* in this case and a previous case in the

state, which means he has "agreed to be bound by the disciplinary rules for Washington courts and submitted to the governing ethical bar in Washington". Dkt. 82 at 4.

According to Defendants, the interests of judicial economy and convenience favor permitting them to add Attorney Austin as a party to this case rather than file a separate action against him because Attorney Austin was directly involved in committing the acts alleged in their Counterclaims. Dkt. 68 at 5-6; Dkt. 68-1 at 33-37. Defendants contend that Plaintiff will not be prejudiced by this amendment because discovery has yet to begin. *Id*. at 5.

"Federal courts apply state law to determine the bounds of their jurisdiction over a party." *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1020 (9th Cir. 2017) (*citing* Fed. R. Civ. P. 4(k)(1)(A)). Washington's long-arm statute—RCW 4.28.185—"extends jurisdiction to the limit of federal due process." *Shute v. Carnival Cruise Lines*, 783 P.2d 78, 82 (Wash. 1989). The due process clause grants the court jurisdiction over defendants who have "certain minimum contacts … such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

A plaintiff asserting general jurisdiction must meet an "exacting standard." *Arnold Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 804 (9th Cir. 2004). A defendant is not subject to general jurisdiction unless its contacts are so "substantial or continuous and systematic" that they "approximate physical presence" in the forum state. *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000) (no general jurisdiction despite continuous business relationship with two television networks and a handful of California vendors). The Ninth Circuit "regularly [has] declined to find general jurisdiction even where [a party's] contacts were quite extensive." *Amoco Egypt Oil Co. v. Leonis Nav. Co., Inc.*, 1 F.3d 848, 851 n. 3 (9th Cir. 1993).

General jurisdiction requires a much more substantial connection to the forum than does specific jurisdiction. *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995). A court must consider "all of the defendant's activities that impact the state, including whether the defendant makes sales, solicits or engages in business, serves the state's markets, designates an agent for service of process, holds a license, has employees, or is incorporated there." *Hirsch v. Blue Cross, Blue Shield of Kansas City,* 800 F.2d 1474, 1478 (9th Cir.1986). A mere showing that a defendant has systematic business contacts with the forum, however, is insufficient. *Bancroft & Masters*, 223 F.3d at 1086. A plaintiff must show that the defendant's activities transcend doing business "with" the forum state such that it is fair to say that defendant is actually doing business "in" the forum state. *Id.*; *see also Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 418 (1984) ("[M]ere purchases, even if occurring at regular intervals, are not enough" to support general jurisdiction.). It is not enough to show that defendant has "stepped through the door" of the forum by engaging in ongoing business contacts; plaintiff must show that defendant "sat down and made itself at home." *Weyerhaeuser Co., Inc. v. Keating Fibre Intern.*, Inc., 416 F. Supp. 2d 1041, 1045 (W.D. Wash. 2006)(*citing Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1125 (9th Cir. 2002)).

Here, Plaintiff avers that Attorney Austin lives in Las Vegas, Nevada, is not licensed to practice law in Washington, and that his law firm—Weide & Miller, Ltd.—is a Nevada Limited Liability Company with its sole office located in Las Vegas. Dkt. 76 at 1. Attorney Austin also states that his only connection with the state of Washington is representing Plaintiff in this case on a *pro hac vice* admission, and only because Defendants are located here. Dkt. 79 at 6-7. Finally, according to Attorney Austin none of his challenged conduct (in his representative

capacity or otherwise) has anything to do with the state of Washington or any resident other than Defendants. *Id*.

Applying the foregoing principles, this Court concludes that Attorney Austin lacks the substantial, continuous and systematic contacts with the State of Washington that are a prerequisite to this Court's exercise of jurisdiction over him. Defendants' sole argument in favor of jurisdiction—that Attorney Austin's *pro hac vice* admission is sufficient to rise to the level of continuous and systematic contacts with a forum state—is not supported by any case law, nor has this Court located any law so holding.

Since this Court lacks personal jurisdiction over Attorney Austin, Defendants' motion to add him as a party to this case is denied. Accordingly, this Court need not address Plaintiff's bad faith argument.

