The Honorable David W. Christel

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

DONALD E. MORISKY,

    Plaintiff,

v.

MMAS RESEARCH, LLC et al.,

    Defendants.

Case No. 2:21-cv-01301 RSM-DWC

**PLAINTIFF'S RENEWED MOTION FOR SANCTIONS**

NOTE ON MOTION CALENDAR: June 6, 2024

**ORAL ARGUMENT REQUESTED**

  Pursuant to Fed. R. Civ. P. 37, Plaintiff Dr. Donald E. Morisky hereby moves the Court for an Order for Sanctions (1) entering a default judgment against Defendants, (2) dismissing Defendants' Second Amended Counterclaim, and (3) awarding attorneys' fees and costs. In the alterative, Dr. Morisky asks the Court to (1) strike Defendants' Second Amended Counterclaim and related affirmative defenses, (2) provide the jury with an adverse inference instruction addressing information not produced in discovery, and (3) award Dr. Morisky's fees and costs incurred in connection with his motions for sanctions.

**I.  PROCEDURAL HISTORY**

  This case arises out of Defendants' relentless efforts to deprive Dr. Morisky, a retired professor and researcher, of his life's work and good name. Defendants continue to reproduce and license Dr. Morisky's Medication Adherence Scales (the MMAS-4 and MMAS-4) to third parties in connection with

RENEWED MOTION FOR SANCTIONS
CASE NO. 2:21-cv-01301 RSM-DWC
1
WEIDE & MILLER, LTD.
10655 Park Run Drive, Suite 100
Las Vegas, NV 89144
Tel. (702) 382-4804

the Morisky Widget without his permission.[1]   Defendants also continue to make unauthorized commercial use of Dr. Morisky's name and trademarks, intentionally misleading consumers and implying an endorsement by and association with Dr. Morisky that does not exist.  In short, Defendants have been profiting from Dr. Morisky's work and name for years, causing Dr. Morisky significant personal and professional harm.[2]

This case was filed on September 27, 2021.  After preliminary motion practice, discovery commenced in the Fall of 2022.  From the start, Defendants refused to engage in the discovery process in good faith, forcing Dr. Morisky to incur the burden and expense of filing multiple motions to compel to try to obtain key documents and information.  Though the Court granted Dr. Morisky's motions and ordered Defendants to provide complete responses to Dr. Morisky's requests, Defendants have consistently and repeatedly refused to comply.  Dr. Morisky's multiple motions and the Court's orders are part of the record but are summarized for the Court's convenience in the Declaration of F. Christopher Austin, submitted concurrently.

Defendants also repeatedly and persistently violated the Federal and local rules, filing privilege documents on the public document despite these documents being sealed by the Court,[3] filing overlong briefs without permission, submitting improperly signed declarations, and making false representations regarding the Court's own statements and instructions.[4]  To each of these, Plaintiff (as well as the Court)

---

[1] *See, e.g.* Dkt. 94, p. 19 ("The Morisky Widget includes registered certified translations of the MMAS-4 and MMAS-8 tests in over 80 languages.").

[2] *See* Dkt. 22, Second Amended Complaint, ¶3.

[3] *See, e.g.* Motion to Strike and for Sanctions, and Dkt. 140, striking Defendants' Motion for Preliminary Injunction for failing to comply with the LCRs and with the Court's Order, and finding that defense counsel had, "filed documents that fail to comply with the LCRs or appear inconsistent with the Court's previous rulings."

[4] *See, e.g.* Dkt. 137, striking Defendants' Motion for Preliminary Injunction and Defendants' Motion for Extension of Time to Complete Discovery for failure to comply with the LCRs warning, "[i]f a filing does not comply with the LCRs, the Court may strike the filing without further consideration."; Dkt. 151, striking Defendants' Motion in Limine and the Declaration of Steven Trubow, noting, "Defendants have continued to file documents that allegedly contain attorney-client communications."; and Dkt. 184, Order by Judge Martinez striking Defendants' motions for failure to comply with local rules, noting, "Judge Christel has repeatedly admonished Defendants for failing to abide by the Local Civil Rules" (at p. 2), and that, [t]his is now the third time in this case Defendants are being reminded of their obligations to comply with the LCRs" (at p. 4).

RENEWED MOTION FOR SANCTIONS
CASE NO. 2:21-cv-01301 RSM-DWC

2

WEIDE & MILLER, LTD.
10655 Park Run Drive, Suite 100
Las Vegas, NV 89144
Tel. (702) 382-4804

have been unfairly burdened and prejudiced by having to incur the costs and lost time required to repeatedly respond and direct Defendants to comply

## II.    RELEVANT FACTS

### A.    Failure to Pay Sanctions for Failure to Engage in Discovery or Appear At Depositions

Over a year ago on April 27, 2023, and months after the close of discovery, the Court granted multiple motions to compel Defendants in connection with Defendants' repeated withholding of documents, repeated failure to respond at all or completely to interrogatory requests, and failure to appear at properly noticed depositions.[5] The Court sanctioned Defendants $33,525.92 and compelled Defendants to sit for depositions three months later.  At Defendants' later compelled Depositions after the Court awarded sanctions against Defendants, Mr. Trubow swore in wrath that he would never pay anything to Dr. Morisky, that Dr. Morisky will just be wasting his pension on this case even Plaintiff prevails.[6] For over a year Trubow has made good on that threat.

The Court ordered the sanction against Defendants to be paid last **July 15, 2023**[7].  Defendants willfully refused to pay it.  After that sanction had still not been paid some six months later, on October 31, 2023, the Court in a futile attempt to compel payment, nominally increased the sanction $1,500 (a mere fraction of what Plaintiff had spent seeking to have the Court's order enforced) and then gave Defendants until **December 1, 2023**, to pay it.[8]

It did not matter. December 1st came and went without any payment from Defendants or their counsel.  Rather, Defendants filed a frivolous motion for "stay of the orders"[9] to further delay this action and force Plaintiff to again incur thousands of dollars to oppose it.  Concurrently, Defendants also filed frivolous motions to extend the very discovery they had failed to comply further causing Plaintiff to incur

---

[5] *See,* Dkts 123, 124, 137, 140, 141.

[6] Dkt. 204, at ¶7.

