# SAF CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE

THIS CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE ("Settlement Agreement") is made by and between MMAS Research LLC and Steven Trubow (collectively "MMAS") and Sanofi Winthrop Industrie as successor to Sanofi-Aventis France whose business was transferred to it on July 1st 2023, as consequence of an internal reorganization ("SWI"), as of the last date signed below. Herein, MMAS and SWI are individually referred to as a "Party" and collectively referred to as the "Parties."

WHEREAS on or about July 5, 2017, the Parties entered into a Licensing Agreement governing SWI's licensing and utilization of MMAS's Morisky Widget (a patient adherence test used in clinical studies);

WHEREAS between 2017 and 2023, SWI analyzed patient adherence utilizing the Morisky Widget in conjunction with clinical trial(s);

WHEREAS on or about July 26, 2023, an SWI-sponsored clinical study titled, "Patient reported outcomes of patients with Gaucher disease type 1 treated with eliglustat in real-world settings: The ELIPRO study" (the "ELIPRO Study") was published. The study utilized the Morisky Widget and was conducted in collaboration with various health care practitioners and institutions including but not limited to the entities detailed at Appendix A (the "Supplemental Released Parties");

WHEREAS MMAS has asserted claims against SWI regarding the scope and terms of the Licensing Agreement; and

WHEREAS MMAS and SWI have agreed to resolve fully all claims, differences and controversies by and between MMAS and SWI that exist, have existed, or may exist in the future, involving or relating to the Licensing Agreement (hereinafter, "the Dispute"), as follows:

I.  **DEFINITIONS**

   A.  **Effective Date.** The term "Effective Date" shall mean the later of either: the date of the signing of this Settlement Agreement.

   B.  **Settled Claims.** The term "Settled Claims" shall mean any and all claims and counterclaims, causes of action, demands, damages, costs, expenses, liabilities or other losses, whether in law or in equity, existing now or arising in the future, by the Parties or their Affiliates relating to the 2017 Licensing Agreement and/or the ELIPRO study.

II. **SETTLEMENT PAYMENT**

   A.  **Consideration.** In consideration of the releases, covenants, representations, and warranties granted, extended and made by MMAS, SWI agrees to pay to MMAS the sum of $115,000 (one hundred fifteen thousand and NO/100 US dollars) ("the Payment"), in accordance with Section II(B) of this Settlement Agreement.

  **B.** **Timing and Manner of Payment.** Upon signing this Settlement Agreement, MMAS shall send wire instructions for the payment amount via email to SWI at matthew.sachs@sanofi.com and carrie.love@sanofi.com. Within 90 days of receiving the wire instructions, SWI shall make the payment by wire transfer and notify MMAS that that the wire has been initiated via email.

  **C.** **Taxes.** Each Party agrees to be responsible for and bear all taxes as determined by the applicable law, and no Party shall be liable at any time for any other Party's taxes incurred in connection with or related to amounts paid under this Settlement Agreement.

### III. RELEASE

  **A.** **Grant of Release by MMAS.** Subject to and conditioned upon receipt by MMAS of the Payment, MMAS, on behalf of itself and its Affiliates, and their respective predecessors, successors, parents, subsidiaries, assigns, agents, attorneys, directors, officers, partners, employees, and their heirs and executors do hereby fully and unconditionally release, acquit, and forever discharge SWI, SWI's Affiliates, predecessors, successors, parents, subsidiaries, permitted assigns, agents, attorneys, directors, officers, employees, and insurers, as well as the Supplemental Released Parties, from any and all actions, causes of action, claims or demands, liabilities, damages, attorneys' fees, costs, or any other form of claim or compensation, at law, in equity, or otherwise, known or unknown, contingent or fixed, suspected or unsuspected, relating to, based on, or arising out of:

    (i) the Settled Claims; and

    (ii) the conduct of related settlement negotiations (except for representations or obligations expressly included in this Settlement Agreement).

  **B.** **Grant of Release by SWI.** SWI, on behalf of itself and its Affiliates, and their respective predecessors, successors, parents, subsidiaries, assigns, agents, attorneys, directors, officers, partners, employees, and their heirs and executors do hereby fully and unconditionally release, acquit, and forever discharge MMAS and MMAS's Affiliates, predecessors, successors, parents, subsidiaries, permitted assigns, agents, attorneys, directors, officers, employees, and insurers from any and all actions, causes of action, claims or demands, liabilities, damages, attorneys' fees, costs, or any other form of claim or compensation, at law, in equity, or otherwise, known or unknown, contingent or fixed, suspected or unsuspected, relating to, based on, or arising out of:

    (i) the Settled Claims; and

    (ii) the conduct of related settlement negotiations (except for representations or obligations expressly included in this Settlement Agreement).

