**LEX TECNICA, LTD.**
F. Christopher Austin, Esq.
*Pro Hac Vice* (Nevada Bar No. 6559)
Scott T. Whitworth, Esq.
*Pro Hac Vice* (Nevada Bar No. 15671)
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Phone: (725) 239-8413
chris@lextecnica.com
scott@lextecnica.com

**CROWLEY LAW OFFICES, P.S.**
William J. Crowley
WSBA No. 18499
600 University Street Suite 1708
Seattle, WA 98101
Tel. (206) 224-7069
Fax (206) 624-8785
will@crowleylawoffices.com
*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| DONALD E. MORISKY, an individual,<br><br>Plaintiff,<br>v.<br><br>MMAS RESEARCH, LLC, a Washington limited liability company, et al.,<br><br>Defendants. | Case No.: 2:21-cv-01301-DWC<br><br>**PLAINTIFF'S CONSOLIDATED MOTIONS IN LIMINE**<br><br>NOTE ON MOTION CALENDAR:<br><br>October 10, 2025 |

Plaintiff, Dr. Donald E. Morisky, hereby moves in limine for an order precluding the introduction of the evidence, testimony, and argument at trial as identified in the following Motions in Limine Nos. 1–9.

**MEET AND CONFER CERTIFICATION**

The undersigned counsel for Plaintiff conferred in good faith by video conference on October 14, 2025, on each of the following Motions in Limine (MIL) with Patricia Ray, counsel for Defendants. Defense counsel refused to stipulate any of the following MILs. The only MIL defense

counsel was willing to consider was the MIL to exclude evidence regarding any of the allegations set forth in Defendants' stricken counterclaims (MIL 7), which Defense counsel requested to further consider. Plaintiff's counsel informed Defense counsel that Plaintiff would have to include MIL 7 if Defense counsel did not agree to it by the following day, October 15, 2025. Plaintiff provided notice of its intent to file a MIL to exclude such stricken counterclaim evidence (MIL 7) a full week prior to the meet and confer. Nevertheless, Plaintiff agreed to wait another day. As of the filing of this Motion, Defense counsel has not agreed to stipulate to exclude evidence regarding the stricken counterclaims, requiring its inclusion in this Motion. Plaintiff's counsel will continue to seek to confer in advance of the pretrial conference as required by LCR 7(d)(4).

## MOTION IN LIMINE 1

**Exclude Evidence, Testimony or Argument that the
"Widget Code" Copyright Registration Confers Any Rights to the MMAS-4 or MMAS-8**

Plaintiff moves in limine for an order precluding Defendants from introducing evidence, testimony or argument suggesting that the United States Copyright Office (USCO) registration for the "Widget Code" (TX-816-5170) [1] confers any rights to use, license, sublicense, or enforce the MMAS-4 (TX-8-285-390)[2] or MMAS-8 (TX-8-632-533)[3]. The MMAS-4 and MMAS-8 are registered copyrights exclusively owned by Plaintiff.[4]

### A. Introduction.

The MMAS-4 and the MMAS-8 are respectively 4 and 8 question assessments (questionnaires) given to patients receiving medication for chronic or terminal illness, such as hypertension or diabetes.[5] It has long been a concern that such patients unnecessarily get sick or even die because they simply stop taking their medication or do not take them consistently.[6] As admitted by Defendants in deposition, Dr. Morisky developed the "Morisky Medication Adherence Scale" 4-question assessment (MMAS-4) and the later developed 8-question assessment (MMAS-

---

[1] A true and correct copy of the Widget USCO registration (MORISKY 000179) is attached hereto as **Exhibit 1.**
[2] A true and correct copy of the MMAS-4 registration (MORISKY 000026–000027) is attached hereto as **Exhibit 2**.
[3] A true and correct copy of the MMAS-8 registration (MORISKY 000028–000029) is attached hereto as **Exhibit 3**.
[4] *See,* Exh. 2 and 3. Note, subsequent to the filing of this action, Plaintiff assigned these copyrights and all related intellectual property to Morisky Medication Adherence Research, LLC (MMAR), a company founded by him.
[5] Second Am. Compl., at ¶ 27.
[6] *Id.*

8).[7] These questionnaires along with their scoring protocols were originated by Dr. Morisky to help practitioners determine how compliant a patient likely would be so that counseling and other appropriate interventions could be used to improve a patients "adherence."[8]

As set forth in the Complaint, Dr. Morisky later partnered with Defendant Trubow and co-founded Defendant MMAS Research LLC because Trubow offered to oversee the development of a computer program, later registered as the "Widget Code," that could display the MMAS-4 and MMAS-8 on a computer screen, so the answers could be recorded and scored on a computer.[9] Thus, the Widget Code copyright registration only covers a computer program used to display the MMAS-4 and MMAS-8, not the prior-copyrighted MMAS-4 or MMAS-8 which are expressly excluded from the Widget Code copyright registration.

