

The Honorable David W. Christel

# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| DONALD E. MORISKY,<br>Plaintiff,<br><br>v.<br><br>MMAS RESEARCH, LLC, et al.,<br>Defendants. | Case No.: 2:21-cv-01301-DWC<br><br>**PLAINTIFF'S OPPOSITION TO MOTION TO DISQUALIFY F. CHRISTOPHER AUSTIN**<br><br>NOTE ON MOTION CALENDAR:<br>NOVEMBER 6, 2025 |

Plaintiff, Dr. Donald E. Morisky ("Dr. Morisky") submits the following response to Defendants' Motion to Disqualify F. Christopher Austin (Dkt. 286).

## I.   INTRODUCTION

Defendants' motion to disqualify F. Christopher Austin is a belated and meritless attempt to derail this litigation by removing Plaintiff's long-standing lead counsel. It is a tactical filing made after four years of active litigation, repeated discovery battles, repeated and ineffective sanctions issued against Defendants, and extensive motion practice.[1] The motion does not identify new evidence or an actual conflict; instead, it re-packages arguments this Court and other tribunals have already rejected. Defendants' delay, coupled with their history of noncompliance with court orders, makes plain that this is not a good-faith effort to preserve the integrity of the proceedings but an

---

[1] *See generally,* Docket, Case No. 2:21-cv-01301.

impermissible and unethical effort to gain advantage by depriving Plaintiff of counsel most familiar with the facts, law and record.

As Defendants acknowledge, Mr. Austin has been involved in this matter since at least 2021.[2] Even before his admission in this case, Defendants were aware of his role in negotiating and drafting the CR2A settlement agreement in 2019 and 2020. They have also been aware of his participation in related matters involving the same parties for years.[3] Yet they waited until October 16, 2025—just weeks before the originally scheduled trial—to move for his disqualification. Such delay alone requires denial. The motion also fails because Defendants lack standing, Mr. Austin is not a necessary witness, disqualification would cause substantial hardship, and the conduct at issue consists of protected litigation activity. Moreover, the allegations of defiance and misconduct are meritless,[4] the motion seeks to re-litigate dismissed counterclaims, and equitable relief is barred by Defendants' own continuing violations of court orders, including Defendants contemptuous refusal to pay over $82,000 in sanctions ordered against them by this Court.[5] For all these reasons, the motion should be denied in its entirety, and Defendants should be further sanctioned the attorney fees Plaintiff incurred in having to respond to this knowingly meritless filing.

## II.   LEGAL STANDARD

Motions to disqualify opposing counsel are strongly disfavored in the Ninth Circuit. Because of the potential for abuse, "disqualification motions should be subjected to particularly strict judicial scrutiny." *Optyl Eyewear Fashion Int'l Corp. v. Style Companies, Ltd.*, 760 F.2d 1045, 1050 (9th Cir. 1985). Courts therefore scrutinize such requests carefully and grant them only where the alleged conflict or misconduct is supported by specific facts and genuinely threatens the fairness of the

---

[2] *See* Motion to Disqualify, Dkt. 286; Dkt. No. 12) (Austin pro hac vice).

[3] *See* Declaration of F. Christopher Austin ("Austin Decl."), file concurrentlym at ¶2, 13-19.

[4] Incredibly, Defense counsel – who are currently in volition of multiple sanctions awards in this case – also allege Mr. Austin has engaged in unethical conduct, without any factual basis or evidentiary support. Plaintiff refutes these allegations in the supporting declarations submitted herewith; *see generally,* Austin Decl.

[5] Dkts. 123 & 141 (sanctioning Defendants $33,525.92); Dkt. 195 (sanctioning Defendants additional $1,500, and sanctioning Defense counsel $1,320); Dkts. 257 & 267 (sanctioning Defendants additional $46,531.48 for total of $82,877.43 in sanctions against Defendants and their counsel).

proceedings. See, e.g., *Visa U.S.A., Inc. v. First Data Corp.*, 241 F. Supp. 2d 1100, 1104 (N.D. Cal. 2003) (describing disqualification motions as strongly disfavored and noting the movant's heavy burden). "[D]isqualification is 'a drastic measure which courts should hesitate to impose except when absolutely necessary.'" *U.S. for Use & Benefit of Lord Elec. Co. v. Titan Pac. Const. Corp.*, 637 F. Supp. 1556, 1562 (W.D. Wash. 1986), quoting *Freeman v. Chicago Musical Instrument Co.*, 689 F.2d 715, 721 (7th Cir.1982).

