**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF WASHINGTON AT SEATTLE**

DONALD E. MORISKY,

        Plaintiff,

    v.

MMAS RESEARCH, LLC, a Washington limited liability company, et al.,

        Defendants.

NO. 2:21-CV-01301-RSM-DWC

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT**

## I.  INTRODUCTION

Defendants MMAS Research, LLC and Steven Trubow (the appearing Defendants) respectfully submit this protective opposition to Plaintiff's Motion for Default Judgment (Dkt. 332). Defendants have separately moved to stay these proceedings pending the Ninth Circuit's resolution of Appeal No. 26-793 and have separately moved to vacate the entry of default under Rules 55(c) and 60(b) (Dkt. 326). Both are incorporated by reference.

The Clerk's entry of default (Dkt. 325) does not entitle Plaintiff to whatever relief he demands. A default establishes liability on well-pleaded facts; it does not establish the amount of damages, does not relieve Plaintiff of his burden to prove that amount, and does not authorize extraordinary equitable relief without scrutiny. Two features of the record frame this opposition.

**Virgo Law LLC**
119 1st Ave. S., Ste. 310
Seattle, Washington 98104
(206) 569-8418

First, the default was entered (Dkt. 324) on recent procedural conduct under the Court's inherent power, not on the spoliation findings, the failure to pay sanctions, or any merits issue, so what the default admits is fixed and narrow. Second, Plaintiff's own authority makes the damages point: under *Geddes*, cited repeatedly in the Motion, well-pleaded allegations are taken as true "except those relating to damages." Plaintiff's Motion ignores both limits at every turn.

The Motion asks the Court to award (1) $2,967,294 in "contract damages" built by multiplying a single year of partial-account revenue across 4.7 years; (2) $450,000 in copyright statutory damages at the absolute maximum, on works whose validity a federal court has rejected and on a "per-work" theory that contradicts Plaintiff's own derivative-work allegations; (3) compelled assignment of a federally registered copyright the Ninth Circuit has held was "never transferred" and "remains" registered to MMAS; and (4) roughly $850,000 in fees, costs, and prior sanctions lumped into a merits motion in place of a proper fee application. Each request is deficient, and several are mutually inconsistent. The opposition is organized in two divisions: Division I shows that, even conceding the default as entered, it does not supply the predicate for any of this relief (*Geddes*); Division II shows that the default sanction should not stand at all and that, at a minimum, the Court should defer (*Leon*; the pending Motions to Stay and to Vacate). The Motion should be denied, or at a minimum deferred and sharply pared.

## II. LEGAL STANDARD

Entry of default does not entitle a plaintiff to a default judgment as of right; the decision lies within the Court's sound discretion, guided by the seven *Eitel* factors. *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986); *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1174–75 (C.D. Cal. 2002). The Court must independently determine whether the unchallenged

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR DEFAULT JUDGMENT- 2

**Virgo Law LLC**
119 1st Ave. S., Ste. 310
Seattle, Washington 98104
(206) 569-8418

facts state legitimate claims for the relief requested and whether that relief is supported by the record.

Critically, well-pleaded factual allegations are taken as true "except those relating to damages." *Geddes*, 559 F.2d at 560. The plaintiff bears the burden of proving up damages, and the Court may not simply accept the figure demanded; damages must be established to a reasonable certainty and may not rest on speculation or conjecture. *See TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987). Equitable relief, including injunctions and specific performance, remains discretionary and must be independently justified on the record. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

## DIVISION I — GEDDES: THE DEFAULT'S SCOPE AND ITS SEVERANCE FROM THE RELIEF

For purposes of this opposition only, Defendants concede the default as entered. Even fully conceded, the default admits only the well-pleaded facts of the conduct the Court sanctioned. It does not adjudicate ownership, validity, infringement, willfulness, or any damages figure, and it cannot supply the elements of the relief Plaintiff demands.

**A.    Ownership of the Morisky Widget, the Predicate for Nearly Every Form of Relief the Motion Seeks, Is MMAS's on the Record Plaintiff Himself Made, and Cannot Be Decided Against MMAS by Sanction Default.**

Ownership of the Morisky Widget copyright is the foundation of this Motion. The contract-damages demand, the copyright statutory-damages demand, the compelled-assignment demand, and the injunction each depend on Plaintiff owning the Widget. That predicate fails twice over: the record Plaintiff himself built establishes that MMAS is the owner, and the one question Plaintiff now asks this Court to decide by default is the question every forum, and Plaintiff himself, has treated as reserved for merits and appellate adjudication.

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR DEFAULT JUDGMENT- 3

**Virgo Law LLC**
119 1ˢᵗ Ave. S., Ste. 310
Seattle, Washington 98104
(206) 569-8418

In December 2023 Plaintiff moved to stay this entire action, representing to this Court that *Charité* "addresses the central legal issue in this case—ownership of the Morisky Widget copyright," that the appellate decision "would have preclusive effect," and that proceeding meanwhile risked "inconsistent judgments." (Dkt. 206 at 1–3, 5.) The Court agreed and stayed the case. (Dkt. 220 at 3.) Defendants pressed the identical ownership argument to the Ninth Circuit in No. 26-793—the same argument, from the opposite podium—contending that *Charité* held "MMAS thus never transferred its Copyright" and left MMAS "the registered owner of the Morisky Widget software." (Appellant's Opening Br., No. 26-793, at 2, 6; *see* Ray Decl. ¶ 12 & Ex. 9.) Both parties, in two federal forums, agreed *Charité* decides ownership.

On March 13, 2024, the Ninth Circuit decided it against Plaintiff. Construing this very CR2A, the court held the agreement "was never finalized," and that "MMAS thus never transferred its copyright and remains the registered owner of the Morisky Widget." *MMAS Research, LLC v. The Charité*, No. 23-55202, slip op. at 2–3 (9th Cir. Mar. 13, 2024) (mem.); *see* Ray Decl. ¶ 11 & Ex. 8. *Charité* is an unpublished disposition, citable as persuasive authority under Federal Rule of Appellate Procedure 32.1 and Ninth Circuit Rule 36-3; its persuasive force here is considerable, because the same court examined the identical agreement and concluded it effected no transfer and left MMAS the registered owner.