II.  <u>Defendants are entitled to add their proposed factual amendments.</u>

Defendants seek to "add new facts arising out of events that happened after the date of the Amended Counterclaim". Dkt. 68 at 5. Specifically, Defendants propose the following additions to the "background" section preceding their enumerated Counterclaims:

> 47. On or about July 2022, MMAS Research was finalizing a settlement with pharmaceutical company Mitsubishi Tanabe Pharma Corporation.
>
> 48. On July 8, 2022, a representative of Mitsubishi Tanabe Pharma Corporation sent an email to MMAS Research, which stated the following:
>
> Dear Steven,
>
> Thank you for your email.
>
> We did receive a communication from Philip Morisky. Based on that communication there appears to be a legal dispute between you/MMAS Research LLC and the Morisky family in the United States. Because that communication references United States legal matters, all communications regarding this matter should be with our U.S. legal counsel. We request that you contact our U.S. legal

ORDER RE DEFENDANT'S MOTION TO
AMEND ANSWER, AFFIRIMATIVE DEFENSES,
AND COUNTERCLAIMS - 7

counsel, Frank West of Oblon, McClelland, Maier and Neustadt LLP. His email address is fwest@oblon.com. This same response was provided to Mr. Morisky.

Best regards,

Junko Iyoda

49. Upon information and belief, the communication from Philip Morisky referenced in the aforementioned email included disparaging statements about Trubow/MMAS Research and their inability to effectuate a settlement with Mitsubishi Tanabe Pharma Corporation.

50. On July 27, 2022, MMAS Research sent an email to Mitsubishi Tanabe Pharma Corporation, cc'ing Morisky, which stated the following:

Dear Ms. Junko,

Thank you for your response.

Please see the report below from Judge Christel which should clarify ownership of the Morisky Widget copyright and the Mitsubishi Tanabe Morisky Widget. On April 15, 2022, United States Magistrate Judge David W. Christel of the United States District Court, Western District of Washington at Tacoma, issued a Report and Recommendation in case no. 2:21-CV-1301-RSM-DWC ("Report and Recommendation"), a dispute between Plaintiff and Donald Morisky, which acknowledged that "MMAS Research LLC holds the Copyright Registration to the Morisky Widget…." Report and Recommendation at page 6, line 22. Further, the Magistrate Judge acknowledged that "the Morisky Widget is exclusively in [MMAS Research LLC's] control…" Report and Recommendation at page 8, line 16. A true and accurate copy of the aforementioned "Report and Recommendation" is attached hereto as Exhibit A.

MMAS Research LLC is suing Donald Morisky, Phillip Morisky, and Christopher Austin in the U.S. Federal District Court in New Jersey, Washington State, and California for tortious interference and willful copyright infringement.

Our attorney Mr. Thad Scroggins will contact Mr. West at his earliest convenience.

51. On July 27, 2022, Morisky sent an email to Mitsubishi Tanabe Pharma Corporation, cc'ing Trubow/MMAS Research, which stated the following:

Dear All,

Mr. Trubow is falsely misinterpreting Judge Christel's statement on ownership of the Morisky widget which is still very much in active litigation at this time. The

ORDER RE DEFENDANT'S MOTION TO
AMEND ANSWER, AFFIRMATIVE DEFENSES,
AND COUNTERCLAIMS - 8

judge's statement was a response to a preliminary injunction that the Morisky Widget issue is still very much a part of a lawsuit to be heard June 2023 in the State of Washington Federal Court by jury trial. Mr. Trubow knows this and yet he is actively misinforming you and other clients that a final verdict has been rendered. Mr. Trubow—who did not have any part in the creation of the Morisky Medication Adherence Scales (MMAS) 4 & 8—signed an agreement on December 2020 which required him to turn over all MMAS IP and derivatives (including the Morisky widget and licensees such as the MITSUBISHI TANABE Morisky widget) to me, owner/ developer of the copyrighted MMAS scales. Mr. Trubow brazenly violated that agreement and this is why we are in federal lawsuit against him.