[7] Dkt 141.

[8] Dkt. 195.  Defense counsel was also ordered to pay $1,320, but has refused.

[9] Dkts. 198, 202, 214, 216 (Motion to Stay Courts Orders, and order denying same).

WEIDE & MILLER, LTD.
10655 Park Run Drive, Suite 100
Las Vegas, NV 89144
Tel. (702) 382-4804

thousands in unnecessary expenses to defend against such frivolous motions.[10].

On December 21, 2023, the Court denied Defendant's frivolous motion to "stay the orders" and again ordered Defendants and their counsel to pay the sanctions, this time by **January 12, 2024**.[11] Defendants refused to comply.  Neither Defendants nor their counsel paid their respective Court-ordered sanctions.[12] **To date,** some 10 months and multiple motions to compel and for sanctions later, Defendants have refused to pay anything ordered by this Court, just as Trubow swore would be the case. This is willful, and as set forth herein it has materially prejudiced Plaintiff.

**B.    Failure to Comply with Orders Compelling Discovery**

After three motions to compel, the Court not only sanctioned Defendants on April 27, 2023, it issued an Order compelling discovery.[13]  Defendants were to have produced complete responses to Plaintiff's interrogatory requests and to have **produced** documents responsive to Plaintiff's requests without objection by May 15, 2023.  **This deadline was material.**  It was ten days prior to the first rescheduled, and compelled deposition of Defendants. Defendants failed to meaningfully produce any responses or documents by the Court-ordered deadline.  In blatant disregard of the Court's orders, Defendants made numerous objections in lieu of responding or producing documents or merely promised to produce the documents at a later date. ***Defendants' willful failure to comply with clear court orders materially prejudicing Plaintiff by not giving Plaintiff adequate time to review or make use of the responses or documents that were produced prior to the depositions.***

And what documents that were produced and responses given were wholly insufficient and inadequate.  This is a copyright infringement action in which Defendants allege that Plaintiff infringed the MMAS copyright in the Widget code.  The scope of a copyright in a computer code is governed by the deposit of the code submitted to the US Copyright Office.  Defendants only produced a highly redacted copy of the deposit. **To date**, Defendants have never produced an unredacted version of the

---

[10] Dkts. 199, 203, 204, 205, 207.

[11] Dkt. 214.

[12] Dkt 221.

[13] Dkts 123-124.

Widget Deposit required for Plaintiff to assess the scope of the copyright prior to deposing Defendant's Rule 30(b)(6) witness on facts relevant to Defendants copyright infringement related counterclaims (Counterclaims 1, 6, 7)[14] and on Plaintiff's copyright infringement claim (Claim 1) and declaratory judgment claim that Dr. Morisky is the author the adherence scales displayed in Widget Code (Claim 7). While Defendants eventually made a copy of the Code available but did not produce it until after the depositions had commenced and did not produce it in a manner that could be read by opposing counsel until after the depositions concluded, ***preventing Plaintiff from being able to depose Defendant on the core claims, defenses and counterclaims of this action.***

### C.    Failure to Produce a Rule 30(b)(6) Witness Competent to Testify on 12 of the 14 Topics Noticed.

On April 27, 2023, the Court granted Plaintiff's motion to compel Defendants to produce a Rule 30(b)(6) representative to testify to all 14 of the Topics noticed for this deposition. Defendants failed to comply. At his deposition as Defendants' Rule 30(b)(6) deponent, Trubow unequivocally stated that he was not prepared to testify on the following 12 of the 14 Topics noticed for that deposition: (2) Facts regarding the authorship of the Widget Code; (3) the nature, function, creation, content and operation of the Widget Code; (4) the copyright application of the Widget Code; (5) the assignment or work for hire agreement, if any, regarding the Widget Code that is the subject of the copyright; (7) any license from Dr. Morisky to use any of the Morisky Trademarks; (9) all facts supporting Defendants' claim for abuse of process; (10) all facts supporting Defendants' claim that Dr. Morisky infringed Defendant's copyright in the Widget Code; (11) all facts regarding all revenues received by the MMAS Defendants from July 2, 2020 to the present; (12) all facts supporting all damages claimed by Defendants in this action; (13) all facts regarding all license agreements with third parties in which any of the MMAS Defendants were a party from July 2, 2020 to the present; and (14) all facts regarding all infringement demands, lawsuits, and settlement agreements with third parties in wish any of the MMAS Defendants were a party from

---

[14] Dkt 64, respectively, for (Counterclaim 1) a declaration of ownership of the Widget copyright, (Counterclaim 6) Copyright infringement, (Counterclaim 7) unfair business practice for copying Widget code.

July 2, 2020 to the present.[15]  For each of these topics, Trubow was asked "are you prepared to testify on [the topic quoted from the Notice verbatim], to which, Mr. Trubow unequivocally answered each time with a single word: "No".[16]

These topics are material to the elements of every claim, counterclaim and affirmative defense asserted in this action.  By having failed to produce a witness competent to testify regarding these topics, Defendants not only utterly disregarded the Court's order compelling them to produce a Rule 30(b)(6) witness, but they also deprived Plaintiff of critical discovery to which it is entitled to prepare its case and defend against Defendants counterclaims.

**D.    Failure to Produce All License and Settlement Agreements and All Financial Records Disclosing All Defendants' Revenue After Signing the CR2A and Spoilation of Evidence of Same.**

In response to the Court's April 27, 2023, Order compelling production of all documents showing all revenues Defendants received after the CR2A, Defendants belatedly produced two tax returns for 2020 and 2021 and a self-serving manufactured simple P&L statement with absolutely no supporting documentation.  At Trubow's Rule 30(b)(6) deposition, Plaintiff questioned Trubow regarding the location of these agreements so Plaintiff could subsequently seek to obtain them, since Trubow testified that he was not competent to testify to either to the revenues received from such agreements or to the agreements themselves (Topics 11-14).  After Trubow confirmed that he was not competent to testify to any of the financials, that he did not have any records or any idea of the revenue for any of the years in question.[17] Trubow then admitted that the license and settlement agreements would show all the revenues, to which Plaintiff's counsel asked him for those records.   In response, Trubow testified as follows:

> A     I don't have them.
> Q     What happened to all the license agreements you did have in your possession.
> A     I had a hard drive die . . . . So they're in there.  They're in a dead hard drive.