    C.    **General Release.** MMAS (and its Affiliates) and SWI (and its Affiliates), having specific intent to release all potential claims described in the foregoing Sections III(A) and III(B), whether known or unknown, hereby acknowledge and expressly waive the provision of section 1542 of the California Civil Code (and similar provisions in other jurisdictions, whether by statute or common law), which provides:

> "A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her, must have materially affected his settlement with debtor."

**IV.    COMPROMISE; NO ADMISSIONS**

    A.    **Compromise.** The Parties acknowledge and agree that this Settlement Agreement, including the Payment, has been entered into solely for the purpose of settling and compromising the Dispute and to avoid the expense and uncertainty of alternative methods of resolution.

    B.    **No Admissions.** The resolution of the Dispute, this Settlement Agreement, and any action contemplated by this Settlement Agreement, shall not be construed as an admission by any Party of, or support any finding as to, the merit or lack thereof of any potential claim or counterclaim raised by the Parties in connection with the Dispute.

**V.    CONFIDENTIALITY**

    A.    **Settlement Terms.** The terms of this Settlement Agreement, and all correspondence relating to it, are confidential, and no Party shall now or hereafter disclose them to any third party except: (a) with the prior written consent of each Party, (b) as may be required by applicable law or order of a governmental authority of competent jurisdiction, (c) as deemed appropriate by either Party in connection with its financial reporting obligations, (d) in confidence to the professional legal and financial counsel and accounting professionals representing such Party, or (e) in confidence, under a written confidentiality agreement (with confidentiality terms and conditions no less restrictive than those set forth herein), to any party covered or potentially to be covered by the releases granted herein, including, but not limited to the Supplemental Released Parties. With respect to the foregoing (b) and (c), such disclosing Party shall, to the extent legally permissible, provide the other Party with prior written notice of such Applicable Law or order and, at the written request of any other Party, use reasonable efforts to limit the disclosure of the terms and conditions of this Settlement Agreement, and to obtain a protective order or other confidential treatment are confidential resolution mechanisms.

    B.    **Public Statements, Non-Disparagement.** No Party shall issue any press release or make any public statement regarding this Settlement Agreement without prior written consent of the other Party, except as a Party may deem necessary to satisfy

a public reporting obligation. The Parties may make appropriate disclosures in their public filings with the SEC. Neither Party will disparage the other with respect to the subject matter of the Dispute.

VI. **REPRESENTATIONS AND WARRANTIES**

    A. **Lawful Widget Owner.** MMAS represents and warrants that it is the lawful and registered owner of the Morisky Widget.

    B. **Authority to Enter Agreement**. Each Party represents and warrants that it has the full right and power to enter this Settlement Agreement and, on behalf of itself and its Affiliates, has the full right and power to grant the rights, releases, and covenants as set forth herein, and that there are no other persons or entities whose consent to this Settlement Agreement or whose joinder herein is necessary to make fully effective the provisions of this Settlement Agreement.

    C. **NO IMPLIED WARRANTIES.** EXCEPT AS EXPRESSLY PROVIDED OTHERWISE HEREIN, THE PARTIES MAKE NO REPRESENTATION OR WARRANTY OF ANY KIND. EXCEPT AS EXPRESSLY PROVIDED OTHERWISE HEREIN, EACH PARTY HEREBY DISCLAIMS ANY EXPRESS OR IMPLIED REPRESENTATIONS OR WARRANTIES OF ANY KIND, INCLUDING THOSE REGARDING MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. TO THE EXTENT PERMITTED BY APPLICABLE LAW, NO PARTY WILL BE LIABLE UNDER OR IN CONNECTION WITH THIS SETTLEMENT AGREEMENT UNDER ANY LEGAL OR EQUITABLE THEORY FOR ANY INDIRECT, SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, EVEN IF SUCH PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