### B. The Widget Registration Covers Only the Program, Not the MMAS Questionnaires.

The Widget Code registration expressly identifies the registered work as "a computer program."[10] The deposit submitted with the Widget Code registration which identifies what is covered by the registration consists only of a computer program that is used to display and score the prior copyrighted MMAS-4 and MMAS-8 questionnaires.[11] Because the MMAS-4 and MMAS-8 questions, instructions, and scoring protocol were all previously authored by Dr. Morisky and are owned by him, the Registration Certificate for the Widget Code expressly identifies the MMAS-4 and MMAS-8 registrations (respectively TX-8-285-390 and TX-8-632-533) as "Restrictions" on the Widget Code registration.[12] A "Restriction" identifies works that are excluded from the registration.[13]

At most the Widget Code is a derivative of the MMAS-4 and MMAS-8. Under US copyright law, a derivative work registration is restricted from extending to any underlying pre-existing,

---

[7] *See* Trubow Dep. Trans., 123:6-24, May 24, 2023, a true and correct copy of which is attached hereto as **Exhibit 4**.
[8] *Id.*; *see also,* Am. Comp. at ¶¶ 17–29.
[9] Am. Comp. at ¶ 58.
[10] Exh. 1.
[11] A true and correct copy of the Widget Code deposit (MMASRESEARCH000007–000056) is attached hereto as **Exhibit 5.**
[12] Exh. 1.
[13] *See* 17 U.S.C. § 103(b).

copyrighted works. *See* 17 U.S.C. § 103(b); *see also Stewart v. Abend*, 495 U.S. 207, 223–24 (1990) (Only "[t]he aspects of a derivative work added by the derivative author are that author's property"); *see* also *Russell v. Price*, 612 F.2d 1123, 1127–28 (9th Cir. 1979) (derivative rights cannot be used to exploit the original work without consent). Thus, as a derivative work, the Widget Code registration only extends to the program, not to the preexisting MMAS-4 or MMAS-8 assessments authored by Dr. Morisky.

### C. Defendants Should Be Excluded from Claiming the Widget Code Copyright Confers any Rights to the MMAS-4 or MMAS-8.

Accordingly, any assertion of rights to, or licensing authority over, MMAS-4 or MMAS-8 by Defendants based on the Widget Code registration must be excluded. Specifically, Defendants should not be permitted to proffer any alleged evidence of any right to the MMAS-4 or MMAS-8 by virtue of the Widget Code registration. Defendants should not be permitted to proffer license agreements, settlement agreements, the filing of legal actions, or any other documents, testimony or argument for the purpose of falsely purporting that the Widget Code gives Defendants or any of them any right or authority to license or sublicense the MMAS-4 or MMAS-8 questionnaires or to enforced infringements of, or breaches of any prior licenses to, the MMAS-4 or MMAS-8 or their respective scoring procedures.

## MOTION IN LIMINE 2

### Exclude Evidence, Testimony or Argument that the CR2A Agreement Gave Defendant MMAS Research the Right to Sublicense the MMAS-4 or MMAS-8 to Anyone Other Than Those Listed on Exhibit 3 of the CR2A

Plaintiff moves in limine for an order precluding Defendants from introducing any evidence, testimony, or argument suggesting that the December 2020 CR2A Agreement ("Agreement") between the parties granted Defendants any right to license, sublicense, or enforce rights in the MMAS-4 or MMAS-8 questionnaires except as to those identified on Exhibit 3 to that Agreement.

### A. Contracts Should Be Given Plain and Ordinary Meaning.

Washington law prohibits the use of extrinsic evidence to contradict the plain language of a contract. *Hearst Commc'ns, Inc. v. Seattle Times*, 154 Wash. 2d 493, 504, 115 P.3d 262, 267 (2005) ("We generally give words in a contract their ordinary, usual, and popular meaning unless the

entirety of the agreement clearly demonstrates a contrary intent." *quoting Universal/Land Constr. Co. v. City of Spokane*, 49 Wash. App. 634, 637, 745 P.2d 53 (1987)). By the express language and terms of the CR2A, it only granted license and enforcement rights relative to the MMAS-4 and MMAS-8 to the persons identified on Exhibit 3.