The party seeking to revoke pro hac vice admission or to disqualify opposing counsel bears a heavy burden to show actual, material prejudice to the fairness of the proceedings. *Id.* Federal courts will not revoke pro hac vice status based on conjecture, disagreement with opposing counsel's litigation tactics, or previously known facts. See *Trust Corp. of Montana v. Piper Aircraft Corp.*, 701 F.2d 85, 87–88 (9th Cir. 1983) (holding that delay and tactical use of disqualification warranted denial); *United States v. Ries,* 100 F.3d 1469, 1471 (9th Cir. 1996) ("Pro hac vice counsel, once admitted, ... cannot be disqualified under standards and procedures any ... more stringent than those imposed upon members of the local bar.") (citations omitted). In applying this strict standard, courts balance the need to preserve the integrity of the proceedings with the party's substantial interest in continued representation by chosen counsel. *See S.E.C. v. King Chuen Tang,* 831 F. Supp. 2d 1130, 1141 (N.D. Cal. 2011). "The burden of proof is on the moving party to present sufficient facts justifying disqualification." *Flynn v. Michael Love*, No. 3:19-cv-00239-MMD-CLB, 2020 WL 8373399, at *3 (D. Nev. July 31, 2020) (citation omitted). In this District, attorney conduct is governed by the Washington Rules of Professional Conduct. See LCR 83.3(a)(2).

**III.   ARGUMENT**

    **A.   Defendants' motion is untimely and has been waived.**

Federal courts hold that a motion to revoke pro hac vice status or otherwise disqualify opposing counsel must be brought with reasonable promptness after the moving party learns of the facts purportedly warranting relief. Delay alone constitutes waiver. *See Trust Corp. of Montana v. Piper Aircraft Corp.*, 701 F.2d 85, 87–88 (9th Cir. 1983) (finding waiver where the moving party delayed for months after discovering potential grounds for disqualification); *Optyl Eyewear Fashion Int'l Corp. v. Style Companies*, 760 F.2d 1045, 1050 (9th Cir. 1985) (courts view with extreme

caution motions to disqualify opposing counsel for tactical advantage). "This court will not allow a litigant to delay filing a motion to disqualify in order to use the motion later as a tool to deprive his opponent of counsel of his choice after substantial preparation of a case has been completed." *First Small Bus. Inv. Co. v. Intercapital Corp. of Or.*, 108 Wash. 2d 324, 337, 738 P.2d 263, 270 (1987). Such motions are little more than a sanctionable "thinly veiled litigation tactic." *Goldmanis v. Insinger*, No. C13-2035JCC, 2014 U.S. Dist. LEXIS 103803, 2014 WL 3739430, at *6 (W.D. Wash. July 29, 2014) ("finding the disqualification motion 'to be a thinly veiled litigation tactic' where plaintiffs' counsel did not move for disqualification until six months after becoming aware of the alleged conflict of interest").

Here, Defendants have known of every fact they now cite for years, including Mr. Austin's role in negotiating the CR2A agreement in 2019 and 2020, his participation in related matters, and his pro hac vice admission in this Court on September 29, 2021. Yet they waited until October 16, 2025—more than four years after Mr. Austin's admission, and mere weeks before the originally scheduled trial—to seek revocation of that admission. Their conscious decision to wait until the eve of trial to challenge opposing counsel's participation renders their request untimely and confirms that it is a tactical device rather than a good-faith effort to protect the integrity of the proceedings.

Even now, Defendants identify no concrete prejudice or misconduct arising from Mr. Austin's continued participation in the case. Their request seeks only to impermissibly and materially harm Plaintiff.

B.   **Defendants lack standing to seek disqualification.**

A party may move to disqualify opposing counsel only when it has a legally protectable interest at stake, such as a risk that its confidential information will be misused. *Colyer v. Smith*, 50 F. Supp. 2d 966, 971–75 (C.D. Cal. 1999). Absent such an interest, the motion fails for lack of standing. *Id.* Courts routinely deny disqualification where the movant seeks to police opposing counsel's behavior or expresses mere dissatisfaction with litigation tactics. *Optyl Eyewear*, 760 F.2d at 1050.