When the parties reported that resolution (Dkt. 223), the Court did not lift the stay for a merits adjudication of ownership. It reopened the case "for the limited purpose of allowing Plaintiff to file a motion for sanctions" and directed that it "will not accept any additional motions or filings in this case until the motion for sanctions is resolved." (Dkt. 229 at 1–2; Ray Decl. ¶ 14 & Ex. 11.) That condition has never been satisfied. The sanctions motion remains unresolved, so the limited lift remains in force and ownership remains off-limits for merits adjudication, as

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR DEFAULT JUDGMENT- 4

**Virgo Law LLC**
119 1st Ave. S., Ste. 310
Seattle, Washington 98104
(206) 569-8418

it has been continuously since April 24, 2024. The only channel the Court left open is the sanctions motion that produced this default. A merits ruling on ownership, which would necessarily have applied *Charité*, was structurally foreclosed by the very order that reopened the case.

Independent of *Charité*, the registration Plaintiff cites, Reg. No. TX0008816517 (Dkt. 22-7), names *MMAS Research*, not Plaintiff, as the claimant, and under 17 U.S.C. § 410(c) is prima facie evidence that MMAS owns the Widget copyright. The Copyright Act requires a signed writing to transfer that ownership, 17 U.S.C. § 204(a), and no signed transfer exists. Plaintiff has admitted as much under oath, in a declaration his counsel filed: he described the CR2A as *requiring* that MMAS "assign the Morisky Widget and any related copyrights . . . to Donald Morisky", a future obligation, not a completed transfer. (Morisky Decl. ¶ 3, Dkt. 102-3.) The assigned Magistrate Judge, denying Plaintiff a preliminary injunction, found that "as provided under the SA [Plaintiff] does not hold the Copyright Registration to the Morisky Widget." (Dkt. 48 at 7–8.) And Plaintiff's own lead counsel, in an April 21, 2022, letter, acknowledged "the MMAS Research copyright in the Morisky Widget code." (Dkt. 94-1 at 182–83.) A discovery sanction cannot convert that contested, unperformed obligation into an admitted fact of ownership, displace § 204(a), or override a registration the Copyright Act makes presumptive proof of the opposite. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

Plaintiff is now running the 2023 maneuver a second time. Even as he asks this Court to enter a default judgment resolving ownership, he has moved the Ninth Circuit to hold No. 26-793 in abeyance so that this Court may rule first and he may then dismiss the appeal as moot. (Ray Decl. ¶ 13 & Ex. 10.) In 2023 the risk of inconsistent judgments was Plaintiff's reason to *halt* a forum from deciding ownership; in 2026 an inconsistent judgment is the thing he is trying

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR DEFAULT JUDGMENT- 5

**Virgo Law LLC**
119 1st Ave. S., Ste. 310
Seattle, Washington 98104
(206) 569-8418

to *manufacture*, a district-court judgment holding that the same never-finalized agreement transferred the same copyright by operation of law, contradicting the Court of Appeals that already construed it. A request to manufacture an inconsistent judgment below is not a basis to enter default judgment; it is a reason to deny it and defer to the appeal. *New Hampshire v. Maine*, 532 U.S. 742, 749–51 (2001); *Landis v. N. Am. Co.*, 299 U.S. 248 (1936).

Plaintiff's Motion confirms the point. Confronting the Ninth Circuit's construction of this very CR2A, Plaintiff concedes that whether Charite 'proves [MMAS] owns the Widget and precludes this court from enforcing the CR2A is a legal issue.' (Mot. at 16.) By Plaintiff's own characterization it is a legal issue and a sanction default admits well-pleaded facts, not legal conclusions. *Geddes,* 559 F.2d at 560.

**B.     The Default Was Entered on Recent Procedural Conduct Under the Court's Inherent Power, not on Spoliation, Nonpayment, or the Merits.**

The scope of what a default admits is fixed by the order that entered it. Here, the Order for Entry of Default (Dkt. 324) grounds the sanction on a discrete set of recent acts: a separate status report filed in violation of the Court's order directing a joint report (Dkt. 279); the eve-of-trial motion to disqualify Plaintiff's counsel (Dkt. 286); duplicative motions in limine and responsive briefing in violation of LCR 7(d)(5) and 7(e)(5); the motion for case-dispositive sanctions the Court treated as a delay tactic (Dkt. 311); and a proposed pretrial order appearing to reassert previously dismissed defenses (Dkt. 316). The Court acted under its inherent power, applying *Fink v. Gomez*, 239 F.3d 989 (9th Cir. 2001), and the *Leon* factors. (Dkt. 324 at 2–4.)

The Order is equally clear about what it does *not* rest on. The Court expressly stated it was "not relitigating or making a new determination on Defendants' past failure to pay sanctions." (Dkt. 324 at 3.) The spoliation and Rule 37(e)(2) findings (Dkt. 255, 257) are recited only as

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR DEFAULT JUDGMENT- 6

background, "issued years ago", and are not the operative ground. And nothing in the Order adjudicates ownership of the Widget copyright, the validity of any registration, infringement, or the amount of any damages. The default therefore admits the procedural conduct the Court sanctioned; it does not convert the Motion's merits and damages theories into established facts. Each Part below severs a piece of the requested relief from this narrow admission.

**C.     The Default Admits Well-Pleaded Facts, not Plaintiff's Legal Conclusions of Ownership, Validity, Authorization, and Performance.**

Default admits only well-pleaded *facts*; it does not admit legal conclusions, allegations that are not well-pleaded, or claims that are legally insufficient. *DIRECTV, Inc. v. Huynh*, 503 F.3d 847, 854 (9th Cir. 2007); *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) (a defaulting party "is not held to admit facts that are not well-pleaded or to admit conclusions of law"). On a motion for default judgment the Court must independently satisfy itself that the complaint states a legally sufficient claim; "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992); accord *In re Kubick*, 171 B.R. 658, 662 (9th Cir. BAP 1994). Standing is likewise a non-waivable component of subject-matter jurisdiction that a discovery sanction cannot manufacture. *Warth v. Seldin*, 422 U.S. 490, 498 (1975). Nor does default admit allegations contradicted by the documents the complaint itself attaches and relies upon: where an exhibit conflicts with the pleading's characterization of it, the exhibit controls. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). And the Court may take judicial notice of other courts' decisions and dockets, which a contrary allegation cannot override. Fed. R. Evid. 201. The orders Plaintiff invokes do not hold what he represents; each is set beside his characterization. Coleman Decl. at ¶ 7 & Ex. 4.