The Morisky Widget—the real registered name with the US Copyright Office is "MMAS Widget Code"—is nothing more than a software which assigns computer codes to the scoring algorithms that I—not Mr Trubow or his programmer—developed for the MMAS 4 & 8 scales. Just because I allowed the widget to host my scales does not mean I bequeathed my copyrighted IP, my life's work—to Trubow forever. When I revoked Mr. Trubow's license to use my copyrighted scales in 2020, I also revoked his use of my MMAS scales in the widget software. He is misinforming Morisky widgets clients that he is the sole owner of the MMAS scales which bear my name and which I spent 2 decades developing in the course of my academic career. I have been licensing them to clients even before Mr. Trubow came into the picture in 2014 as a business partner. The validated MMAS scales are one of most widely cited in high tiered journals since 2007. Note that the scales are named after me, not Trubow. Mr. Trubow can have his widget software WITHOUT my copyrighted life's work, i.e., the MMAS 4 and 8 item questionnaire and scoring algorithms AND without my name Morisky attached to the Widget software.

Mr. Trubow is infringing on my name Morisky and the term "MMAS" when he refers to the Widget as Morisky widget rather than the registered "MMAS widget code". This was allowed during our short partnership but not anymore when I revoked his license.

This too is part of the lawsuit against Mr. Trubow, as is his clinically unvalidated Global Medication Reconciliation Form (GMRF) in which he misrepresented in our December 2020 agreement as his own IP only to be found out later that he is using my MMAS scales, unauthorized, as the central component of his polypharmacy reconciliation form.

I have copied my counsel Chris Austin to clarify Mr. Trubow's misinformation re Judge Christel's statement. We are also informing Morisky widget clients and licensees not to use the Morisky widget as they will be subject to infringement claims by the Morisky family, the only rightful owners/sole licensor of the MMAS 4 and 8 scales and its derivatives. We are transitioning Morisky widget clients to our own software.

> If you wish to use MMAS-4 or -8 scales please contact me directly.
>
> Thank you very much for your understanding and cooperation. Please let me or my counsel Chris Austin know if you or your legal counsels have questions.

Dkt. 68-1 at 26-29.

Plaintiff objects to these amendments on the basis of futility[1]. Dkt. 79 at 6. According to Plaintiff, the communications Defendants seek to add were all made in connection with or in the course of this legal proceeding and are therefore protected under the "absolute litigation privilege, the response privilege, and the *Noerr-Pennington* doctrine." Dkt. 79 at 6. In so arguing, Plaintiff places an unwarranted emphasis on the April 2022 letter drafted by Attorney Austin, already contained in the operative pleading[2] (to which they did not respond[3]) and fail to explain why the proposed amendments are futile. Dkt. 79 at 8-9.

For instance, Plaintiff argues the common law conditional reply privilege shields him from liability for "the April Letter and all communications allegedly made by Plaintiff through his counsel [because they were made] in response to false allegations regarding this case and its proceedings" entitling Plaintiff to "set the record straight". Dkt. 79 at 9. Regarding the April 2022 letter, Plaintiff explains:

> On April 15, 2022, this Court denied Plaintiff's motion for a preliminary injunction. Immediately thereafter, Trubow commenced a wide-ranging campaign to contact numerous colleagues and licensees of Dr. Morisky's Copyrighted Scales to

---

[1] A motion for leave to amend may be denied on futility grounds if the court concludes the pleading, as amended, would not withstand a motion to dismiss. *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988); *see also* Fed. R. Civ. P. 15(a).

[2] Defendants' proposed amendments do not encompass the April 2022 letter, which was already incorporated by reference and contained as an exhibit in Defendants' operative "Amended Answer to Plaintiff's Second Amended Complaint, Amended Affirmative Defenses, and Amended Counterclaims". *See* Dkt. 64 at 25-26.

[3] *See* Fed. R. Civ. P. 12 (1)(B)("A party must serve an answer to a counterclaim or crossclaim within 21 days after being served with the pleading that states the counterclaim or crossclaim.").