---

[15] Dkt 155-8, MMAS Rule 30(b)(6) transcript at 8-12.

[16] *Id.*

[17] Dkt 155-8, MMAS Rule 30(b)(6) transcript at 158-161.

WEIDE & MILLER, LTD.
10655 Park Run Drive, Suite 100
Las Vegas, NV 89144
Tel. (702) 382-4804

Q      So when did the hard drive die?

A      It died . . . around April of 2022.

Q      So in April of 2022, all of the records for all of the 200 licensees was obliterated is that what your are saying?

A      And the settlement agreements and all that other information. **And I have the laptop with the dead thing still**.  It's an ASUS computer.[18]

. . .

Q      Will you produce the laptop?

A      No, I won't.

Q      Very good. We will go forward with that to court to see if it can be compelled.

A      Go ahead. Good luck.

Q      Is there a reason why you would not produce the laptop.

A      Yes, because it's in three or four different pieces and part of it is at another house that I used to live at and I don't live there anymore. So it's no longer in my possession.

Q      Where is it at in pieces located?

A      Somewhere in – somewhere out in Sonoma County.  I moved on March -- or on March 4th.

Q      You lived in a house in Sonoma County.  What address did you live at?

A      I lived at 1501 Spring Hill Road, but then we moved to . . .

. . .

A      1501 Spring Hill Road. But that computer is now in the dump in Sonoma County, the last that I heard.[19]

Notably, Trubow first seeks to avoid disclosing the agreements by claiming they are in a dead hard drive, confirming without equivocation that all the licenses are there, "And the settlement agreements and all that other information." Then to make it clear, he volunteered, "**And I have the laptop with the dead thing still. It's an ASUS Computer.**" Trubow confirmed the dead hard drive was in an ASUS computer and that he is still in possession of that computer.  His statement is clear.  Only after Plaintiff's counsel presses for the production of the computer with the dead hard drive, does Trubow changes his story.

---

[18] Dkt 155-8 at 175.

[19] Dkt 155-8 at 208.

WEIDE & MILLER, LTD.
10655 Park Run Drive, Suite 100
Las Vegas, NV 89144
Tel. (702) 382-4804

First, he tries to avoid having to produce the hard drive by claiming its in three or four pieces. This information is irrelevant to the production of a hard drive, so when Plaintiff's counsel continues to press, then he clearly prevaricates to completely contradict his earlier sworn and volunteered testimony that he has the computer "with the dead thing still" to allege that he does not have posession, that its at his prior home, and finally, as a last resort, that it is in the dump. These changes to his earlier testimony are not credible.

They are particularly not credible in light of the fact that the destruction of all these agreements comes right after Trubow admits that there are agreements out there after the execution of the CR2A where MMAS failed to share revenue with Dr. Morisky as required by the CR2A:

> A    Oh, yeah, and these were all after the CR2A.
>
> Q    Were those payments divided in accordance with the terms of the CR2A.
>
> A    No. Why would we give you money when you were threatening to sue them? Come on.
>
> Q    So these settlement agreements, all the revenue from these settlement agreements only went to MMAS Research?
>
> A    Yeah . . . .
>
> Q    So Dr. Morisky received no revenue from any of these settlement agreements?
>
> A    No, you would never get a dime out of these.[20]

After admitting that among the settlement and license agreements are agreements in which Defendants cut out Dr. Morisky in violation of the CR2A. By allegedly "dumping" or otherwise withholding the laptop on which "the settlement agreements and all that other information" were all located, Defendants have sought to prevent Plaintiffs from learning or obtaining evidence of the scope of the damages caused by Defendants' willful violation of the CR2A. This destruction of evidence is irrecoverable and extremely prejudicial.

**To date**, Plaintiff has not received all of the settlement and license agreements to which

---

[20] Dkt 155-8 at 203-204.

Defendants were a party, and specifically those agreements in which Plaintiff was not a party. Plaintiff has independently learned of at least one other license agreements executed during the CR2A in in which Plaintiff was unlawfully excluded. That was an agreement executed with Janssen Pharmaceutical (Japan) in which Janssen paid 20,000 Euros to only Defendant MMAS, in which Defendants purport to license Dr. Morisky's copyrighted MMAS-8 tests without his knowledge or permission so Defendants could unlawfully keep all of the revenue for themselves.[21]

While Plaintiff finally was able to receive from Defendants the infamous DropBox files of prior joint counsel, Kenny Gross, unsurprisingly, this agreement with Janssen was not among those agreements because the counsel negotiating it and preparing it axiomatically could not function as joint counsel, since such counsel would be adverse to Dr. Morisky. For that reason, the mere disclosure of prior joint counsel is wholly incapable of providing a means for Plaintiff to obtain these "dumped" agreements executed in violation of the CR2A.

In addition, the incomplete disclosure of only a few accounts of one financial institution, Chase,[22] for only 2 of the relevant years in the absence of the settlement and license agreements further demonstrates the scope and scale of Defendants' perfidy. In response to the Court's October 31, 2023, Order, Plaintiff produced the Chase bank records for two MMAS accounts for 2017, 2019, and 2021. As the CR2A was executed in late December 2020, only the records for 2021 are relevant for the purpose of showing the scale of what Defendant is withholding. Those records report that in just 2021, MMAS received $259,141.29 in revenue reported in '7902 Account and $486,411.00 for '7886 Account. Pursuant to the express terms of the CR2A, these revenues could only properly represent 45% of the total amount paid under the settlement or license agreement, since the CR2A requires all such revenues be shared 55-45 in favor of Dr. Morisky. This would mean that Plaintiff's 55% share would have resulted in a payment to Plaintiff in 2021 of $594,502.33 based on revenues of the '7886 Account and $313,061.57

---

[21] *See,* Exhibit 1, Austin Declaration filed in support of Motion ("Austin Decl.").

[22] Although Defendants claim to have disclosed an incomplete selection of records from Umpqua Bank and largely irrelevant 2016-2018 records from Bank of America, those records were not in fact included in Defendants production. *See,* Austin Decl.

under the '7902 Account. Plaintiff did not receive even a fraction of those amounts for all of 2021. The records evidence that Defendants massively cheated Dr. Morisky. On a large scale, Defendants unlawfully cut out Plaintiff from transactions with third parties in violation of the CR2A.