VII. **ASSIGNMENT RIGHTS**

    A. **Permitted Assignments.** This Settlement Agreement shall not be assignable without the prior written consent of the other Party, except that no consent is required in the following circumstances: Either Party may assign rights under this Settlement Agreement to the surviving entity (an "Assignee") in any merger, consolidation, equity exchange, recapitalization, or reorganization of the Party or its business, or other sale or transfer of all or substantially all of a Party's business, stock, or assets, provided that, in the case of such an assignment, (i) the Assignee agrees to be bound by the terms of the Settlement Agreement, and (ii) the releases and covenants granted under this Settlement Agreement as assigned shall apply only to the Assignee's continuation of the Party's business activities existing as of the date of such assignment. If Assignee engaged in other business activities prior to such assignment, the rights under this Settlement Agreement shall not be expanded to cover Assignee's own business activities prior to, on, or that are continued after such assignment.

VIII. **NOTICES**

    A. **Procedure.** All notices required or permitted to be given hereunder shall be in writing and shall be delivered by

        (i) Hand,

        (ii) Prepaid courier with package tracking capabilities, or

        (iii) Registered or certified mail postage prepaid;

    And in each case shall be addressed as provided in Section VIII(B). Such notices shall be deemed to have been served when received by addressee.

    B. **Addresses.**

        (i) For notices to MMAS:
        Steven Trubow
        MMAS Research LLC
        101 2nd Street, Unit 303
        Petaluma, CA 94952

        (ii) For notices to SWI:

        **Matthew Sachs**
        **Sanofi-Aventis**
        **55 Corporate Drive**
        **Bridgewater, NJ 08807**

    C. **Change of Addresses.** A Party may give written notice of a change of address. After notice of such change has been received, any notice or request shall thereafter be given to such Party at such changed address.

IX. **BANKRUPTCY**

    A. **Executory Contract; Rejection.** Each Party acknowledges this Settlement Agreement is an Executory Contract under the Bankruptcy Code and that, should either Party become a petitioner under the Bankruptcy Code, Section 365(n) of the Bankruptcy Code applies to this Settlement Agreement and the rights afforded thereunder apply. Each Party further acknowledges that if such Party, as a debtor in possession or a trustee-in-bankruptcy in a case under the Bankruptcy Code, rejects this Settlement Agreement, the other Party may elect to retain its rights under this Settlement Agreement as provided in Section 365(n) of the Bankruptcy Code.

X. **MISCELLANEOUS**

    A.    **Entire Agreement.** The terms and conditions of this Settlement Agreement constitute the entire agreement between the Parties with respect to the subject matter hereof, and this Settlement Agreement supersedes all prior agreements, understandings, and representations by or between the Parties, whether written or oral, to the extent they relate to the subject matter hereof. Any rights not expressly granted in this Settlement Agreement are reserved.

    B.    **Modification; Waiver.** No modification, waiver, or amendment of any term of this Settlement Agreement shall be binding on the Parties unless the same shall be in writing signed by authorized representatives of the Parties. The waiver of any breach or default will not constitute a waiver of any other right hereunder or any subsequent breach or default. The failure to enforce any provision of this Settlement Agreement shall not be deemed a waiver of any rights under this Settlement Agreement.

    C.    **Governing Law.** This Settlement Agreement shall be governed by, and interpreted and construed in accordance with, the domestic law of the State of New Jersey without giving effect to any choice of law provision or rule (whether of the State of New Jersey or any other jurisdiction) that would cause the application of laws of any jurisdiction other than the State of New Jersey.

    D.    **Binding Effect on Parties, Affiliates, Successors in Interest.** This Settlement Agreement shall be binding upon and inure to the benefit of the Parties hereto, their Affiliates, and their respective successors and permitted assignees. To the extent such binding effect is not provided by operation of law, the Parties and their Affiliates shall require any successor or permitted assignee to agree to be bound to the terms of this Settlement Agreement as a condition precedent to such succession or assignment.

    E.    **Rules of Construction.** The language of this Settlement Agreement has been approved by counsel for the Parties. The language of this Settlement Agreement shall be construed as a whole according to its fair meaning, and none of the Parties (or the Parties' respective attorneys) shall be deemed to be the draftsman of this Settlement Agreement in any action which may hereafter arise between the Parties.

    F.    **Severability.** If any provision of this Settlement Agreement is found or held to be invalid or unenforceable by a court or other decision-making body of competent jurisdiction, the remainder of this Settlement Agreement shall remain valid and enforceable to the greatest extent allowed by such court or body under law.