> **B.    The CR2A Agreement Only Granted Defendant MMAS Research a Limited Right to Sublicense the MMAS-4 and MMAS-8 to Persons Identified on Exhibit 3 of That Agreement.**

As acknowledged in the CR2A Settlement Agreement, Plaintiff is the sole and exclusive owner of the federal copyrights in and to the MMAS-4 and the MMAS-8.[14] Defendant Trubow represented that the parties identified on Exhibit 3 of the Agreement had infringed the MMAS-4 or the MMAS-8 or were otherwise in breach of a prior MMAS-4 or MMAS-8 license agreement.[15] Under the terms of the Agreement and in exchange for Defendants' agreement to assign the Widget Code copyright to Plaintiff, among other obligations, Plaintiff agreed to grant Defendant MMAS Research a time-limited license to sublicense the MMAS-4 and MMAS-8 to the parties identified on Exhibit 3 to the Agreement and to participate in any settlement or license revenue derived therefrom ("Claim Settlement"): "Donald Morisky authorizes MMAS Research, LLC through its attorney(s) to prosecute the Claim Settlements listed in Exhibit 3 from which a Claim Settlement may be sought related to the MMAS-4, MMAS-8, the Morisky Widget and any related intellectual property."[16]

This license to sublicense the MMAS-4 and MMAS-8 did not extend to prior licensees of the MMAS-4, MMAS-8, or the Widget Copyright. Section 10 of the Agreement required Defendants to assign to Plaintiff all existing "license agreements for the Morisky Widget with third parties, including retractive license agreements, agreements previously executed by MMAS Research, LLC and/or Donald Morisky (the 'License Agreements')". These prior License Agreements include, without limitation, the "licensees set forth on Exhibit 4 to this Agreement [which ] represents the minimum number of all such License Agreements," and it provides that the "[r]evenue generated on

---

[14] CR2A, § II.1, a true and correct copy of which is attached hereto as **Exhibit 6**.
[15] Exh. 6, CR2A, § II.3.
[16] Exh. 6, CR2A, § II.4.

all License Agreements will belong entirely to the [Plaintiff]" from the date of the execution of the CR2A going forward.[17]

Similarly, the right to sublicense the MMAS-4 and MMAS-8 did not extend to any other person either. In transferring or assigning all accounts to Plaintiff, the Agreement required Defendants to forward from the date the CR2A was executed "in perpetuity" all information from any third-party prospective licensees of the MMAS-4, MMAS-8, or Morisky Widget to Plaintiff from the date the CR2A was executed in perpetuity and "shall work in good faith during the Transition Period [commencing from the execution of the CR2A][18] to effectuate the transfer and referral of such Prospective Licensees to Donald Morisky and/or MMAR."[19]

Thus, the CR2A only granted a license to enforce and sublicense the MMAS-4 and MMAS-8 to those persons listed on Exhibit 3 of that Agreement. It cannot be used to claim any right to sublicense the MMAS-4 or MMAS-8 to anyone else. This includes a prohibition from claiming the CR2A gave Defendants any right to license, sublicense, enter into addendums amendments to prior licenses with any of the prior licensees listed on Exhibit 4 of the CR2A.

## MOTION IN LIMINE NO. 3

**Exclude Evidence, Testimony or Argument that the CR2A
Still Permits Defendants to License the MMAS-4 or MMAS-8 to Persons on Exhibit 3.**

Plaintiff Donald E. Morisky respectfully moves in limine for an order precluding Defendants from offering any evidence, testimony, or argument that the CR2A Agreement still authorizes them to license, sublicense, or enforce the MMAS-4 or MMAS-8 against persons identified on Exhibit 3 to the Agreement.

The CR2A Agreement granted only a two-year, time-limited right to prosecute copyright infringement and breach of contract claims ("Claim Settlements") against persons listed in Exhibit 3, which time has long expired.[20]

> With the exception of any filed, active, lawsuit then proceeding, all prosecution of Claim Settlements by MMAS Research, LLC through its

---

[17] Exh. 6, CR2A, § II.10.
[18] Exh. 6, CR2A, § II.7 (providing that the Transition Period was to "commence upon the execution of this Agreement").
[19] Exh. 6, CR2A, § II.10-11.
[20] Exh. 6, CR2A, § II. 4.

attorney(s) must conclude within two (2) years of the expiration of the Transition Period…"[21]

Transition Period commenced upon the execution of the CR2A Agreement and was to conclude within 60 days of execution "Final Agreement" anticipated by the CR2A.[22] The CR2A was signed December 6, 2020, and after an extension due to COVID, the deadline for the Final Agreement was set for July 5, 2021.[23] Thus, the parties agreed that the two-year duration for prosecuting the Claim Settlements on Exhibit 3 would extend to September 3, 2023.[24]

Even though the parties never entered into the Final Agreement, the CR2A remains a binding enforceable agreement pursuant to the express terms of the CR2A and Washington law. The CR2A gives the parties the right to bring legal action "to enforce **this Agreement [CR2A]** or the Final Agreement"[25] and requires the parties to "take all reasonable steps necessary to effectuate the terms of **this Agreement [CR2A]** and the Final Agreement . . . and to facilitate any assignment or transfers to Donald Morisky contemplated by **this Agreement [CR2A]** or as set forth in the Final Agreement."[26]