Defendants have never been clients of Mr. Austin, and they allege no misuse of privileged information. Their complaints center on counsel's advocacy—his settlement communications,

correspondence with licensees, and participation in related matters—all activities squarely within the scope of zealous representation. Without a direct conflict or a showing that his conduct threatens the fairness of trial, Defendants lack standing to request his removal.

      C.      **Mr. Austin is not a necessary witness under RPC 3.7.**

The "lawyer as witness" rule is narrowly drawn. RPC 3.7(a) prohibits an attorney from acting as advocate at trial only where the lawyer is a "necessary" witness on a material issue of fact and no exception applies. Testimony is considered necessary only if it is relevant, material, and unobtainable elsewhere. *United States Fire Ins. Co. v. Icicle Seafoods, Inc*., 523 F. Supp. 3d 1262, 1266 (W.D. Wash. 2021). *"*The party seeking disqualification must show, *w*ith specificity, that the attorney sought to be disqualified is a necessary witness. Blanket allegations that an attorney's testimony is relevant to a party's claim are insufficient." *PN II, Inc. v. Nat'l Fire & Marine Ins. Co.,* No. 2:20-CV-01383-ART-BNW, 2025 WL 2609903, at *4 (D. Nev. July 25, 2025) (citations omitted).

The information Defendants identify—emails, drafts, and settlement communications relating to the CR2A agreement—is available from numerous other sources, including Defendants themselves, their former counsel, and the written documents. Where evidence can be presented through alternative witnesses or exhibits, disqualification is inappropriate. *United States Fire Insurance Co. v. Icicle Seafoods, Inc.*, 523 F. Supp. 3d at 1268 .

Defendants' own discovery conduct further undermines their argument. If they genuinely believed Mr. Austin's testimony were essential, they were required to disclose him as a witness under Rule 26(a)(1) and supplement under Rule 26(e). They did not.[6] Under Rule 37(c)(1), a party that fails to disclose a witness may not rely on that witness's testimony unless the failure was substantially justified or harmless. *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001). Their omission confirms that this theory is an after-the-fact rationalization to wrongfully deprive Plaintiff of its counsel rather than a legitimate evidentiary concern. Further, their

---

[6] *See* Exhibit D, hereto, a true and correct copy of Defendants' Rule 26(a)(1) Initial Disclosures. Austin Dec. at ¶17.

failure to propound any discovery requests during discovery in this matter now bars them from seeking to obtain such discovery years after the close of discovery. *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1027 (9th Cir. 2006).

Finally, even if the Court believed some limited testimony from Mr. Austin might become relevant, the hardship exception under RPC 3.7(a)(3) applies. As discussed below, his removal would cause substantial prejudice to Plaintiff. The rule was never intended to require a party to sacrifice its chosen counsel to accommodate a contrived "necessary witness" argument.

### D. Disqualification would impose substantial hardship on Plaintiff.

Courts must weigh the hardship to the client against any supposed benefit of disqualification. *Am. States Ins. Co. ex rel. Kommavongsa v. Nammathao,* 153 Wash. App. 461, 468, 220 P.3d 1283, 1286 (2009). "Where a litigant uses a motion to disqualify as a tool to deprive its opponent of counsel of its choice, especially after substantial preparation of the case for trial has occurred, the court may properly find that the balance of the parties' interests tips sharply in favor of the nonmoving party." *U.S. for Use & Benefit of Lord Elec. Co. v. Titan Pac. Const. Corp.,* 637 F. Supp. 1556, 1563 (W.D. Wash. 1986).

Mr. Austin has served as lead counsel since 2021, handling all aspects of discovery, motion practice, and coordination with related cases involving overlapping issues and parties.[7] He possesses deep familiarity with the record and procedural history.[8] Replacing him now would reasonably require 6 months or more of review and replication of years of work at great expense and irreparable harm to Plaintiff.[9] Mr. Austin has a singular understanding of Defendants, their counsel, and the facts and issus of this case because he personally experienced them as Plaintiff's counsel throughout the entire period of the dispute.[10] Such a substitution would not only completely disrupt the case, waste judicial resources, and exponentially increase costs, it would irreparably harm Plaintff.[11] Courts routinely deny disqualification under comparable circumstances. *Icicle Seafoods*, 523 F.