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR DEFAULT JUDGMENT- 7

**Virgo Law LLC**
119 1st Ave. S., Ste. 310
Seattle, Washington 98104
(206) 569-8418

**D.      The Default Does Not Admit Copyrightability or Validity; A Sister Federal Court Has Held the Scales Uncopyrightable.**

Ownership of a valid copyright is an element of infringement, and even on default the Court must satisfy itself that the claim is legally sufficient before awarding statutory damages. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991); *Eitel*, 782 F.2d at 1471–72. The protectability of the MMAS-4 and MMAS-8 is not settled: the District of Nevada held them uncopyrightable as a matter of law under the blank-forms doctrine and dismissed the copyright claim asserting them with prejudice. *Adherence v. CVS Pharmacy, Inc.*, No. 2:24-CV-1590 JCM (NJK), 2025 WL 1798883 (D. Nev. June 25, 2025).

The registrations create only a rebuttable presumption of validity. 17 U.S.C. § 410(c); *Bibbero Sys., Inc. v. Colwell Sys., Inc.*, 893 F.2d 1104, 1106–07 (9th Cir. 1990). Under the blank-forms rule of *Baker v. Selden*, 101 U.S. 99, 107 (1879), and 37 C.F.R. § 202.1(c), forms designed primarily to record rather than convey information are not copyrightable, and the effort invested in designing a form "does not make the form any less blank." *Bibbero*, 893 F.2d at 1107–08. In *Adherence*, the owner of these very registrations advanced, and lost, every theory of protectability, and dismissal was with prejudice.

The *Adherence* plaintiff (MMAR, Plaintiff's 2023 assignee) sued as the exclusive owner of the registrations following Plaintiff's 2023 assignment of all related intellectual property. That presents Plaintiff with a dilemma. If the assignment was effective, Plaintiff is not the owner of the rights this Motion seeks to enforce. 17 U.S.C. § 501(b); *Silvers v. Sony Pictures Entm't, Inc.*, 402 F.3d 881, 884–85 (9th Cir. 2005) (en banc). If instead Plaintiff retains an interest, his interest in validity was litigated by his successor in interest to a final adverse judgment, *Adherence v. CVS Pharmacy, Inc.*, No. 2:24-cv-01590-JCM-NJK (D. Nev.), ECF No. 111 (Sept. 15, 2025)),

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR DEFAULT JUDGMENT- 8

**Virgo Law LLC**
119 1ˢᵗ Ave. S., Ste. 310
Seattle, Washington 98104
(206) 569-8418

and issue preclusion bars relitigating copyrightability. *Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 329–30 (1971); *Taylor v. Sturgell*, 553 U.S. 880, 894–95 (2008). Either way precludes the statutory-damages Plaintiff demands.

Nor is Plaintiff's characterization of the Widget as a mere derivative "deployment" of the scales an admitted fact. It is one side of a contested merits question framed for trial: whether the Widget registration (naming MMAS Research as claimant) "establishes only a derivative-work claim as Plaintiff contends, or instead reflects an independently copyrightable work containing original computer code, selection, coordination, arrangement, and algorithmic logic." (Harris Decl. ¶ 9 & Ex. 8; Pretrial Order, Issues of Law ¶ 1.) The Court need not, and on a sanction default cannot, resolve that dispute now. *DIRECTV*, 503 F.3d at 854; *Sprewell*, 266 F.3d at 988.

**E.    The Court's Willfulness Finding Is Bad Faith in Litigation Tactics, not Willful Infringement.**

The "willfulness and bad faith" the Court found in entering default (Dkt. 324 at 4–5) is bad faith in litigation conduct: a disqualification motion the Court could not see "as [anything but] a litigation tactic" deployed in bad faith at the last minute (citing *FMC Techs., Inc. v. Edwards*, 420 F. Supp. 2d 1153, 1157 (W.D. Wash. 2006)), duplicative filings, and delay. It is not a finding that Defendants knew, or recklessly disregarded, that any conduct infringed a copyright or a mark.

That distinction is dispositive. Plaintiff repeatedly bootstraps the two. He invokes the Dkt. 324 willfulness finding to justify § 504(c) willful statutory damages (Mot. at 14), the § 1116(a) irreparable-harm presumption for a "knowing violation" (Mot. at 18), *Eitel* factor six (Mot. at 16), and § 1117(a) "exceptional case" fees (Mot. at 20). Every one of those requires willfulness *as to infringement*: knowledge that the conduct infringed. The Order contains no such

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR DEFAULT JUDGMENT- 9

**Virgo Law LLC**
119 1st Ave. S., Ste. 310
Seattle, Washington 98104
(206) 569-8418

finding, and the default cannot supply a state-of-mind element the sanction order never reached. Procedural bad faith is not willful infringement. Parts F through H apply this defect to each statute in turn.

**F.      The $450,000 Statutory-Damages Demand Fails: No Valid Copyright, No      Willful Infringement, and a Per-Work Theory That Contradicts Plaintiff's Own Case.**

Maximum willful statutory damages require both a valid copyright and willful infringement. Validity is contested and, as to these works, rejected (Part D); and the willfulness predicate is absent because the only willfulness the Court found is litigation-tactics bad faith, not infringement (Part E). Independently, no willfulness finding is possible on this record. Defendants' position rests on an objectively reasonable foundation: their own federal registration for the Widget (17 U.S.C. § 410(c)); this Court's ruling that Plaintiff "does not hold the Copyright Registration" (Dkt. 48 at 7–8); the Ninth Circuit's *Charité* disposition; the Nevada blank-forms holding; Plaintiff's sworn admission that the CR2A authorized the listed-party settlements (Part I); and the good-faith and advice-of-counsel defenses preserved in the Pretrial Order. A party with that record cannot be found to have acted with the culpable state of mind the $150,000-per-work maximum requires.