> misrepresent and misuse the Court's denial of Plaintiff's preliminary injunction as a dispositive finding in favor of MMAS.
>
> In response to these false claims and to preserve his relationships, Plaintiff directed the undersigned counsel to prepare a general response to "Dr. Morisky's Colleagues." That response is the April 21, 2022 ("April Letter"), letter attached as Exhibit N to Defendants' proposed Second Amended Counterclaim. As noted in the first paragraph, counsel prepared this letter with the understanding that it would be provided in response to "email communications [first received] from Steven Trubow" regarding this action. The letter then sets forth the status of the instant case and Plaintiff's claims as set forth in the public pleadings and filings herein.

Dkt. 79 at 4-5 (footnotes omitted).

However, Defendants insist that this order of events is inaccurate, as evidenced by Plaintiff's failure to cite any communications by Trubow between April 15, 2022 and April 21, 2022 wherein he allegedly "misrepresents and misuses the Court's denial of Plaintiff's motion for preliminary injunction as a dispositive finding in favor of MMAS." Dkt. 82 at 2-3. Instead, according to Defendants, Trubow did not communicate about the Court's denial of Plaintiff's motion for a preliminary injunction until *after* Plaintiff posted the April 2022 letter on Morisky's website. *Id*.

After careful review of the relevant evidence the Court finds Defendants' interpretation of the timeline appears to be correct. Because the conditional reply privilege only protects "[a]llegedly libelous statements, spoken or written by a party or counsel in the course of a judicial [or extrajudicial] proceeding … if they are pertinent or material to the redress or relief sought[,]" and as it appears Plaintiff's April 2022 letter was not written to redress allegedly libelous statements made by Defendants regarding the Court's denial of Plaintiff's preliminary injunction, the Court concurs with Defendants that the conditional reply privilege does not apply in this context. *McNeal v. Allen*, 95 Wash.2d 265, 267 (1980); *Demopolis v. Peoples Nat'l Bank*, 59 Wn. App. 105, 109 (Wash. Ct. App. 1990).

ORDER RE DEFENDANT'S MOTION TO
AMEND ANSWER, AFFIRIMATIVE DEFENSES,
AND COUNTERCLAIMS - 11

1      Next, Plaintiff argues that posting the April 2022 letter on his website is protected by the

2  *Noerr-Pennigton* doctrine, which shields conduct "incidental to a lawsuit, including a pre-suit

3  demand letter," (so long as it does not fall into the realm of "sham litigation") from liability. Dkt.

4  79 at 11 (citing *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 930 (9th Cir. 2006) and *Theme

5  Promotions, Inc. v. News America Marketing FSI*, 546 F.3d 991, 1007 (9th Cir. 2008)).

6  Defendants urge this Court to conclude that it is too early to tell whether Plaintiff's

7  communications are protected by any privilege "since Plaintiff's questionable communications

8  appear to be ongoing." Dkt. 82 at 5.

9      The Court concurs with Plaintiff, for purposes of this motion, that his April 2022 letter—

10 posted on the Morisky website and sent to some customers to inform he had sued

11 Defendants for copyright infringement and to advise them regarding continued use of the

12 copyrighted material at issue—falls under the *Noerr–Pennington* doctrine and is therefore

13 protected under the First Amendment right to petition. *See e.g.*, *Sliding Door Co. v. KLS Doors,

14 LLC*, Case No. EDCV 13–00196 JGB (DTBx), 2013 WL 2090298, at *6 (C.D. Cal. May 01,

15 2013)(*Noerr-Pennington* doctrine barred defendants' claim for false advertising because the

16 communication at issue—an email sent to consumers informing them that plaintiff had sued

17 defendant for patent infringement—was sufficiently related to the reasonably pleaded

18 complaint). However, this Court does not concur that Defendants' motion to amend is rendered

19 futile as a result, because Defendants' motion does not seek to add the April 2022 letter. *See* Dkt.

20 79 at 11.

Next, Plaintiff claims "communications [with former, current or prospective licensees of the Widget] cannot form the basis of a claim for tortious interference with business expectancy" [4] because, "it is impossible *as a matter of law* for Dr. Morisky to interfere with his own existing or prospective contractual relations." Dkt. 79 at 11-12 (emphasis added). This is not a full-throated futility challenge to amending an unsalvageable claim, but a motion for summary judgment untethered to supporting case law. Here, the only communication by Plaintiff that Defendants seek to add to their amended pleading is the July 27, 2022 email to Mitsubishi Tanabe Pharma Corporation. *See* Dkt. 68-1 at 28-29. This email is not the "basis" for Defendants' extant tortious interference counterclaim, even if Defendants believe this communication further buttresses that counterclaim.