Yet even these bank records are incomplete. Within these statements are references to transfers from other bank accounts for which **Defendants have produced no records at all** in a clear and obvious violation of the Court October 31st Order. In order to fully assess the scope of Defendants violations of the CR2A, Plaintiff must be able to reconcile <u>all the revenues</u> Defendants received against <u>all of the transactions</u>. Defendants have refused to produce even a fraction of either. Defendants have refused to produce all the bank records for all the relevant years—even though only Defendant has the power to require such records of its present or former financial institutions—and Defendants have refused to produce all of the transactions and particularly those excluding Plaintiff, claiming incredulously that the one laptop holding "the settlement agreements and **all that other information**" was conveniently destroyed and sent to the dump despite Defendants having already admitted that Trubow "had it still".

### E. Dr. Morisky Has Been Irreparably Prejudiced by the Discovery Failures and Delays Caused Thereby

As a result of Defendants' refusal to pay the sanctions awarded or fully comply with repeated orders to compel, Dr. Morisky and his family have largely lost faith in the process. They view the Court as having little to no ability to enforce its orders. They view the process as inequitable. It rewards those who do not comply, literally at the cost of tens of thousands, if not hundreds of thousands of dollars, years-long delays, and justice to those that do comply. This is utterly at odds with both the Court's and the Public's interest. The inability to recoup the fees and costs incurred while simultaneously being required to <u>spend more than the sanctions award</u> to enforce such sanctions have drained Dr. Morisky's resources. Even were the Court to yet again compel Defendants to sit for yet another Rule 30(b)(6) deposition, something to which Plaintiff's are certainly entitled; even were the Court to again compel Defendants to again produce <u>all</u> the settlement and license agreements executed after the CR2A, including those Defendants acknowledge wrongfully cut Dr. Morisky out; even were the Court to again compel Defendants to produce an unredacted copy of the Widget deposit, or compel Defendants again

RENEWED MOTION FOR SANCTIONS
CASE NO. 2:21-cv-01301 RSM-DWC
10
WEIDE & MILLER, LTD.
10655 Park Run Drive, Suite 100
Las Vegas, NV 89144
Tel. (702) 382-4804

to produce <u>all</u> of the bank records for <u>every</u> account of all of the MMAS corporate defendants; and even if the Court were to further sanction Defendants for the additional tens of thousands of dollars Plaintiff was required to spend to secure such an order, and even if such a sanction could actually made Plaintiff completely whole, instead of only 65% restored, Plaintiff would still be irreparably harmed and irreparably prejudiced.  Dr. Morisky would still not be able to get a fair trial.

Dr. Morisky is 78 years old and living on a fixed income.  His resources are spent.  He filed this action approximately three years ago to preserve his life's work and recover the losses caused by Defendants infringement and failure to abide by the CR2A; he retained competent counsel with decades of experience in litigating copyright infringement matters—the core claims of this case; and he has diligently prosecuted the case and has consistently complied with the Court's orders and rules.  Yet, even after 232 court filings in this case, most of which were precipitated by the failures, deficiencies and frivolous filings of the opposing side, some intentional, some inept, Dr. Morisky has not been able to secure the discovery to which he is entitled under the rules and orders of this Court.

He personally can endure no longer.  His once brilliant mental acuity is waning.[23]  It is now questionable whether he could reasonably be able to testify in his own case on matters for which he is the only witness.[24]  The years have caught up with him; he struggles to recall events and transactions that occurred relevant to this case or even recently.[25]  The once sharp and clear professor is now uncertain, shakes and forgets his train of thought mid-sentence.[26]  He struggles and often fails to remember the specifics of many of the key transactions and events on which his claims are based.[27]  His counsel now must question whether putting him on the stand to testify on his own behalf is prudent.[28]  This decline has occurred rapidly within the past year.[29]  Had this case gone to trial a year ago—when it was originally

---

[23] Austin Decl.

[24] *Id.*

[25] *Id.*

[26] *Id.*

[27] *Id.*

[28] *Id.*

[29] *Id.*

RENEWED MOTION FOR SANCTIONS
CASE NO. 2:21-cv-01301 RSM-DWC

11

WEIDE & MILLER, LTD.
10655 Park Run Drive, Suite 100
Las Vegas, NV 89144
Tel. (702) 382-4804

set—he would have fared better. But because of the actions of Defendants, this case could not go to trial a year ago, and a year and a half later, and a hundred thousand dollars in legal fees spent in countless motions, but securing little discovery, and Dr. Morisky still has not secured the discovery to which he was entitled in January of 2023, or the sanctions awarded him a year ago on June 15, 2023!

Dr. Morisky cannot get a fair trial without further discovery, but he has neither the resources nor the time now to engage in such discovery, such that he is prejudiced either way. And given Defendants' failure to ever produce all the discovery Defendants were obligated to produce for over a year and a half, there is little reason to believe further orders to compel or further sanctions on top of repeated sanction orders and repeated orders to compel will yield better results. Defendants are on record and under oath has having "dumped" the only laptop on which all the settlement and license agreements at issue in this case could be found. In short, Defendants have left Plaintiff with no fair recourse aside from case-terminating sanctions. At a minimum, Defendants counterclaims and affirmative defenses should be stricken.

## III.    LEGAL STANDARDS

Under Rule 37(b), "[a] court may award sanctions against a party that fails to comply with a discovery order, up to and including dismissal of the action in whole or in part, or entering default judgment against a party."[30] "Rule 37(d)(1) specifically authorizes a court to issue sanctions when a party or its representative, or a person designated under Rule 30(b)(6) or 31(a)(4), fails to appear for that person's deposition."[31] "The available sanctions include 'dismissing the action or proceeding in whole or in part.'"[32] "When a witness is designated by a corporate party to speak on its behalf pursuant to Rule 30(b)(6), producing an unprepared witness is tantamount to a failure to appear that is sanctionable under Rule 37(d)."[33]

---

[30] *Moba v. Total Transp. Servs. Inc.*, No. C13-138 MJP, at *5 (W.D. Wash. July 3, 2014).