    G.    **Actions to Enforce Agreement.** In the event that any action is required to enforce the terms of this Settlement Agreement, the Parties shall resolve those issues via mediation in Somerset County, New Jersey, to be administered by JAMS or a similar, professional alternative dispute organization. The prevailing Party in any such action shall be entitled to recover against the non-prevailing Party, in addition

to any actual damages, its reasonable attorneys' fees, and costs incurred in connection with such enforcement action. In the event an action is brought in any other forum in contravention of this provision, the parties expressly waive the right to a jury in that action.

**H.** **Headings.** Descriptive headings and titles used in this Settlement Agreement are inserted for convenience of reference only and do not constitute a part of and shall not be utilized in interpreting this Settlement Agreement.

**I.** **Counterparts, Facsimile Signatures.** This Settlement Agreement may be executed as duplicate originals, both of which shall be regarded as one and the same instrument, and each of which shall be the official and governing version of this Agreement. A faxed or emailed copy of the signature page shall be considered an original for purposes of this Settlement Agreement. In addition, single or duplicate original copies of this Settlement Agreement may be executed by the Parties with multiple counterpart signature pages, where each individual Party may execute a separate signature page, provided that every Party executes a signature page.

In Witness Whereof, the Parties have caused this Settlement Agreement to be signed below by their respective duly authorized representatives.

MMAS

By: _____
Name: Steven Trubow
Title: CEO
MMAS Research LLC

Date: 9/10/2024

SWI

By: _____
Name: Susan A. Manardo
Title: Vice President Head of North American Litigation & Investigations

Date: 9/17/2024

### Appendix A
### Supplemental Released Parties

The Supplemental Released Parties include the following health care practitioners and institutions, including but not limited to their agents, directors, officers, partners, and employees.

| HEALTH CARE PRACTITIONER | INSTITUTION |
| --- | --- |
| Aubert, Nathalie | ICTA Project Management |
| Bauduer, Frédéric | Center hospitalier de la côte basque |
| Bienvenu, Boris | Hôpital St Joseph |
| Belmatoug, Nadia | Hôpital Beaujon<br>Referral Center for Lysosomal Diseases |
| Benboubker, Lotfi | Center régional de cancerologie |
| Berger, Marc | CHU Estaing<br>CHU Clermont-Ferrand |
| Brottier Mancini, Elisabeth | Hôpital St Louis |
| Cador Rousseau, Berengere | Hôpital Pontchaillou<br>Rennes University Hospital |
| Camou, Fabrice | Hôpital St André<br>Brodeaux University Hospital |
| Coutinho, Angela | Vaincre les Maladies Lysosomales Patient Association |
| De Moreuil, Claire | Hôpital La Cavale Blanche |
| Desmurs-Clavel, Helene | Hôpital Edouard Herriot |
| Gaches, Francis | Hôpital Joseph Ducuing<br>Monie Clinic |
| Guffon, Nathalie | Hôpital Femme Mère Enfant |
| Hivert, Bénédicte | Service d'Onco-hématologie |
| Hutin, Pascal | CHI de Cornouaille |
| Jaussaud, Roland | Hôpitaux De Brabois - Bat Philippe Canton |
| Lavigne, Christian | Hôtel Dieu |
| Leguy Sequin, Vanessa | CHU Dijon Bourgogne -Hôpital François Mitterand |
| Leone, Jean | Hôpital Robert Debré |
| Lioure, Bruno | Hôpital Civil |
| Loustau, Valentine | Center hospitalier Alpes Leman |

| HEALTH CARE PRACTITIONER | INSTITUTION |
|---|---|
| Luycx, Odile | Center hospitalier de Bretagne Sud |
| Maillot, Francois | Hôpital Bretonneau |
| Mariette, Clara | CHU Grenoble |
| Masseau, Agathe | CHU de Nantes |
| Michaud, Martin | Hôpital Joseph Ducuing |
| Moineuse, Christine | CH d'Auch |
| Paternotte, Simon | ICTA Project Management |
| Pers, Yves-Marie | Hôpital Lapeyronie CHU Montpellier |
| Rose, Christian | Hôpital St Vincent |
| Schmidt, Jean Alphonse | Hôpital Nord |
| Servettaz, Amélie | Hôpital Robert Debré – CHR Reims |
| Swiader, Laure | Hôpital Timone Adultes |
| Vignaud, Guillaume | Center hospitalier Dubois |
| Wachtel, Mélanie | ICTA Project Management |