When a time limitation cannot be determined under an agreement, courts in this district are to impose a reasonable time. *Mansur Props. LLC v. First Am. Title Ins. Co.,* 635 F. Supp. 3d. 1116, 1131 (W.D. Wash. 2022); *Pepper & Tanner v. Kedo, Inc.*, 13 Wn. App. 433, 435 (Wash. 1975). Where the intent of the parties is clear from the agreement, as is the case here, the reasonable time must give effect the intentions of the parties. *Mansur Props. LLC v. First Am. Title Ins. Co.,* 635 F. Supp. 3d. 1116 (W.D. Wash. 2022) (The intent of the parties set forth in the agreement governs); *Seattle v. Kuney*, 50 Wn.2d 299 (The intention of the parties regarding duration, as expressed in the contract, governs in the absent of an express provision); *Cromwell v. Gruber,* 7 Wn.App. 363, 366-67 (Wash. 1972) (The intent of the parties is the controlling factor).

---

[21] Exh. 6, CR2A, §II. 4.
[22] *Id.*, §II.7, 17.
[23] Due to the COVID pandemic the parties extended the original deadline for the Final Agreement from February 4, 2021 (60 days from signing the CR2A) to July 5, 2021. ECF 22-6, p. 35 (Addendum "A").
[24] This date is calculated by identifying the 60th date after the July 5, 20220 deadline for signing a Final Agreement (September 3, 2021) and adding two years (September 3, 2023).
[25] *Id.*, §II.18.
[26] *Id.*, §II.15.

Here, the clear intention was that the duration for prosecuting the Claim Settlements listed on Exhibit 3 would expire by September 3, 2023. As such, the Court should preclude Defendants from introducing any evidence, testimony, or argument that the CR2A Agreement continued to authorize Defendants after September 3, 2023 to license, enforce, or prosecute any claims related to MMAS-4 or MMAS-8 against the parties listed on Exhibit 3.

## MOTION IN LIMINE NO. 4

### Exclude Evidence, Testimony or Argument that Defendants are Licensed Use the Morisky Medication Adherence Scales

Plaintiff Donald E. Morisky respectfully moves in limine for an order precluding Defendants from offering any evidence, testimony, or argument suggesting that they ever held a valid license to use or exploit the Morisky Medication Adherence Scales (the MMAS-4 or MMAS-8), including by licensing the same to others.

Plaintiff's 13th Request for Production sought "all Documents evidencing [Defendants] were granted a license to use any of the Morisky Medication Adherence Scales". [27] Defendants identified no documents in response giving them a license to use the Morisky Medication Adherence Scales and then further admitted:

> **"MMAS Research LLC was never granted a license to use any of the Morisky Medication Adherence Scales."**[28]

A license to use another's copyrighted works is required to use it for any purpose including to license or enforce those copyrighted works to or against others. *See*, 17 U.S.C. §106 (granting exclusive rights of use and enforcement to copyright holder; 17 U.S.C. §201(d) (requiring license to permit others to use rights of copyright holder); *see Gardner v. Nike, Inc.,* 279 F.3d 774, 781 (9th Cir. 2002) (licensee bears burden to show license rights). The Morisky Medication Adherence Scales are copyrighted works. Having admitted that Defendants were never granted a license to use the Morisky Medication Adherence Scales, and having failed to produce any Documents to the contrary, Defendants should be precluded from offering at trial any evidence, testimony, or

---

[27] A true and correct copy of Defendants' RFP Responses is attached hereto as **Exhibit 7** to this Motion.
[28] *Id.*

argument suggesting that they ever held a license to use or exploit the MMAS-4 or MMAS-8 copyrighted questionnaires.

## MOTION IN LIMINE NO. 5

### Exclude Evidence, Testimony or Argument that Defendants are Licensed Use the Morisky Trademarks

Plaintiff Donald E. Morisky respectfully moves in limine for an order precluding Defendants from offering any evidence, testimony, or argument suggesting that they ever held a valid license to use or exploit the Morisky Trademarks, (MORISKY, MMAS, MMAS-4, MMAS-8, as defined in the Second Amended Complaint (ECF #22)

Plaintiff's 14th Request for Production sought "all Documents evidencing [Defendants] were granted a license to use any of the Morisky Trademarks (as defined in the Second Amended Complaint (ECF #22))". [29] Defendants identified no documents in response giving them a license to use the Morisky Trademarks and then further admitted:

> **"MMAS Research LLC was never granted a license to use any of the Morisky Trademarks."**[30]