---

[7] Austin Decl. at ¶2, 13-19.
[8] *Id.*
[9] *Id.*
[10] *Id.*
[11] *Id.*

Supp. 3d at 1266–68; *White v. Experian Information Solutions, Inc.*, 993 F. Supp. 2d 1154, 1167 (C.D. Cal. 2014).

Defendants, by contrast, have offered no credible justification for such a massive and irreparable disruption. Their motion provides no evidence that Mr. Austin's continued representation would prejudice them in any way. On this record, the hardship to Plaintiff far outweighs any speculative concern raised by Defendants, and RPC 3.7(a)(3) independently requires denial.

E.  **The challenged conduct consists of protected litigation activity.**

Defendants' accusations focus on communications and advocacy that are privileged under well-established doctrines of absolute immunity. Under Washington law, the litigation privilege provides absolute immunity for communications made in the course of a judicial or quasi-judicial proceeding that bear some relation to the subject matter of the litigation. *McNeal v. Allen*, 95 Wn.2d 265, 267 (1980). This privilege, reaffirmed in *Young v. Rayan*, 27 Wn. App. 2d 500, 508-09, 531 P.3d 804, 810 (2023), and *Mason v. Mason*, 19 Wn. App. 2d 803, 830-31, 497 P.3d 431, 447 (2021), ensures that attorneys can zealously represent their clients without fear of civil liability or disqualification arising from statements, pleadings, or other litigation-related conduct. Federal law likewise recognizes the *Noerr-Pennington* doctrine, which confers absolute immunity for petitioning activity directed toward courts and agencies, including "conduct incidental to a lawsuit" such as statements, communications, and posting. *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 933 (9th Cir. 2006); *Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1007 (9th Cir. 2008).

The privileged nature of these communications was already litigated and resolved in *MMAS Research LLC v. University of Wolverhampton*, No. 2:22-cv-05141-AB-JC (C.D. Cal. Feb. 10, 2023). In that case, the Central District dismissed the Defendants' claims against Mr. Austin's client, holding that the challenged communications—including the "Austin Letter,"[12] website notices and correspondence concerning ongoing litigation and licensing—were protected by the *Noerr-Pennington* doctrine and the litigation privilege. The court found that such statements were "posted

---

[12] Austin Decl. at ¶9.

OPPOSITION TO MOTION TO DISQUALIFY
CASE NO. 2:21-CV-01301 RSM-DWC

7

after [the] Washington lawsuit and reflect[ed] [the party's] legal position regarding the ongoing litigation," and therefore fell squarely within the scope of protected petitioning activity.[13]

Those findings foreclose Defendants' effort to re-characterize the same protected advocacy here as misconduct. The conduct they attack—emails, letters to counterparties and colleagues of Plaintiff, and settlement communications—setting forth Plaintiff's claims against Defendants consists of ordinary litigation activity and speech "incidental to a lawsuit," which federal law immunizes to preserve vigorous representation and free access to the courts. *See Sosa*, 437 F.3d at 933. Disqualification cannot be grounded on conduct the federal courts have already held immune under the First Amendment and *Noerr-Pennington* doctrines.

### F. Defendants' allegations of defiance and misconduct lack evidentiary support.

Defendants rely heavily on rhetoric but provide no factual foundation. They claim Mr. Austin defied a state-court mediation order, issued threats, and interfered with third-party relationships. None of these assertions are supported or withstand scrutiny.

Defendants' accusation that Mr. Austin defied a Washington state court mediation order by filing this action is not merely false, but it is jurisdictionally impossible, void of evidence, and procedurally waived.[14] The only court empowered to adjudicate violation of its own order is the issuing court, via a motion for contempt and sanctions, and proven by clear and convincing evidence. *Mead Sch. Dist. v. Mead Education Assn. (MEA)*, 85 Wn.2d 278, 284 (1975).