The per-work multiplication independently fails. Plaintiff seeks $150,000 for each of three "works", the MMAS-4, MMAS-8, and Morisky Widget, yet his entire theory is that the Widget is a derivative of the scales. The Copyright Act forecloses counting it separately: "all the parts of a compilation or derivative work constitute one work." 17 U.S.C. § 504(c)(1). Plaintiff cannot treat the Widget as a derivative to establish infringement and simultaneously as an independent third "work" to triple the award.

**Virgo Law LLC**
119 1st Ave. S., Ste. 310
Seattle, Washington 98104
(206) 569-8418

Finally, the statutory maximum is a ceiling, not a default. Section 504(c) commits the amount to the Court's discretion within the statutory range; $150,000 per work is the *ceiling* for willful infringement, reserved for exceptional cases. Plaintiff offers no basis for the maximum beyond the willfulness label the default supposedly supplies, a label Parts E and L show the record contradicts. And electing statutory damages does not cure the double-recovery problem: the contract "damages" are measured by the same revenue stream the copyright award is said to redress, so stacking a gross-revenue contract award atop a maximum statutory award compensates the same conduct twice.

## G.    Plaintiff Is Not Entitled to the § 1116(a) Irreparable-Harm Presumption or Injunctive Relief.

The § 1116(a) presumption of irreparable harm attaches only on a "knowing violation", a willful-infringement finding the Order does not contain (Part E). Independently, the assigned Magistrate Judge, denying Plaintiff a preliminary injunction over this very intellectual property, found no irreparable harm because "Plaintiff can be made whole with money." (Dkt. 48 at 8.) The adequacy of a monetary remedy independently defeats the extraordinary injunctive relief the Motion seeks. *eBay*, 547 U.S. at 391.

## H.    Plaintiff Is Not Entitled to § 1117(a) "Exceptional Case" Fees on a Willfulness Theory.

Plaintiff's "exceptional case" theory under 15 U.S.C. § 1117(a) rests on the same willful-infringement characterization the Order never made (Part E). Absent a finding that Defendants knew their use infringed, the § 1117(a) predicate fails. The fee demand is independently defective for the procedural reasons set out in Part Q.

**Virgo Law LLC**
119 1st Ave. S., Ste. 310
Seattle, Washington 98104
(206) 569-8418

**I.     Plaintiff's Allegation That Defendants Acted "Without Authorization" Is Contradicted by the CR2A and by an Authorization Plaintiff Himself Executed, and Is Not Well-Pleaded.**

The CR2A and a signed Infringement Authorization executed by Plaintiff and his counsel expressly authorized the settlement conduct now labeled infringement. (Ray Decl. ¶¶ 7–8 & Exhs. 4–5.) Plaintiff's Counsel later described the same arrangement to third parties in a December 3, 2021, email, explaining that under the CR2A Dr. Morisky gave MMAS the ability to enter into retroactive licenses in connection with settlements to enforcement actions. (Ray Decl. ¶ 8 & Ex. 5.)

The Court need not resolve the parties' broader CR2A disputes to see the consequence: an allegation that Claim Settlement activity occurred "without authorization" cannot be taken as true in the face of a written authorization executed by Plaintiff and his counsel. At a minimum, these documents preclude treating the willfulness label, the predicate for the $150,000-per-work maximum (Part F), as an admitted fact. Plaintiff has admitted the authorization under oath: he declared that the CR2A "permitted MMAS to pursue claims . . . against a specifically identified list of parties." (Morisky Decl. ¶ 11, Dkt. 102-3.)

**J.     Plaintiff's Allegation That He Performed Under the CR2A Is Contradicted by the Record, Including His Own Pleading.**

The Motion depends on the allegation that Plaintiff performed his own obligations under the CR2A. That allegation is not well-pleaded, because the record contradicts it. The King County Superior Court held that Section 17 of the CR2A contains a "mediation clause as a precondition of entering a legal cause of action alleging breach," and Plaintiff himself invoked that precondition: in Defendants' earlier King County suit he moved to compel mediation and dismiss the complaint as premature, and the court granted that motion on July 9, 2021. (Dkt. 48

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR DEFAULT JUDGMENT- 12

**Virgo Law LLC**
119 1st Ave. S., Ste. 310
Seattle, Washington 98104
(206) 569-8418

at 4.) Yet, as Magistrate Judge Christel recounted, "the parties . . . have never engaged in post-SA mediation" (*id.*), and Plaintiff filed this action weeks later, on September 24, 2021. An allegation of performance cannot be deemed admitted where a judicially noticeable state-court ruling establishes a mediation precondition and Plaintiff's own pleading acknowledges it was never satisfied. Fed. R. Evid. 201; *Sprewell*, 266 F.3d at 988.

**K.    The Source Code Was Produced, the Spoliation Universe Is the Destroyed Agreements Only.**

Rule 37(e)(2) adverse inference is bounded by its own terms to the destroyed license and settlement agreements (Dkt. 255 at 23–24)  not to the copyrightable work itself. The Widget source code was in fact produced and reviewed. Plaintiff's counsel conceded that the unredacted source code was obtained and reviewed by Plaintiff's expert.  Because the code was produced, the Rule 37(e)(2) inference cannot reach authorship, originality, or ownership. (Ray Decl. ¶¶ 2–6 & Exs. 1–3.)

Two consequences follow. First, because copyrightable material was produced, the adverse inference cannot reach authorship, originality, or ownership; the inference fills an evidentiary gap about the *agreements*, not about who owns the Widget. Second, to the extent Plaintiff's sanctions narrative still rests on "non-production" of the source code, that premise is a live, disputed fact, flatly contradicted by his own counsel's words on the record, not something the default admits. *Sprewell*, 266 F.3d at 988.