Finally, Plaintiff's argument that Washington's litigation privilege[5] "bars *any claim* against the Dr. Morisky [sic] and his counsel for preparing, emailing or posting the April [2022] Letter, or *for any other communication made or action taken in connection with this lawsuit* and in response to the false claims of Defendants." Dkt. 79 at 8 (emphasis added). This is far too broad an assertion made in far too conclusory a manner for the Court to take up in the context of ruling on a motion to amend a pleading.

---

[4] Under Washington law, the elements of tortious interference with a contract or business expectancy are: "(1) the existence of a valid contractual relationship or business expectancy; (2) that defendant[ ] had knowledge of that relationship; (3) an intentional interference inducing or causing a breach or termination of the relationship or expectancy; (4) that defendant[ ] interfered for an improper purpose or used improper means; and (5) resultant damage." *Pac. Nw. Shooting Park Ass'n v. City of Sequim*, 158 Wash.2d 342 (2006).

[5] "Under Washington's litigation privilege, immunity from civil liability is afforded to witnesses, attorneys, and parties in a lawsuit for statements made in the course of or in connection with judicial proceeding." Dkt. 79 at 8 (*citing Deatherage v. Examining Bd. of Psychol.*, 134 Wash.2d 131, 135 (1997) (discussing litigation privilege for expert witnesses) (quoting Restatement (Second) of Torts § 588 (1977) and *Kearney v. Kearney*, 95 Wn. App. 405, 415 (Wash. Ct. App. 1999) ("Attorneys likewise enjoy immunity from civil liability during judicial proceedings to ensure that they have freedom to secure justice for clients")).

ORDER RE DEFENDANT'S MOTION TO
AMEND ANSWER, AFFIRMATIVE DEFENSES,
AND COUNTERCLAIMS - 13

1    In sum, Plaintiff has failed to persuade the Court that Defendants' proposed factual
2 amendments are futile. To the contrary, the Court finds that Defendants must be freely given
3 leave to amend their pleading to set forth the factual events that have occurred after the date of
4 the operative pleading[6], as enumerated above.

5                              CONCLUSION[7]

6    Defendant's Motion to Amend Amended Answer, Amended Affirmative Defenses, and
7 Amended Counterclaims (Dkt. 68) is granted in part, and denied in part, for the reasons and in
8 the particulars set forth herein.

9    Within two weeks of the date of this order Defendants are instructed to submit for the
10 Court's review a clean final version, as well as a redlined version that shows the changes made to
11 Defendants' "Second Amended Answer to Defendant's Second Amended Complaint, Amended
12 Affirmative Defenses, and Amended Counterclaims" in compliance with this Order. After the
13 Court has an opportunity to review these documents the Court will direct counsel to docket a
14 final version of the amended pleading.

15   Dated this 14th day of September, 2022.

                                    _____
                                    David W. Christel
                                    United States Magistrate Judge

---

[6] "On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Rule 15(d). However, Rule 15(d) supplementation does not allow the introduction of "separate, distinct and new causes of action." *Planned Parenthood of S. Arizona v. Neely*, 130 F.3d 400, 402 (9th Cir. 1997) (internal quotation omitted).

[7] It is within a magistrate judge's authority to grant leave to amend the complaint. *Vandehey v. Real Soc. Dynamics, Inc.*, Case No. 2:17-cv-02230-JAD-NJK, 2017 WL 4411042, at *1 n.4 (D. Nev. Oct. 4, 2017) (citing *U.S. Dominator, Inc. v. Factory Ship Robert E. Resoff*, 768 F.2d 1099, 1102 n.1 (9th Cir. 1985) and *Morgal v. Maricopa Cnty. Bd. of Sup'rs.*, 284 F.R.D. 452, 458 (D. Ariz. 2012)).