[31] *U.S. Bank, N.A. v. Recovery Servs. Nw., Inc.*, Case No.: 2:13-cv-01254-APG-GWF, at *4 (D. Nev. Oct. 13, 2016).

[32] *Solomon v. C R Bard Inc.*, No. C19-1469RSM, at *2 (W.D. Wash. Dec. 16, 2020), quoting Fed. R. Civ. P. 37(b)(2)(A)(v), (d)(3).

[33] *Wesley v. CBS Radio Servs., Inc.*, No. 2:18-CV-00466-RSL, at *9 (W.D. Wash. June 17, 2019).

Rule 37(e) authorizes imposition of case terminating sanctions where "a party fails to take reasonable steps to preserve electronically stored information that should have been preserved in anticipation or conduct of litigation and the information is lost and cannot be restored or replaced through further discovery."[34]  "Additionally, courts have inherent power to dismiss an action when a party has willfully deceived the court and engaged in conduct utterly inconsistent with the orderly administration of justice."[35]

"A district court considers five factors when deciding whether the circumstances of a case warrant dismissal [or default]: '(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the [movant]; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions.'"[36]  "Courts have 'considerable discretion to impose the extreme sanction of dismissal or default where there has been flagrant, bad faith disregard of discovery duties.'"[37]  "This five-part 'test' is not mechanical; rather, it provides 'the district court with a way to think about what to do, not . . . a script that the district court must follow.'"[38]  "[W]here a court order is violated, factors 1 and 2 support sanctions and 4 cuts against case-dispositive sanctions, so 3 and 5, prejudice and availability of less drastic sanctions, are decisive."[39]

---

[34] *Neely v. Boeing Co.*, No. C16-1791-JCC, at *3 (W.D. Wash. Apr. 23, 2019).

[35] *Wyle v. R.J. Reynolds Industries, Inc.*, 709 F.2d 585, 589 (9th Cir. 1983), quoting *Phoceene Sous-Marine, S.A. v. U.S. Phosmarine, Inc.,* 682 F.2d 802, 806 (9th Cir. 1982).

[36] *White v. Resources*, No. C19-0284-JCC, at *3 (W.D. Wash. June 26, 2020), quoting *In re Exxon Valdez*, 102 F.3d 429, 433 (9th Cir. 1996) (citing *Thompson v. Housing Auth. of L.A.*, 782 F.2d 829, 831 (9th Cir. 1986)).

[37] *Loops LLC v. Phoenix Trading, Inc.*, No. C08-1064-RSM, at *16 (W.D. Wash. Mar. 15, 2011), quoting *Wanderer v. Johnston*, 910 F.2d 652, 656 (9th Cir. 1990). *See also Olive v. Robinson*, No. 2:18-cv-00862-BAT, at *2 (W.D. Wash. Sep. 30, 2019) (noting, "district courts also have the authority to declare a default as a sanction" and citing the five-part test).

[38] *Bd. of Trs. of the Wash. Meat Indus. Pension Trust v. Hammond Food*, No. C13-0474JLR, at *4 (W.D. Wash. May 15, 2014), quoting *Conn. Gen. Life Ins. v. New Images of Beverly Hills*, 482 F.3d 1091, 1096 (9th Cir. 2007).

[39] *Valley Engineers Inc. v. Electric Eng. Co.*, 158 F.3d 1051, 1057 (9th Cir. 1998).

---

RENEWED MOTION FOR SANCTIONS
CASE NO. 2:21-cv-01301 RSM-DWC

13

WEIDE & MILLER, LTD.
10655 Park Run Drive, Suite 100
Las Vegas, NV 89144
Tel. (702) 382-4804

"Dismissal is a proper sanction under Rule 37(d) for a serious . . . failure to respond to discovery even without a prior motion to compel or court order requiring responses to a discovery request."[40]  As explained by the Ninth Circuit,

> Where it is determined that counsel or a party has acted willfully or in bad faith in failing to comply with rules of discovery **or with court orders enforcing the rules** or **in flagrant disregard of those rules or orders**, it is within the discretion of the trial court to dismiss the action or to render judgment by default against the party responsible for noncompliance. Fed.R.Civ.P. 37(b).  Here the court dismissed the plaintiffs' action with prejudice.  It acted properly in so doing.  We encourage such orders.  **Litigants who are willful in halting the discovery process act in opposition to the authority of the court and cause impermissible prejudice to their opponents**.  It is even more important to note, in this era of crowded dockets, that they also deprive other litigants of an opportunity to use the courts as a serious dispute-settlement mechanism.[41]

"Default judgment is available as a sanction in appropriate cases 'not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent.'"[42]

"[T]he inherent power of federal courts to levy sanctions in response to abusive litigation practices, and the availability of sanctions under Rule 37 against a party who 'fails to obey an order to provide or permit discovery," also provide authority for issuance of sanctions against a party who has despoiled evidence.[43]  As explained by the Ninth Circuit in *Leon v. IDX Systems Corp.*, "A party's destruction of evidence qualifies as willful spoliation if the party has 'some notice that the documents were *potentially* relevant to the litigation before they were destroyed."[44]  "Moreover, because 'the relevance of . . . [destroyed] documents cannot be clearly ascertained *because the documents no longer exist,' a party 'can hardly assert any presumption of irrelevance as to the destroyed documents*.'".[45]

/ / /

---

[40] *Horizon Lines, llc. v. Expert Forwarders, Inc.,* No. C08-5756JRC, at *4 (W.D. Wash. Aug. 18, 2009), *citing Sigliano v. Mendoza*, 642 F.2d 309, 310 (9th Cir. 1981).

[41] *G-K Properties v. Redevelopment Agency*, 577 F.2d 645, 647 (9th Cir. 1978) (emphasis added).

[42] *Bd. of Trs. of the Wash. Meat Indus. Pension Trust v. Hammond Food*, No. C13-0474JLR, at *3 (W.D. Wash. May 15, 2014), quoting *Nat'l Hockey League v. Metro. Hockey Club, Inc.,* 427 U.S. 639, 643 (1976) (per curiam).

[43] *Leon v. IDX Systems Corp.*, 464 F.3d 951, 958 (9th Cir. 2006).