A license to use another's trademarks is required to use it for any purpose, including sublicensing use to others, and a best an exclusive license would be required to enforce those trademarks to or against others. 15 U.S.C. §1114, 11225(a) (only the registrant or owner of a mark, or an authorized licensee, may lawfully use such marks. *Id.; see*, *Miller v. Glenn Miller Prods.*, 318 F. Supp. 2d 923, 933 (C.D. Cal. 2004). Having admitted that Defendants were never granted a license to use the Morisky Trademarks, and having failed to produce any Documents to the contrary, Defendants should be precluded from offering at trial any evidence, testimony, or argument suggesting that they ever held a license to use or exploit any of the following Morisky Trademarks as defined in the Second Amended Complaint (ECF #22): MORISKY, MORISKY MEDICATION ADHERENCE SCALE, MORISKY SCALE, MORISKY MEDICATION ADHERENCE PROTOCOL, MMAS, MMAS-4, MMAS-8, and MORISKY WIDGET.

---

[29] Exh. 7 (Defendant's Responses to Plaintiff's RFP No. 13).
[30] *Id.*

## MOTION IN LIMINE 6

**Exclude Evidence, Testimony or Argument that Defendants Have Any License or Right to Control Third Party Use of the MMAS-4 or MMAS-8 Questionnaires**

Plaintiff Donald E. Morisky moves in limine to preclude Defendants from offering evidence, testimony, or argument suggesting that MMAS Research, LLC can control the use of the MMAS-4 or MMAS-8 questionnaires, including by requiring that they be scored using the Morisky Widget program.

Plaintiff is the exclusive owner of the MMAS-4 and MMAS-8 copyrighted questionnaires (respectively, Registration Nos. TX-8-285-390 and TX-8-632-533). As granted by 17 U.S.C. §§ 106 and 50, Plaintiff, the copyright holder, possess all rights to use and exploit the registered copyrights, including the rights to reproduce, license, and enforce the copyrighted works.

Defendants cannot assert any right to control, limit, or enforce the use of copyrighted works Defendants do not own and to which they do not have a license granting such rights. Defendants admit "MMAS Research LLC was never granted a license to use any of the Morisky Medication Adherence Scales [MMAS-4 and MMAS-8]".[31] Thus, Defendants have no right over a third-party's use of the MMAS-4 or MMAS-8 copyrighted works, regardless of whether they were licensed by Plaintiff or not.

For the same reasons set forth in MIL 1, herein above, Defendants cannot claim the derivative Widget Code registration grants Defendants any right over the underlying MMAS-4 or MMAS-8 works owned by Plaintiff that are displayed on a screen and scored pursuant to Plaintiff's authored scoring protocol by the Widget program. The copyright of the derivative "Widget Code" "extends only to the material contributed by the author of such [derivative] work, as distinguished from the preexisting material employed in the [derivative] work and does not imply any exclusive right in the preexisting material." 17 U.S.C. § 103(b). The Widget Code registration, therefore, only grants the owner of the derivative Widget Code the right to use, license and enforce the program itself. It cannot as a matter of law give the owner of the derivative Widget Code any right to control

---

[31] Exh. 7 (Defendant's Responses to Plaintiff's RFP No. 13).

1  how the underlying prior copyrighted MMAS-4 or MMAS-8 are licensed, used, scored, or enforced.
2  Specifically, it cannot convey any right to require that a third-party user (whether licensed by
3  Plaintiff or not) of the MMAS-4 or MMAS-8 questionnaires must score such questionnaires through
4  the Morisky Widget program.

**MOTION IN LIMINE NO. 7**

**Exclude Evidence, Testimony or Argument
Raised in Support of Defendants' Stricken Counterclaims**

Plaintiff moves in limine for an order precluding Defendants from offering any evidence, testimony, or argument raised in support of Defendants' Second Amended Counterclaims (ECF #94) which were stricken and dismissed "with prejudice" by Order of this Court. (ECF #255 and #257). Specifically, Plaintiff moves in limine to preclude all allegations, representations, arguments, and claims raised on pages 17-42 comprising Defendants' Second Amended Counterclaims (ECF #94) and all exhibits (Exhibits A – W) attached thereto.  Because these counterclaims were adjudicated and stricken as a sanction, any reference to them – or to their underlying allegations or arguments – is now irrelevant, violates the Court's sanctions order, and risks confusing the jury. *See* Fed. R. Evid. 401, 402, 403; Fed. R. Civ. P. Rule 37(e)(2).

**A.    Defendants Are Barred from Presenting Dismissed Counter Claims**

Under the District Court's order adopting the Magistrate Judge's recommendations (ECF 257), Defendants are prohibited from asserting, referencing, or relitigating any of the 8 Stricken Counterclaims, including all allegations, arguments and exhibits in support of them (ECF 94, p. 17-42).  Permitting Defendants to suggest to the jury that they still maintain claims against Plaintiff, Plaintiff's family or Plaintiff's counsel would circumvent the sanctions order and confuse the issues in this case.