First, the alleged mediation order was the result of Plaintiff's—not Defendants'—successful motion to dismiss the improper state action filed by Defendants in violation of the CR2A Agreement, which required the parties to resolve disputes by an "Appointed Decider" whose decision would be final.[15] No order was ever issued against Mr. Austin. Rather, the state court dismissed Defendants' unauthorized action in favor of the what the state court interpreted was the mediation process set

---

[13] *See* Declaration of Amanda Bruss ("Bruss Decl."), file concurrently, <u>Exhibit B</u>, Order Granting Motion to Dismiss, Dkt. 56 in *MMAS Research LLC et al. v. University of Wolverhampton et al.* C.D.Cal. Case No. 2:22-cv-05141-AB-JC.

[14] Motion, at 6 (Dkt. 286).

[15] *See* Amended Complaint, at 3, (Dkt. 3); *See also* Ex. 6 CR2A to Amended Complaint, at ¶ 17 (Dkt. 3-7).

forth in the CR2A.

Second, neither Plaintiff nor Mr. Austin ever violated the dismissal in favor of mediation order. Plaintiff was ready, willing, and able to mediate even though Plaintiff maintained the CR2A provision requiring an Appointed Decider required arbitration.[16] As set forth in the emails attached hereto as Exhibit E and the facts and exhibits of the Complaint, Mr. Austin proposed dates, and communicated with a mediator selected by Defendants to proceed with mediation by the deadline set in the CR2A.[17] Defendant Trubow refused to appear or coordinate dates, which ultimately forced the mediator to withdraw and refuse to proceed with mediation.[18]

Third, this Court lacks subject matter jurisdiction to adjudicate the alleged violation. A federal court cannot enforce or punish a breach of a state court order unless it has been ratified, adopted, or incorporated into the federal proceeding. *Labertew v. Langemeier*, 846 F.3d 1028, 1033 (9th Cir. 2017). No motion for contempt or sanctions was ever filed by Defendants in state court in the approximately four-year period after the dismissal of the action. Axiomatically, no finding of contempt or order ever issued against Plaintiff or Mr. Austin in connection with the order granting Plaintiff's motion to dismiss Defendants wrongfully filed state action in favor of the non-judical process required by the CR2A.[19]

Fourth, Defendants waived any claim by proceeding in this action in the ordinary course for four years by filing counterclaims, opposing sanctions, engaging, motion practice and frivolous appeals without ever asserting any claim to mediation. *Caruso v. Local Union No. 690*, 100 Wn.2d 343, 349–50 (1983).

None of the other allegations alleged in the motion are supported at all. Allegations of misconduct must be grounded in evidence, not conjecture or dissatisfaction with opposing counsel's

---

[16] Austin Decl., ¶20-23.

[17] **Exhibit E** (emails between Austin and opposing counsel seeking without success to schedule mediation); Amended Complaintn (Dkt. 3) at 17-19 and Exhs. 8-10 (Dkt 3-8, 3-9, 3-10) (detailing facts with exhibits in support of same showing Plaintiffs unsuccessful efforts to resolve this dispute by the non-judicial process set forth in the CR2A and only filing this action as a final resort due to the intransigence of Defendants); Austin Decl., ¶20-23.

[18] *Id.*

[19] *Id.*

success in prior proceedings. The record here contains no factual basis to support misrepresentation, deceit, or any conduct inconsistent with counsel's professional obligations. They cite no transcript, order, or finding that substantiates this charge—because none exists.[20] What Defendants actually take issue with is Mr. Austin's role in obtaining sanctions against them and their counsel for repeated discovery abuses in this case—sanctions this Court entered after full briefing, evidentiary support, and oral argument.[21] Their unhappiness with those rulings does not convert zealous advocacy into misconduct, nor does it justify a frivolous motion to revoke pro hac vice status.

To the extent Defendants now complain about Mr. Austin's participation in a Rule 26(f) conferences or meet-and-confer sessions in an action before the U.S. Federal District Court for the Central District of California where Plaintiff prevailed on a motion to dismiss, their argument is misplaced. Rule 26(f) requires "the attorneys of record and all unrepresented parties" to participate in developing a discovery plan, but it nowhere prohibits a represented party from attending or contributing to the discussion, nor does this Court have jurisdiction to rule on the propriety of actions taken in another district. By its plain terms, the rule contemplates participation not only by counsel but also by parties themselves. Because Mr. Austin was a named party in that California action, his attendance at and participation in the Rule 26(f) conference was proper. See *Fed. R. Civ. P.* 26(f)(1). Moreover, that case— *MMAS Research LLC v. IQVIA Holdings Company, et al.*, C.D. Cal. Case No. 2:25-cv-01057-RGK-SK —was yet another improper attempt by Defendants to sue Mr. Austin personally for work performed in his capacity as counsel in violation of the litigation privilege and the Noerr-Pennington doctrine.[22] Defendants' effort to portray his legitimate participation in that proceeding as "misconduct" is entirely without merit.[23]