**L.    Plaintiff's $2,967,294 "Contract Damages" Figure Is Speculative and  Rests  on  the Wrong Measure.**

Damages are not admitted by default; Plaintiff must prove them, and the Court must scrutinize the figure rather than rubber-stamp it. *TeleVideo*, 826 F.2d at 917–18. Plaintiff has substituted arithmetic for proof. He derives the figure by taking $631,339 in revenue from two

**Virgo Law LLC**
119 1st Ave. S., Ste. 310
Seattle, Washington 98104
(206) 569-8418

accounts in a single year (2021) and multiplying it across a 4.7-year "Period," assuming, without any evidentiary basis, that revenue was constant. A damages award may not be speculative or built on conjecture, and Rule 37(e)(2) inference does not cure the gap: it permits presuming the destroyed records unfavorable; it does not supply a revenue multiplier or convert one year of partial data into 4.7 years of proven loss.

The extrapolation is not merely unsupported; it is contradicted by the financial record. MMAS Research's federal income tax returns, financial materials that lie outside the destroyed-agreements universe to which the Rule 37(e)(2) inference is confined (Parts K, M), refute the flat-revenue assumption. Those returns, the 2021 and 2023 returns attached as Exhibit 2 to the accompanying Declaration of Rodney Watkins, CPA, and the 2025 return attached as Exhibit 1, whose Schedule K-1, Box 17, Code AC statement under I.R.C. § 448(c) also reports MMAS's gross receipts for tax years 2024 and 2022, report MMAS's annual gross receipts across all of its accounts and activities at roughly one-fifth to one-third of the $631,339 Plaintiff attributes to just two accounts and assumes recurred every year, ranging from $115,500 (2021) to $229,536 (2025). (Watkins Decl. ¶¶ 6, 8–9 & Exs. 1–2; any partial years within the Period should be pro-rated.)

This Court has already engaged this evidence: in denying case-terminating sanctions it found "there is some evidence showing Defendants lack the funds necessary to pay the imposed sanctions," citing Dkt. 258-2, and that the record did not reflect the "willfulness, fault, or bad faith" Plaintiff ascribed. (Dkt. 273 at 7–8, adopted by Dkt. 278.) Plaintiff's contrary representation that Defendants "avoided sanctions . . . by falsely representing to this Court that Defendants lacked the funds to pay" (Mot. at 6) is a narrative the Court's own findings refute.

**Virgo Law LLC**
119 1ˢᵗ Ave. S., Ste. 310
Seattle, Washington 98104
(206) 569-8418

Even if the amount were proven, gross revenue is the wrong measure. Contract damages are measured by the non-breaching party's expectancy, what Plaintiff would have received had the CR2A been performed, not by 100% of Defendants' gross receipts. For Claim Settlements, Plaintiff's entitlement was a percentage: 45% of Net Proceeds. (Dkt. 22-6, § II.2.) Awarding the entirety of Defendants' gross revenue is a disgorgement windfall mislabeled as "contract damages", and Plaintiff cannot disclaim a profits theory to dodge the double-recovery bar (Mot. § IV.B.4) and then import the identical gross revenue pool under a contract heading.

Finally, Plaintiff's own conduct severed causation. During the damages Period, Plaintiff announced to licensees that "the Morisky widget will be phased out of existence in the very near future" and that licensees "will be transitioned to my own secure MMAR digital platform" (Ray Decl. ¶ 17 & Ex. 14), and his counsel warned the licensee community, in capital letters, that any use or license of the Widget or scales without Morisky's written authorization "WILL BE IN VIOLATION OF U.S. FEDERAL COPYRIGHT LAW" (Dkt. 94-1 at 182–83). Plaintiff cannot claim 4.7 years of constant Widget revenue as lost expectancy while the record shows his own side migrating licensees to a competing platform and threatening the remaining base with infringement liability. The flat-revenue assumption collapses.

## M.    The Rule 37(e)(2) Adverse Inference Is Fenced to the Destroyed Agreements, It Is Not a Damages Multiplier or a Merits Finding.

Read with Part K, the inference reaches the destroyed license and settlement agreements only. It permits the Court to presume those records unfavorable to Defendants; it does not supply a revenue multiplier, convert one year of partial data into 4.7 years of proven loss, or adjudicate ownership of the produced source code or any registration's validity. Plaintiff's attempt to project

**Virgo Law LLC**
119 1st Ave. S., Ste. 310
Seattle, Washington 98104
(206) 569-8418

the 2021 baseline "across the full Period" by force of the inference (Mot. at 13–14, 17) asks the presumption to do work it cannot do.

**N.   Compelled Assignment of the Morisky Widget Copyright Is an Improper Remedy on This Record.**

Specific performance is an extraordinary, discretionary remedy available only where the contract terms are clear and definite and damages are inadequate. The premise of Plaintiff's assignment demands that the CR2A compelled a completed transfer is genuinely disputed, and the Copyright Act requires a signed writing to transfer ownership. 17 U.S.C. § 204(a). The Ninth Circuit has already construed this very agreement, holding that it "was never finalized" and that "MMAS thus never transferred its copyright and remains the registered owner of the Morisky Widget." *Charité*, slip op. at 2–3. Plaintiff's own sworn declaration confirms as much: he described the assignment as an unperformed future obligation. (Morisky Decl. ¶ 3, Dkt. 102-3; see Ray Decl. ¶ 11 & Ex. 8.) A court should not, by sanction default and without any merits or evidentiary hearing, order the transfer of a copyright the Ninth Circuit has held was never transferred. The *eBay* factors are not satisfied on this contested record, and the adequacy of a monetary remedy independently defeats the relief. (Dkt. 48 at 8); *eBay*, 547 U.S. at 391.