[44] *Id.* at 959, quoting *United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1001 (9th Cir.2002).

[45] *Id.,* quoting *Alexander v. Nat'l Farmers Org.*, 687 F.2d 1173, 1205 (8th Cir.1982) (emphasis added).

---

RENEWED MOTION FOR SANCTIONS
CASE NO. 2:21-cv-01301 RSM-DWC

14

WEIDE & MILLER, LTD.
10655 Park Run Drive, Suite 100
Las Vegas, NV 89144
Tel. (702) 382-4804

## IV.    ARGUMENT

While Plaintiff acknowledges that the sanctions requested in this motion are extreme, Defendants' actions leave the Court with no other recourse.  As discussed above, Defendants have willfully and repeatedly refused to pay Court-ordered sanctions, withheld documents, failed to provide complete interrogatory responses, failed to appear at depositions, failed produce a properly prepared Rule 30(b)(6) witness, and willfully destroyed the documents relevant to both Plaintiff's case and Defendants' counterclaims.  Prior attempts by this Court to sanction and compel Defendants to comply with its orders and the local and federal rules have been willfully ignored, causing both the Court and Dr. Morisky to continue to expend time and resources, to no end.  Simply put, Defendants do not believe they are obligated to follow the rules, and have clearly shown that they have no intention of complying with the rules, sanctions and Orders of this Court in the future.  They should therefore not be permitted the benefit of this Court's time and the public's resources.  As outlined below, the relevant factors weigh in favor of imposition of case terminating sanctions.

### A.    The public's interest in expeditious resolution of litigation and the Court's need to manage its docket weigh in favor of dispositive sanctions.

As noted above, where a court order is violated, these two factors weigh in favor of imposition of sanctions.[46]  Defendants have violated not one, but multiple orders of this Court.  Defendants' "failure to comply with the discovery orders is impeding the resolution of the case and preventing the Court from adhering to its trial schedule," and their noncompliance with the discovery orders diverted the Court's attention from time it could have devoted to other matters."[47]  In addition to repeatedly refusing to comply with this Court's multiple orders compelling discovery, Defendants have also repeatedly publicly filed documents the Court had ordered to be sealed, ignored the Court's repeated admonitions that they comply with the local rules, and have willfully refused to pay the sanctions ordered by the Court nearly a year ago. The Court's multiple orders have had no impact on Defendants' conduct in this matter, and

---

[46] *K.D. v. United Airlines, Inc.*, Case No.: 2:17-cv-02825-RFB-NJK, at *6 (D. Nev. Jan. 29, 2019).

[47] *Butts v. Kennedy*, 2:20-cv-00576-MAT, at *1 (W.D. Wash. Oct. 8, 2021) citing *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d 1217, 1236 (9th Cir. 2006).

permitting them to continue to litigate this case while in violation of the Court's orders would only embolden Defendants' misconduct at Plaintiff's continuing expense.  As noted by the Ninth Circuit, "[o]rderly and expeditious resolution of disputes is of great importance to the rule of law ... [and b]y the same token, delay in reaching the merits ... is costly in money, memory, manageability, and confidence in the process."[48]  This Court has already expended more resources than should have been necessary to move this case towards resolution, with no real end in sight.

### B. Permitting Defendants to continue to litigate this case will cause further prejudice to Dr. Morisky.

"A party suffers prejudice if the opposing party's actions impair the moving party's 'ability to prove the claims' or 'threaten to interfere with the rightful decision of the case.'"[49]

Defendants' failure to provide complete responses to discovery, their eleventh-hour revelations about the dumping of the alleged only source of all the settlements and license agreements and, and their refusal to repay Dr. Morisky as ordered for over a year legal expense he incurred because of their misconduct has already irreparably prejudiced Dr. Morisky.  Defendants  have caused Dr. Morisky to spend tens of thousands of dollars on legal fees related solely to their misconduct.  Every time Defendants filed privileged documents or untimely or baseless motions, Dr. Morisky has been forced to incur legal fees to respond.  Every time Defendants failed to comply with discovery requests and ignored Plaintiff's counsel's attempts to confer, Dr. Morisky has had to foot the bill.  For over a year, a substantial portion of the costs Dr. Morisky has incurred have been the result of Defendants misconduct.  And given Defendants' refusal to pay the sanctions ordered to date, it does not appear that Dr. Morisky will ever recover those costs.  As set forth in the declaration of counsel, Dr. Morisky does not have the resources to continue fruitlessly pursuing discovery but he also now cannot obtain a fair trial because he has been deprived of critical evendence in support of all of his claims and in defense of all of Defendants' counterclaims.

---

[48] *Juarez v. CKE Rests.*, 3:20-CV-00162-MMD-CLB, 6 (D. Nev. May. 16, 2022), quoting *In re Phenylpropanolamine (PPA) Products Liability Litig.*, 460 F.3d 1217, 1227 (9th Cir. 2006).

[49] *Bd. of Trs. of the Wash. Meat Indus. Pension Trust v. Hammond Food*, No. C13-0474JLR, at *5 (W.D. Wash. May 15, 2014), quoting *Wanderer v. Johnston,* 910 F.2d 652, 656 (9th Cir. 1990)/

WEIDE & MILLER, LTD.
10655 Park Run Drive, Suite 100
Las Vegas, NV 89144
Tel. (702) 382-4804

Compelling Dr. Morisky to continue to drain his retirement accounts to try to regain control over his name and intellectual property for the foreseeable future[50] would be patently unjust, as would forcing him to go to trial without evidence solely in Defendants' possession, custody or control.[51]

Finally, "The law also presumes prejudice from unreasonable delay."[52] Prejudice may consist of "loss of evidence **and memory** … costs or burdens of litigation, although it may not consist of the mere pendency of the lawsuit itself."[53] As set forth above, Dr. Morisky is in his 79th year. He has already spent 3 years in litigation on this case alone trying to regain control over the Morisky Scales. He has diligently litigated this case, complying with the Court's orders and the local rules. Meanwhile, his ability to license his IP for research has been hamstrung by the uncertainty of ownership created by this lawsuit, and by Defendants' repeated efforts to discredit Dr. Morisky. This delay in resolution is not only inherently prejudicial,[54] it is prejudicial in fact because delay has prevented Dr. Morisky from being able to testify as the key witness in this case while his memory and faculties were still sharp. The delay caused by Defendants failure to comply with the Courts orders and sanctons has irreparably harmed Dr. Morisky's ability to secure a fair trial. Forcing Dr. Morisky to either (1) spend additional resources on renewed discovery and discovery motion practice, or (2) go to trial without key evidence, would be patently unjust. Thus, the prejudice suffered by Dr. Morisky weighs heavily in favor of the sanctions requested.