Under Federal Rules of Evidence 401, 402, and 403, evidence that is irrelevant must be excluded. Because the counterclaims were dismissed with prejudice, they cannot form a basis for relief or defense. Any reference to the claims, facts or circumstances alleged in support of the dismissed counterclaims would invite the jury to revist matters the Court has already dismissed and

prejudice Plaintiff. Plaintiff should not be required prepare to counter allegations on which Plaintiff has already prevailed.

### B. Illustrative Examples of Barred Counterclaim Allegations

Specifically, Defendants should be precluded from presenting any evidence, testimony, or argument regarding any of any of Defendants 8 Stricken Counterclaims (ECF 94, ¶¶ 60-130), the "Request for Relief" (ECF 94, p. 39-42), the allegations, claims and arguments set forth in Paragraphs 10, and 17-59 of the "Background" of the Stricken Counterclaims (ECF 94, p. 18-30), and all Exhibits attached thereof (Exhibits A-W) (collectively, Defendants' "Counterclaim Allegations").

Plaintiff requests, therefore, that the Court preclude Defendants from introducing any evidence, testimony, or argument relating to any of the Counterclaim Allegations or from implying in any way that Defendants were wronged by Plaintiff, Plaintiff's Counsel or by any member of Plaintiff's family as alleged in the Counterclaim Allegations.

### MOTION IN LIMINE NO. 8

#### Exclude Evidence, Testimony or Argument
#### In Support of Defendants' Affirmative Defenses

Plaintiff moves in limine to preclude Defendants from presenting any argument, evidence, or testimony in support of affirmative defenses pled in their Second Amended Answer. Defendants failed to produce a Rule 30(b)(6) designee prepared to testify in support of any such affirmative defenses, baring them from now making any allegations in support of them. In addition, all affirmative defenses based on or arise from the same allegations raised in support of Defendants Stricken Counterclaims (the Counterclaim Allegations) should be precluded for the same reason the Counterclaim Allegations should be excluded.

Well after discovery closed and only as a result of a Court-order compelling the same (ECF # 255 and 257), Defendants' Rule 30(b)(6) designee Steven Trubow sat for a deposition, and in that deposition admitted under oath that he lacked facts and documents, and was otherwise unprepared to support any of the affirmative defenses set forth in Defendants Second Amended Affirmative

Defenses (ECF 94, p. 14-16).[32]

Additionally, many of these defenses simply repackage counterclaims that this Court has already dismissed with prejudice as a discovery sanction. (ECF 257 at 1–2). Because Defendants failed to disclose or substantiate any factual basis for these defenses and are barred from relying on any documents produced after the close of discovery, any evidence or testimony offered to support them would violate the Federal Rules of Civil Procedure and the Court's prior orders. *See* Fed. R. Civ. P. 26(a), 30(b)(6), 37(c)(1); Fed. R. Evid. 401–403.

### A.   Defendants Have No Factual Support for Their Affirmative Defenses

Defendants' Second Amended Affirmative Defenses asserts over twenty affirmative defenses spanning procedural, equitable, and statutory theories. (ECF 94 at 14–16). These include:

1. failure to state a claim under *Twombly* and *Iqbal* (ECF 94, ¶2);
2. claim preclusion based on the dismissal of the prior filed Nevada federal action (ECF 94, ¶3);
3. unclean hands premised on alleged infringement and interference (ECF 94, ¶4);
4, 5, & 6. license, assignment, and joint ownership of the asserted copyrights and marks (ECF 94, ¶¶ 5-7);
7. statute of limitations under 17 U.S.C. § 507(b) (ECF 94, ¶8);
8. first sale under 17 U.S.C. § 109(a) (ECF 94, ¶9);
9. preclusion based on prior King County case orders (ECF 94, ¶10);
10. breach of the CR2A agreement's mediation clause (ECF 94, ¶11);
11. fair use and nominative fair use (ECF 94, ¶13);
12. contractual estoppel (ECF 94, ¶14);
13-16. the economic loss rule, waiver, and equitable estoppel (ECF 94, ¶¶ 15-16);
17. failure to mitigate damages (ECF 94, ¶17);
18. Plaintiff's own negligence or fault (ECF 94, ¶18);
19. spoliation of evidence (ECF 94, ¶19);
20. the independent duty doctrine (ECF 94, ¶20);

---
[32] MMAS Research, LLC 30(b)(6) Dep. Trans., 486:5–487:24, 265:12–268:6, (June 9, 2023). A true and correct copy of the excerpts of this deposition transcript are attached hereto as **Exhibit 8.**

>   21.   comparative fault under RCW 4.22 (ECF 94, ¶21);
>   22.   accord and satisfaction (ECF 94, ¶22); and
>   23.   the absence of cognizable damages (ECF 94, ¶23).