### G. The motion improperly seeks to revive dismissed counterclaims.

This Court has already dismissed Defendants' counterclaims with prejudice and imposed

---

[20] *See* Bruss Decl. ¶¶ 2 – 12.
[21] *See* Dkt. Nos. 124, 195, 246, 255, 257, 259, and 267.
[22] *See* Bruss Decl. Exhibit C, Order Granting Motion to Dismiss in C.D. Cal. Case No. 2:25-cv-01057-RGK-SK, Dkt. 156.
[23] *Id.*

monetary sanctions and adverse inferences for discovery misconduct.[24] Those rulings are final. The present motion and supporting declaration repeat many of the same factual and legal assertions previously dismissed, attempting to re-litigate them under the guise of an ethical challenge.

These counterclaims encompassed issues related to the CR2A Agreement, ownership of the MMAS-8 and Widget Code copyrights, tortious interference, and alleged misconduct by Plaintiff, all of which are improperly raised again in the motion. The motion explicitly claims Austin violated the CR2A Agreement which merely restates Defendants' dismissed Fourth Counterclaim for Breach of Contract—CR2A. On page 2 of the motion, Defendants improperly seek to relitigate the dismissed counterclaim (Fifth) for Tortious Interference with Business Expectancy by alleging Mr. Ausitn engaged "interference with MMAS's contractual relations."[25] Pages 4-5 of the motion impermissibly seek to revives elements of the dismissed Second Counterclaim for Declaratory Judgment as to Trubow's Ownership of Morisky Widget and Seventh Counterclaim for Violation of Morisky Widget Copyright.[26] The law of this circuit is clear. Defendants may not attempt to relitigate finally adjudicated and dismissed counterclaims directly or through a frivolous motion to disqualify. *See, Headwaters Inc. v. U.S. Forest Serv.*, 399 F.3d 1047, 1051-52 (9th Cir. 2005).

Disqualification may not be used as a vehicle for revisiting disputes dismissed with prejudice. The law of the case doctrine further prevents re-assertion of claims that this Court has conclusively adjudicated. Allowing Defendants to re-assert those claims now would undermine finality, waste judicial resources, and reward noncompliance with the Court's orders. The Court should reject this attempted end-run around its prior rulings.

**H.    Defendants' continuing noncompliance and unclean hands bar equitable relief.**

Disqualification is an equitable remedy, and a party seeking equity must come with clean hands. *Precision Instrument Manufacturing Co. v. Automotive Maintenance Machinery Co.*, 324 U.S. 806, 814 (1945). Defendants and their counsel remain in contempt of this Court's multiple

---

[24] *See* Dkt Nos. 141, 195, 255, 257, 259, and 267.
[25] Dkt. 287, at 2.
[26] Dkt. 287, at 4-5.

sanctions orders against them, which requires payment of monetary penalties totaling $82,557.40.[27] Neither Defendants nor their counsel have paid those sanctions, nor has defense counsel ever even attempted to explain its refusal to comply with this Court's repeated orders.[28] "The unclean hands doctrine 'closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief however improper may have been the behavior of the defendant.'" *Adler v. Fed. Republic of Nigeria,* 219 F.3d 869, 876–77 (9th Cir. 2000*), as amended on denial of reh'g and reh'g en banc* (Aug. 17, 2000), quoting *Precision Instr. Mfg. Co. v. Automative Maintenance Machinery Co.,* 324 U.S. 806, 814, 65 S.Ct. 993, 89 L.Ed. 1381 (1945). The Court should decline to entertain equitable requests from a party in continuing contempt of its many saction orders. Moreover, Defendants' own litigation conduct—filing repetitive motions, disregarding deadlines, and refusing to satisfy sanctions—demonstrates with fully adjudicated court findings the very abuse of process Defendants falsely allege against Mr. Austin.