**O.   Plaintiff's Trademark Claim Lacks the Registered Mark Its Own Elements Require, Reg. No. 5,837,273 Was Cancelled.**

The Motion states that to prevail under 15 U.S.C. § 1114 Plaintiff must show ownership of "a valid, registered mark" and a likelihood of confusion, and it rests on the premise that "[f]ederal registration is prima facie evidence" of the MMAS mark's validity (Mot. at 11–12; 15 U.S.C. § 1057(b)). But the sole federal registration Plaintiff invokes, Reg. No. 5,837,273 for the mark MMAS, was cancelled on March 6, 2026, three months before the Motion was filed.  (Coleman Decl. ¶¶ 3–4 & Ex. 1.) The description of the mark as "federally registered" was

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR DEFAULT JUDGMENT- 16

**Virgo Law LLC**
119 1st Ave. S., Ste. 310
Seattle, Washington 98104
(206) 569-8418

therefore inaccurate when made, and the § 1114 claim lacks the registered mark its own stated elements require.

A cancelled registration carries no presumption of validity or ownership under § 1057(b) and no constructive-use priority under § 1057(c); every mark Plaintiff asserts now rests on common-law rights alone, and Plaintiff bears the full burden of proving validity, priority, and (as to descriptive matter) secondary meaning. Plaintiff's pending petition to reinstate does not alter the present record and, on his own account, is unlikely to succeed: the registration was cancelled for failure to timely file the Section 8 declaration (Dkt. 334-2), a statutory requirement the Director has no authority to waive, and a request to reinstate in those circumstances "will be denied, regardless of the reason for the delay." TMEP § 1712.02(a); *see Checkers Drive-In Rests., Inc. v. Comm'r of Patents & Trademarks*, 51 F.3d 1078, 1085 (D.C. Cir. 1995).

The remaining marks (MORISKY, MMAS-4, MMAS-8, and MORISKY WIDGET) are asserted only "by prior use," and the documented commercial use in this record is used by *MMAS*, as licensor, in a licensing program that long predates the CR2A. (Ray Decl. ¶¶ 9–10 & Exs.6–7.) Trademark authorization need not take the form of a freestanding written license; consent may be implied from a course of dealing, and an owner who "by word or deed" conveys implied consent limits his right to sue. *Seller Agency Council, Inc. v. Kennedy Ctr. for Real Estate Educ., Inc.*, 621 F.3d 981, 988–89 (9th Cir. 2010). At a minimum, whether the parties' course of dealing conveyed consent is a fact-specific question a discovery-sanction default does not resolve. *Sprewell*, 266 F.3d at 988.

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR DEFAULT JUDGMENT- 17

## P.      Plaintiff's Standing to Recover in His Own Name Is Unestablished

The Motion seeks a multimillion-dollar money judgment and a declaration of ownership in favor of Donald Morisky individually. Yet, as reflected in the pretrial order, Plaintiff represents that he assigned all of his intellectual property and all of his claims in this action to a separate entity, Morisky Medication Adherence Research, LLC (MMAR). If that assignment is effective, Morisky is not the real party in interest entitled to recover; if it is not, MMAR's joinder and the chain of title are in question. Fed. R. Civ. P. 17(a). For the copyright claims, only the legal or beneficial owner of an exclusive right may sue for its infringement. 17 U.S.C. § 501(b); *Silvers v. Sony Pictures Entm't, Inc.*, 402 F.3d 881, 884–85 (9th Cir. 2005) (en banc). The Court should not enter judgment for Morisky individually until the real-party-in-interest question is resolved.

## Q.      The Fee, Cost, and Sanctions Demand Is Procedurally Improper and Unsupported.

Plaintiff bundles roughly $850,000, $852,578.89 by his own tally (Mot. at 21), in attorney's fees, costs, and previously ordered sanctions into this merits motion. That is not the proper vehicle. A claim for attorney's fees must be made by separate motion under Federal Rule of Civil Procedure 54(d)(2) and this District's local rules, on a record that permits Defendants a fair opportunity to test the lodestar, rates, and hours. Lumping the request into the default-judgment motion should be denied without prejudice to a properly supported application.

Two further defects independently warrant denial or reduction. First, the CR2A fee clause reaches fees "incurred in any such action or proceeding" to enforce the agreement (Dkt. 22-6, § 18); it does not authorize recovery of fees incurred in the separate third-party "Related Matters" litigation Plaintiff folds into the total (Mot. § V.C.1). Second, certain prior sanctions Plaintiff

**Virgo Law LLC**
119 1st Ave. S., Ste. 310
Seattle, Washington 98104
(206) 569-8418

seeks to incorporate were entered against Defendants' *counsel*, not Defendants, and cannot be converted into a judgment against the appearing Defendants, including the $1,320 the Court ordered counsel to pay (Dkt. 195), which Plaintiff's own motion lists as running "against Defendants' counsel" yet asks the Court to roll into the money judgment against Defendants.

The fee support is also facially defective. The declaration filed in support of the Lex Tecnica fees is captioned as the "Declaration of Scott T. Whitworth" but is, in its body and signature, the declaration of Nicholas Anderson: "I, Nicholas Anderson . . . s/ Nicholas Anderson." (Dkt. 332-11.) A fee award exceeding half a million dollars cannot rest on a declaration whose declarant the document itself cannot identify.

**R.    Eitel Factor Five — Live Disputes Over Material Facts Defeat Entry of Judgment.**

The fifth *Eitel* factor asks whether material facts are genuinely in dispute. They are, pervasively: ownership of the Widget copyright (Part A), the validity and copyrightability of the scales (Part D), the Widget's derivative-versus-independent status (Part D), authorization (Part I), performance (Part J), production of the source code (Part K), the revenue baseline (Part L), and the real party in interest (Part P) are each contested on this record. A discovery-sanction default entered on procedural conduct (Part B) does not resolve any of them. The fifth factor weighs decisively against entry of default judgment.

**S.    The CR2A Breach Claim Was Filed in Violation of the Agreement's Own Precondition to Suit; It Is Not a "Meritorious Claim" on Which Default Judgment Can Rest.**

The largest component of the Motion, $2,967,294 for breach of the CR2A, and the specific-performance demand to compel assignment of the Morisky Widget, rests on a contract claim that could not lawfully be filed. Section 17 required the parties to complete a mediation culminating in a neutral "Appointed Decider" at JDR's Seattle office as a precondition to suit.