/ / /

/ / /

---

[50] Defendants indicated that they intend to seek to reopen discovery – despite having chosen not to serve any discovery requests previously. If such relief is granted, this case could easily drag on for another year or more.

[51] *Juarez v. CKE Rests.*, 3:20-CV-00162-MMD-CLB, 7 (D. Nev. May. 16, 2022) (granting case terminating sanctions, noting, Juarez's actions have substantially and unreasonably delayed this case, such that if this case continues the way it has, BRRS will be prejudiced and continue to incur substantial costs. Further, BRRS would be prejudiced if it must go to trial without discovery which, "threatens to interfere with the rightful decision of the case.") quoting *Connecticut v. New Images*, 482 F.3d 1091, 1097 n.14 (9th Cir. 2007).

[52] *Allen v. Bayer Corp. (In re: Phenylpropanolamine (PPA) Prods. Liab. Litig.)*, 460 F.3d 1217, 1227 (9th Cir. 2006) (citations omitted).

[53] *Id.* at 1228 (citations omitted).

[54] *Sanchez v. Rodriguez*, 298 F.R.D. 460, 473 (C.D. Cal. 2014) ("The law . . . presumes prejudice from unreasonable delay.").

---

### C. The public policy favoring disposition of cases on their merits is not sufficient to outweigh all the other factors.

Though public policy generally favors disposition of a dispute on its merits, Defendants' "failure to comply with the discovery orders has prevented the case from moving forward and made resolution on the merits impossible."[55] "Public policy does not favor maintaining a court action or holding a trial when a party's misconduct 'threaten[s] to interfere with the rightful decision of the case.'"[56] This is because absent the court's enforcement of its orders and rules, the public will lose confidence in the judicial system, as is already the case with Dr. Morisky and his famil in this case.

### D. The Court has already attempted to implement less drastic sanctions to no avail.

The fifth factor also weighs in favor of case terminating sanctions. This Court has already issued the lesser sanction of a monetary award and an extension of time to respond to discovery, and Defendants have repeatedly failed to comply.[57] "Though there are a wide variety of sanctions short of dismissal available, the district court need not exhaust them all before finally dismissing a case."[58] "That lesser sanctions have already been employed without success is enough to determine that lesser sanctions should not be issued for the violation at issue."[59] Case terminating sanctions are the only recourse left in light of Defendants' refusal to pay the sanctions ordered to date.[60]

/ / /

---

[55] *Butts v. Kennedy*, 2:20-cv-00576-MAT, at *1 (W.D. Wash. Oct. 8, 2021). *See also Espejo v. Lockheed Martin Operations Support*, CIV. No. 14-00095 HG-RLP, at *39 (D. Haw. Nov. 21, 2014) ("Given the extensive spoilation of relevant evidence by Plaintiff, it would not be possible to fairly evaluate this case on the merits").

[56] *Espejo, supra* at *40, quoting *Wyle v. R.J. Reynolds Indus., Inc.,* 709 F.2d 585, 591 (9th Cir. 1983).

[57] *See generally Olive v. Robinson*, No. 2:18-cv-00862-BAT, at *2 (W.D. Wash. Sep. 30, 2019) (entering default judgment, and noting that, prior to doing so, it had "issued the lesser sanction of a $500 payment and another deadline to submit discovery responses.").

[58] *Giddings v. Greyhound Bus Lines, Inc.*, No. C11-1484 RSM, at *8 (W.D. Wash. May 23, 2016), quoting *Nevijel v. N. Coast Life Ins. Co.*, 651 F.2d 671, 674 (9th Cir. 1981).

[59] *Jerry Beeman & Pharmacy Servs., Inc. v. Caremark Inc.*, 322 F. Supp. 3d 1027, 1039-40 (C.D. Cal. 2018).

[60] *See Cannon Partners, Ltd. v. Cape Cod Biolab Corp.*, 225 F.R.D. 247, 251 (N.D. Cal. 2003) ("Magistrate Judge Zimmerman did not recommend dismissal or the entry of default judgment on defendants' counterclaims either quickly or lightly. He gave plaintiff several opportunities to meet its obligations to pay sanctions to defendants. He imposed additional non-monetary sanctions relating to discovery disputes between the parties. He then expressly conditioned his recommendation on plaintiff's further refusal to comply with court orders and warned plaintiff explicitly in advance that such a recommendation would follow its continued refusal to comply with the directives of the court. At this juncture, terminating sanctions appear to be the only practical course").

---

Renewed Motion for Sanctions
Case No. 2:21-cv-01301 RSM-DWC

18

WEIDE & MILLER, LTD.
10655 Park Run Drive, Suite 100
Las Vegas, NV 89144
Tel. (702) 382-4804

E.    **Defendants acted willfully and in bad faith.**

Finally, Defendants' abject refusal to comply with the Court's discovery and sanctions orders cannot be anything but willful. *Computer Task Group, Inc. v. Brotby*, in which the Ninth Circuit upheld case terminating sanctions, is instructive. [61]  In that case, as here, the defendant obstructed discovery by "'not compl[ying] . . . with repeated court orders' and not heeding multiple court warnings.  [The defendant] violated court orders . . . by failing to provide clear answers to interrogatories, giving contradictory responses, making frivolous objections, filing frivolous motions and failing to provide the information [the plaintiff] sought. He also failed to pay one of the monetary sanctions."[62]  The defendant also failed to produce important financial documents, blaming the loss of documents on, coincidentally, "a dropped computer and on a residential move."[63]  Where defendant did produce documents, the magistrate judge noted that what had been produced was mostly incomplete, came long after it was requested, and after discovery had ended, noting that, "[t]his delay seriously prejudiced [the plaintiff], as key depositions had already been taken."[64]  Regarding his failure to produce responsive documents, the defendant made the exact arguments Defendants did here which both the Magistrate Judge and the Ninth Circuit rejected:

> Brotby argues vigorously that he should not be penalized for his failure to produce information that CTG already had or could obtain from other sources, such as the scope of his employment with Alyeska. **Even assuming CTG already had some of the information it sought from Brotby, or could have obtained it from other sources, this does not excuse Brotby's failure to respond to the discovery requests.** An important purpose of discovery is to reveal what evidence the opposing party has, thereby helping determine which facts are undisputed — perhaps paving the way for a summary judgment motion — and which facts must be resolved at trial. CTG's discovery requests were not unjustified, oppressive or designed to harass him, and the district court even entered a protective order with respect to privileged and confidential documents. Brotby still failed to produce the documents and offered no legitimate reason for his persistent refusal to cooperate.