Despite this extensive pleading, Defendants' corporate designee admitted that he could not identify a single supporting fact or document to support any of the 23 Affirmative Defenses alleged in Defendants' Second Amended Affirmative Defenses.[33] He was specifically asked to address the basis for each of the 23 alleged Affirmative Defenses but testified that he did not understand the basis for the defense, nor could he identify any evidence in support of any such affirmative defense.[34] He was also unprepared to address any basis or identify any evidence in support of the affirmative defenses regarding the CR2A contract issues such as mitigation or comparative fault.[35]

A corporate party is bound by its Rule 30(b)(6) testimony and my not contradict it without explanation. *See*, *Snapp v. United Transp. Union*, 889 F.3d 1088, 1104 (9th Cir. 2018); *MKB Constructors v. Am. Zurich Ins. Co.*, 49 F. Supp. 3d 814, 829 n.11 (W.D. Wash. 2014). Having failed to prepare its designee to testify as to any of Defendants' affirmative defenses or to supporting evidence or disclosures, Defendants cannot now introduce evidence, testimony or argument for which it was unprepared to present or disclose during discovery and at the deposition of its corporate representative. *See* Fed. R. Civ. P. 37(c)(1). Absent the exclusion of such evidence, testimony and argument Plaintiff would also be unfairly prejudiced by having been denied the information and evidence during discovery to which it was entitled and that Defendants were obligated to produce, preventing Plaintiff from having a fair opportunity to prepare for trial. Allowing Defendants to advance defenses based on any documents, testimony or materials that were not produced in discovery or to make allegations in trial that Defendants could not support in deposition should be prohibited.

/ / /

/ / /

---

[33] Exh. 8, MMAS Research 30(b)(6) Dep. 266:7–268:6, 486:5–487:24 (June 29, 2023).
[34] *Id.*
[35] *Id.* at 486:5–487:24.

**B.     Affirmative Defenses That Duplicate Dismissed Counterclaims Are Barred**

Many of Defendants' affirmative defenses mirror the Stricken Counterclaims and arise from the same prohibited Counterclaim Allegations. (ECF 257 at 1–2; ECF 94 at 16–19). Specifically:

- Declaratory and copyright counterclaims correspond to Defenses 4–6 (license, assignment, and joint ownership), 7 (statute of limitations), 8 (first sale), 11 (fair use), and 12 (nominative fair use).

- CR2A and contract counterclaims correspond to Defenses 10 and 13–16 (CR2A breach, contract bar, waiver, and estoppel).

- Infringement, Intentional Interference and Consumer Protection Act counterclaims correspond to Defenses 3–4 (alleged infringement, intentional interference as basis for unclean hands), 18–19 (spoliation and independent duty), and 23 (lack of damages).

- Damages theories asserted in the dismissed counterclaims correspond to Defenses 14, 16–17, 20 (comparative fault under RCW 4.22), and again 23 (lack of damages).

(*See* ECF. 94 at 14–16).

The dismissal of the Stricken Second Amended Counterclaims *with prejudice* precludes relitigation of the same claims or allegations raised under a different label as an affirmative defense.[36] Allowing Defendants to present the same issues as "defenses" that have already been dismissed with prejudice would nullify the Court's sanction and mislead the jury. Fed. R. Evid. 403.

Thus, Plaintiff respectfully requests that the Court enter an order precluding Defendants from offering any argument, evidence, or testimony in support of any of their Second Amended Affirmative Defenses (ECF 94). Defendants' own Rule 30(b)(6) witness failure to testify or produce any evidence in support of any such defense precludes Defendants from asserting them at trial, and the Court's order striking Defendants Counterclaims further forecloses all defenses based on the same stricken Counterclaim Allegations. This Court should therefore enforce Rules 26, 30(b)(6), and 37(c)(1), and its prior Order Striking Defendants Counterclaims by excluding Defendants'

---

[36] See *Stewart v. U.S. Bancorp*, 297 F.3d 953, 957 (9th Cir. 2002) (dismissal "with prejudice" is an adjudication on the merits); *Mpoyo v. Litton Electro-Optical Sys.*, 430 F.3d 985, 987–89 (9th Cir. 2005) (claim preclusion bars later suits arising from the same transactional nucleus and is not avoided by new legal theories or additional facts); *Costantini v. Trans World Airlines*, 681 F.2d 1199, 1201–02 (9th Cir. 1982) (same transactional test and bar on grounds that could have been asserted); *Clark v. Bear Stearns & Co.*, 966 F.2d 1318, 1320 (9th Cir. 1992) (res judicata "bars all grounds for recovery which could have been asserted").

affirmative defenses in their entirety, and prohibiting Defendants from presenting, referencing, or raising any allegations in support of any such defenses at trial.