## IV. SANCTIONS AND FEES FOR IMPROPER MOTION

Defendants' Motion to Disqualify lacks factual or legal basis and was interposed to harass, delay, and increase the cost of litigation. The Court has ample authority to deter such conduct. Under 28 U.S.C. § 1927, "any attorney or other person admitted to conduct cases in any court of the United States who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." The Court also holds inherent power to sanction a party who acts "in bad faith, vexatiously, wantonly, or for oppressive reasons."[29]

Local Civil Rule 11(c) further provides that "[a]n attorney or party who . . . presents to the court unnecessary motions or unwarranted opposition to motions, or who otherwise so multiplies or obstructs the proceedings in a case may . . . be required by the court to satisfy personally such excess

---

[27] Dkts. 123 & 141 (sanctioning Defendants $33,525.92); Dkt. 195 (sanctioning Defendants additional $1,500, and sanctioning Defense counsel $1,320); Dkts. 257 & 267 (sanctioning Defendants additional $46,531.48 for total of $82,877.43 in sanctions against Defendants and their counsel).
[28] *See* Austin Decl. ¶24 (affirming lack of payment by Defendants or their counsel).
[29] *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991).

costs and may be subject to such other sanctions as the court may deem appropriate." As the Ninth Circuit explains, "sanctions are available if the court specifically finds bad faith or conduct tantamount to bad faith. … An attorney's reckless misstatements of law and fact, when coupled with an improper purpose, … are sanctionable under a court's inherent power."[30]

As set forth herein Defendants and their counsel should be so sanctioned for filing this meritless motion. Plaintiff requests therefore that Defendants and their counsel be ordered to immediately pay to Plaintiff the reasonable attorney's fees and expenses incurred in opposing motion.

## V.  CONCLUSION

Defendants' motion to disqualify counsel is untimely, unsupported by evidence, contrary to the governing law and frivolous. It rests on stale facts long known to Defendants, on accusations previously rejected by this and other courts, and on conduct that is squarely protected by the litigation privilege. The motion seeks not to protect the integrity of these proceedings but to abuse this process to wrongfully harm Plaintiff.

The Washington Rules of Professional Conduct, Ninth Circuit precedent, fundamental principles of equity, and this Courts inherent and statutory authority to sanction parties and their counsel for filing motions that lacks factual or legal basis and were brought to harass, delay, and increase the cost of litigation, warrant the denial of the motion and the sanctioning of Defendants and their counsel for filing it.

DATED: October 31, 2025

                                            *s/ F. Christopher Austin*
                                            F. Christopher Austin, Esq.
                                            *Pro Hac Vice* (Nevada Bar No. 6559)
                                            Scott T. Whitworth, Esq.
                                            *Pro Hac Vice* (Nevada Bar No. 15671)
                                            LEX TECNICA, LTD.
                                            10161 Park Run Drive, Suite 150
                                            Las Vegas, Nevada 89145
                                            Phone: (725) 239-8413
                                            chris@lextecnica.com
                                            scott@lextecnica.com

---

[30] *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1107 (9th Cir. 2002).

Amanda L. Bruss
BRUSS LEGAL PLLC
7550 E. 53rd Place #172464
Denver, CO 80217

William J. Crowley, WSBA No. 18499
CROWLEY LAW OFFICES, P.S.
600 University Street Suite 1901
Seattle, WA 98101
Tel. (206) 224-7069
will@crowleylawoffices.com

*Attorneys for Plaintiff*

## CERTIFICATE OF COMPLIANCE

I certify that this memorandum contains 3,984 words, in compliance with the Local Civil Rules.

*s/ F. Christopher Austin*
F. Christopher Austin, Esq.
*Pro Hac Vice* (Nevada Bar No. 6559)
LEX TECNICA, LTD.
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Phone: (725) 239-8413
chris@lextecnica.com

## CERTIFICATE OF SERVICE

I hereby certify that on October 31, 2025, I caused a true and correct copy of the foregoing to be filed via the cm/ecf system, which will serve a notice of electronic filing to all counsel of record.

*s/ F. Christopher Austin*
F. Christopher Austin, Esq.
*Pro Hac Vice* (Nevada Bar No. 6559)
LEX TECNICA, LTD.
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Phone: (725) 239-8413
chris@lextecnica.com