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR DEFAULT JUDGMENT- 19

**Virgo Law LLC**
119 1st Ave. S., Ste. 310
Seattle, Washington 98104
(206) 569-8418

The King County Superior Court so construed this very agreement: it held the mediation clause "a precondition to bringing an action for breach," dismissed that action as premature, and affirmed that ruling on August 20, 2021. (Harris Decl. ¶¶ 1–3 & Exhs. 1–3; see Dkt. 48 at 4; Dkt. 333 at 2–3.)

The precondition was never satisfied here either. No mediation was completed, no Appointed Decider was appointed, and no Final Agreement was produced. The failure resulted from Plaintiff's counsel demanding arbitration (over MMAS's objection and losing that demand twice). (Harris Decl. ¶¶ 4–5 & Ex. 4; Dkt. 333 at 2–4.) Plaintiff nonetheless filed this action on September 24, 2021, without curing the defect the Superior Court had just identified in the identical agreement.

This constitutes a deficiency in Plaintiff's claim that must be overcome to obtain default judgment. On a motion for default judgment, the Court independently determines whether the complaint states a meritorious claim, and *Eitel*'s second and third factors require exactly that. *Eitel*, 782 F.2d at 1471–72. A default admits well-pleaded facts "except those relating to damages"; it does not admit legal conclusions and cannot supply a precondition the judicially noticeable record affirmatively shows was never met. *Geddes*, 559 F.2d at 560; Fed. R. Evid. 201. The Superior Court dismissed the complaint without prejudice as premature. (Harris Decl. ¶¶ 1–3 & Exs. 1–3).  Because a court of competent jurisdiction had held that a CR2A breach action cannot be brought before the Section 17 precondition is satisfied, Plaintiff's breach claim is not "meritorious," and the default cannot convert it into one. In sum, Plaintiff cannot now prosecute his own premature CR2A breach action. *New Hampshire v. Maine*, 532 U.S. 742, 749–51 (2001) (judicial estoppel barring Plaintiff from disclaiming the position he urged on the Court).

**Virgo Law LLC**
119 1st Ave. S., Ste. 310
Seattle, Washington 98104
(206) 569-8418

The consequence here is concrete. The contract-damages component of the $2,967,294 and the specific-performance assignment of the Widget both depend on the CR2A breach claim and fall with it. And because the Motion lumps the contract recovery together with a § 1125(a) trademark theory in a single, undifferentiated $2,967,294 figure (Dkt. 336-1 ¶ 13), the Court cannot determine what portion rests on the barred contract theory.

## DIVISION II — LEON: THE DEFAULT SANCTION SHOULD NOT STAND, AND THE COURT SHOULD DEFER

Division I shows that the default, even as entered, does not support the relief Plaintiff seeks. This Division addresses the antecedent point: that the default sanction should not stand at all, and that, at a minimum, the Court should defer ruling on this Motion. Defendants press the frontal attack in their Motion to Vacate (Dkt. 326) under Rules 55(c) and 60(b) and incorporate it here by reference. To preserve the clean concession that drives Division I, Defendants do not relitigate the sanction within this opposition; reasserting struck matter is precisely the conduct the Court cited in entering default (Dkt. 316, 319). The point here is narrower: because the validity of the default is under active reconsideration in Dkt. 326, and because case-dispositive default is reviewed against the *Leon* factors and the strong policy favoring decisions on the merits, entry of dispositive judgment on that default now is premature.

### A.    The Court Should Defer Ruling Pending Defendants' Motion to Stay and the Ninth Circuit Appeal.

Defendants' pending Motion to Stay establishes that the central premise of this Motion, that Plaintiff is entitled to ownership and assignment of the Morisky Widget copyright, is the subject of active, parallel federal litigation, not a settled fact. A court in this Circuit dismissed MMAS's related action under the first-to-file rule and that dismissal, right or wrong, is now pending before the Ninth Circuit as No. 26-793. *MMAS Research LLC v. University of British*

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR DEFAULT JUDGMENT- 21

**Virgo Law LLC**
119 1st Ave. S., Ste. 310
Seattle, Washington 98104
(206) 569-8418

*Columbia*, No. 2:25-cv-01057-RGK-SK (C.D. Cal.) (Dkt. 205). Entering judgment that resolves ownership by sanction before the appellate mandate issues risks the inconsistent federal rulings the first-to-file doctrine exists to prevent. *Landis v. N. Am. Co.*, 299 U.S. 248 (1936). Because that ownership predicate is in active, parallel federal litigation, and is reserved for the Ninth Circuit on Plaintiff's own abeyance motion (see Division I, Part A), the Court should rule on Defendants' pending Motion to Stay, incorporated by reference, before reaching the merits of this Motion.

**B.    The Default Sanction Is Under Frontal Attack in Dkt. 326 and Should Not    Be    the Basis for Dispositive Judgment Now.**

Case-dispositive default is the most severe sanction in the court's arsenal and is governed by the *Leon* factors, with particular attention to the availability of less drastic alternatives and the strong policy favoring decisions on the merits. *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006). Defendants' Motion to Vacate (Dkt. 326) demonstrates that the default fails that standard: that the conduct the Court sanctioned was permitted motion practice recharacterized as delay, that less drastic alternatives (striking the offending filings, denying the motions in limine, or precluding the reasserted defenses) were available and unaddressed, and that no evidentiary hearing was held on the disputed questions of intent, causation, and prejudice. *Lasar v. Ford Motor Co.*, 399 F.3d 1101, 1109–12 (9th Cir. 2005); *Malone v. U.S. Postal Serv.*, 833 F.2d 128, 130–32 (9th Cir. 1987). Those arguments are made fully in Dkt. 326 and are incorporated here by reference. Because the order on which this Motion wholly depends is itself the subject of a pending Rule 55(c)/60(b) motion, the Court should resolve Dkt. 326 before entering any judgment built upon the default.