---

[61] 364 F.3d 1112, 1117 (9th Cir. 2004).

[62] *Id*. at 1115. Here, Defendants' conduct is even more egregious, insofar as they haven't paid either of the sanctions issued against them or their counsel, despite being ordered to do so multiple times.

[63] *Id.*

[64] *Id.*

WEIDE & MILLER, LTD.
10655 Park Run Drive, Suite 100
Las Vegas, NV 89144
Tel. (702) 382-4804

> Brotby's failure to provide discovery is particularly inexcusable because the district court ordered him to do so.[65]

The Ninth Circuit rightly affirmed the District Court's adoption of the Magistrate Judge's report and recommendation dismissing the defendant's counterclaims, striking his answer and entering his default on the plaintiff's claims. The same outcome is warranted here.

## V.    CONCLUSION

While case-terminating sanctions are a severe sanction, they are warranted in this case. Dr. Morisky has done everything he can to gather the information needed to prosecute his claims, but much of that evidence – including the licensing documents reflecting Defendants' ongoing infringement of his intellectual property and the financial records documenting Defendants revenue obtained as a result – was solely in Defendants' possession, custody or control. Defendants should not be permitted to benefit from these flagrant abuses of the local and federal rules and this Court's Orders. The attempt by this Court to persuade the Defendants to participate in this case in good faith has been met with defiance. To this day, Defendants refuse to pay the sanctions issued against them. As recently as April 24, 2024, at the telephone conference where the Court granted Dr. Morisky leave to file this motion, the Court clearly admonished Defendants to pay the sanctions ordered. Even in the face of this second case dispositive motion, Defendant's have refused to do so. Dr. Morisky therefore respectfully requests that the Court enter judgment in his favor and dismiss Defendants' counterclaim with prejudice.

As the Court instructed Plaintiff to suggest alternative sanctions, in the event the Court finds that case terminating sanctions are still not warranted, Dr. Morisky asks that the Court:

1.    dismiss Defendants' counterclaim in its entirety;

2.    award Dr. Morisky the fees and costs incurred in connection with both this and his prior motion for case terminating sanctions, to be paid, along with the existing sanctions, immediately;

3.    enter a scheduling order providing time for expert discovery and dispositive motions; and

4.    provide an adverse inference instruction to the jury, noting that lack of documentation not produced by Defendants should not be construed against Dr. Morisky, and that the jury should

---

[65] *Id.* at 117.

RENEWED MOTION FOR SANCTIONS
CASE NO. 2:21-cv-01301 RSM-DWC
20
WEIDE & MILLER, LTD.
10655 Park Run Drive, Suite 100
Las Vegas, NV 89144
Tel. (702) 382-4804

infer that any that any missing agreements or financial documents were unfavorable to Defendants, such that the revenues reported for the two Chase accounts are to be construed as the revenues Defendants received each year in 2021, 2022 and 2023, from license and settlement agreements entered in breach of the CR2A.

Defendants have done nothing to prosecute their counterclaim. They served no discovery during the many months they were permitted to do so. They failed to produce a Rule 30(b)(6) witness prepared to testify as to any of those claims or as to any of the agreements or revenues of Defendants. To the extent they have produced documents relevant to their counterclaims in discovery, they have intentionally only produced documents they believe support their claims, conveniently cherry picking from among those otherwise "dumped" settlement and license agreements the ones they claim could not be completed or that they believe otherwise support their claims. Forcing Dr. Morisky to defend these claims without all the evidence or deposition testimony to which he is entitled would be prejudicial and unjust,[66] as would permitting Defendants to continue litigating this case without repaying Dr. Morisky for all he fees and costs he has incurred as a result of their Defendants failures to comply.

DATED: May 16, 2024

/s/ F. Christopher Austin
F. Christopher Austin
WEIDE & MILLER, LTD.
10655 Park Run Drive, Suite 100
Las Vegas, NV 89144

William J. Crowley
CROWLEY LAW OFFICES, P.S.
600 University Street, Suite 1901
Seattle, WA 98101

Amanda L. Bruss
BRUSS LEGAL PLLC
7550 E. 53rd Place #172464
Denver, CO 80217

*Attorneys for Plaintiff*

---

[66] *See Wyle v. R.J. Reynolds Industries, Inc.*, 709 F.2d 585, 591 (9th Cir. 1983) ("Unless we uphold the dismissal, PFEL will profit from its own failure to provide discovery.")

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

RENEWED MOTION FOR SANCTIONS
CASE NO. 2:21-cv-01301 RSM-DWC                    22

WEIDE & MILLER, LTD.
10655 Park Run Drive, Suite 100
Las Vegas, NV 89144
Tel. (702) 382-4804

## CERTIFICATE OF COMPLIANCE

I certify that this memorandum contains 7888 words, in compliance with the Local Civil Rules.

*/s/ F. Christopher Austin*
F. Christopher Austin
WEIDE & MILLER, LTD.
10655 Park Run Drive, Suite 100
Las Vegas, NV 89144

## CERTIFICATE OF SERVICE

I hereby certify that on May 16, 2024, I caused a true and correct copy of the foregoing to be filed via the cm/ecf system, which will serve a notice of electronic filing to all counsel of record.

*/s/ F. Christopher Austin*
F. Christopher Austin
WEIDE & MILLER, LTD.
10655 Park Run Drive, Suite 100
Las Vegas, NV 89144