## MOTION IN LIMINE NO. 9

### Exclude Evidence, Testimony or Argument
### Arising from any Evidence Not Disclosed Prior to the Close of Discovery

Plaintiff respectfully moves this Court to preclude the introduction of any evidence at trial that was not produced to the opposing party prior to the close of discovery. *See* FRCP 16 and 26. A party must provide timely disclosures and productions as required by the Federal Rules of Civil Procedure and any discovery deadlines set by the Court. FRCP 26(a) and (e) require parties to make timely disclosures and to supplement or correct these disclosures as necessary.

Evidence not disclosed by the close of discovery is inadmissible except where a party can show both substantial justification and a lack of harm to the opposing party, as detailed in FRCP 37(c)(1). Permitting late-produced evidence prejudices the opposing party, undermines the Court's scheduling order, and effectively nullifies the purpose of discovery, which is to provide a full and fair opportunity to develop and respond to claims.

Courts routinely grant motions in limine to exclude evidence not timely disclosed during discovery because a common motion in limine is the motion to exclude evidence not disclosed or produced during discovery.[37] Such motions are upheld where the introducing party cannot show its late disclosure was substantially justified or harmless.[38]

One example of the improper conduct that Defendant may attempt at trial is producing evidence or argument that Steven Trubow is an author or co-author of the MMAS-4 or MMAS-8 instruments. Defendants have produced no competent evidence demonstrating that Trubow made any creative contributions to the MMAS-4 or MMAS-8 sufficient to qualify him as a statutory

---

[37] *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001) (affirming order granting motion in limine excluding untimely expert report; Rule 37(c)(1) is a "self-executing," "automatic" sanction that excludes evidence absent substantial justification or harmlessness); *Merchant v. Corizon Health, Inc.*, 993 F.3d 733, 739 (9th Cir. 2021) (affirming grant of motion in limine excluding plaintiff's experts for repeated Rule 26(a) violations).

[38] *Yeti by Molly*, 259 F.3d at 1107 (holding exclusion proper where party "failed to show that its late disclosure … was either substantially justified or harmless"); *Merchant*, 993 F.3d at 740 (same, where party "did not prove that the violation was substantially justified or harmless").

1  "author." Permitting such arguments would misstate the law, contradict the undisputed record, and unfairly prejudice Plaintiff.

The CR2A Agreement executed December 2, 2020, contains an express provision in which Defendants, including MMAS Research and its principals, acknowledged that "Donald Morisky is the sole and exclusive owner of the federal copyrights in and to the MMAS-4 and the MMAS-8."[39] Moreover, in MMAS 30(b)(6) deposition, Trubow admitted that he was not prepared to testify to the authorship of the Morisky Widget or Widget Code.[40] Trubow further stated that neither he nor MMAS "created, developed, programmed, or owned the Morisky Widget."[41]

Plaintiff respectfully requests that the Court enter an order precluding Defendants from introducing any evidence produced after the close of discovery.

## CONCLUSION

For the reasons stated in Motion in Limine Nos. 1–9, Plaintiff respectfully requests that the Court grant the relief requested for each issue and enter the accompanying proposed order.

Dated: October 20, 2025.

**LEX TECNICA, LTD.**

/s/ *F. Christopher Austin*
F. CHRISTOPHER AUSTIN, ESQ.
Nevada Bar No. 6559
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145

**Word-Count Certification:** I certify that this memorandum contains 4,974 words, excluding the case caption, signature blocks, and tables, and complies with the Local Civil Rules.

---

[39] Exh. 7.
[40] MMAS Research, LLC Rule 30(b)(6) Dep. Trans. 8:10-22, (May 25, 2023). A true and correct copy of the excerpts of this deposition transcript are attached as **Exhibit 9**.
[41] *Id.* at 48:21-49:9.

**CERTIFICATE OF SERVICE**

Pursuant to Fed. R. Civ. P. 5(b), I certify that I am an employee of LEX TECNICA and that on October 20, 2025, I served a copy of the foregoing, **PLAINTIFF'S CONSOLIDATED MOTIONS IN LIMINE** as follows:

☐ **U.S. Mail:** By depositing a true and correct copy of said document(s) via U.S. mail, with postage pre-paid and addressed as listed below.

☐ **Hand Delivery:** I caused said document(s) to be delivered to the address(es) list below;

☐ **Electronic Mail:** I caused said document(s) to be delivered by emailing an attached Adobe Acrobat PDF of the document to the email address(es) identified above.

☒ **Electronic Service:** I caused said document to be delivered by electronic means upon all eligible electronic recipients via the United States District Court CM/ECF system or Clark County District Court E-Filing system (Odyssey).

/s/ *Brianna Show*
An employee of LEX TECNICA