**Virgo Law LLC**
119 1st Ave. S., Ste. 310
Seattle, Washington 98104
(206) 569-8418

**C.   Plaintiff Cannot Obtain This Relief Through a Twenty-Nine-Page "[Proposed] Order" and Serial Post-Motion Filings; Those Submissions Should Be Stricken or Disregarded.**

Even if the default supported entry of judgment, it would not support the judgment Plaintiff has drafted for the Court. After filing the Motion, Plaintiff tendered a twenty-nine-page "[Proposed] Order" (Dkt. 336-1) that decrees relief differing in kind from, and exceeding, anything demanded in the Second Amended Complaint. A default judgment "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). Yet the proposed order would: permanently enjoin Defendants from "initiating, filing, pursuing, or maintaining any complaint, petition, demand, [or] notice … with any governmental, regulatory, administrative, or prosecutorial body, whether domestic or foreign," that asserts rights in the Morisky intellectual property (Dkt. 336-1 ¶ 8(f)); declare a non-party's settlement and indemnification "void as to Plaintiff and MMAR" and assign to Plaintiff all of Defendants' claims "known or unknown" in any pending or future proceeding (¶¶ 11, 72); equitably toll the limitations periods of absent parties (¶¶ 12, 74); and order the foreign Defendants to change their corporate names before foreign authorities, with the Clerk of this Court authorized to execute the foreign filings (¶ 10). A default judgment cannot adjudicate the rights of non-parties, Sanofi, the Massachusetts litigants, and unidentified future defendants, who are not before this Court, and Rule 54(c) forecloses relief of a kind the pleadings never sought. (See Dkt. 22, Prayer for Relief.)

The proposed order is improper in form as well as in substance. It is not a proposed decree submitted for the Court's signature; it is a brief. It conducts a full seven-factor *Eitel* analysis, makes affirmative findings of willfulness, marshals roughly fifteen authorities, and argues the merits of every claim, all appended to a Notice of Filing (Dkt. 336). The Local Rules forbid exactly that: "argument in support of the motion shall not be made in a separate document but

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR DEFAULT JUDGMENT- 23

**Virgo Law LLC**
119 1st Ave. S., Ste. 310
Seattle, Washington 98104
(206) 569-8418

shall be submitted as part of the motion itself." LCR 7(b)(1). The same defect runs through Plaintiff's other post-Motion filings. A notice may bring matter to the Court's attention only by "attach[ing] the supplemental authority without argument," LCR 7(n); and a correction must proceed by praecipe identifying the change "by page and line number," LCR 7(m). Plaintiff's Notice of Supplemental Fact (Dkt. 334) and "Errata" (Dkt. 338) instead add new legal arguments including the post-cancellation infringement theory the Errata appends to the Motion's trademark section, and the supplemental Austin declaration (Dkt. 335) injects new evidentiary matter days after the Motion. A court decides "only questions presented by the parties," not those advanced piecemeal through ancillary filings. *United States v. Sineneng-Smith*, 590 U.S. 371, 375–76 (2020); *Greenlaw v. United States*, 554 U.S. 237, 243–44 (2008).

This is the same maneuver Plaintiff presses in the parallel appeal, No. 26-793, deploying a procedural vehicle to extract, in substance, a merits adjudication the proper vehicle would not yield. Plaintiff's own Motion for Leave (Dkt. 337) concedes that the Motion itself was filed out of time. The Court should hold Plaintiff to the Motion as filed (Dkt. 332), not to the expanded presentation assembled afterward.

Accordingly, pursuant to LCR 7(g) and as part of this opposition, Defendants respectfully request that the Court (a) strike the supplemental declaration (Dkt. 335), the Notice of Filing and [Proposed] Order (Dkts. 336, 336-1), and the new legal argument added by the Notice of Supplemental Fact (Dkt. 334) and the Errata (Dkt. 338), as argument or new matter improperly presented in separate documents in violation of LCR 7(b)(1), 7(m), and 7(n); (b) confine its consideration of the Motion to Dkt. 332 as filed; (c) decline to adopt the proposed findings and conclusions in Dkt. 336-1, which are Plaintiff's advocacy and not this Court's; and (d) while crediting Plaintiff's factual concession that Registration No. 5,837,273 was cancelled (Division

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR DEFAULT JUDGMENT- 24

**Virgo Law LLC**
119 1st Ave. S., Ste. 310
Seattle, Washington 98104
(206) 569-8418

I.O), disregard the legal argument improperly appended to that concession.

### III. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiff's Motion for Default Judgment. In the alternative, the Court should (i) defer ruling pending Defendants' Motion to Stay and Motion to Vacate (Dkt. 326); (ii) deny the speculative $2,967,294 contract demand and limit any recovery to Plaintiff's contractual share of revenue proven to fall within the CR2A; (iii) deny or substantially reduce the statutory-damages award and reject the inflated per-work multiplication; (iv) deny the requested compelled assignment, injunction, and specific-performance relief; (v) deny Plaintiff's standing-dependent relief pending resolution of the real-party-in-interest question; (vi) deny the fee, cost, and sanctions demand without prejudice to a proper application under Rule 54(d)(2); and (vii) before entering any monetary judgment, hold an evidentiary hearing under Rule 55(b)(2) to determine the amount of any damages. Separately, pursuant to LCR 7(g), the Court should strike or disregard Plaintiff's serial post-Motion filings (Dkts. 334, 335, 336, 336-1, and the added argument in Dkt. 338) to the extent they advance argument or new matter and confine its review to the Motion as filed (Dkt. 332).

**Virgo Law LLC**
119 1st Ave. S., Ste. 310
Seattle, Washington 98104
(206) 569-8418

Respectfully submitted this 16th day of July 2026.

s/Patricia Ray
Patricia Ray
Pennsylvania Bar # 31989
The Law Office of Patricia Ray
Telephone: 215-908-6810
raypatricia@yahoo.com

s/ Brett Harris
Brett Harris, WSBA #55680
VIRGO LAW LLC
119 1st Ave. S., Ste. 310
Seattle, WA 98104
Telephone: (206) 569-8418
Brett@virgolawseattle.com

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on the date below, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to those registered with CM/ECF.

DATED: July 16, 2026

/s/ Brett Harris

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR DEFAULT JUDGMENT- 26

**Virgo Law LLC**
119 1st Ave. S., Ste. 310
Seattle, Washington 98104
(206) 569-8418